## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>ASCENA RETAIL GROUP, INC., a Delaware corporation, and ANN INC., a Delaware corporation,<br><br>       Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Siobhan Morrow and Ashley Gennock bring this action, on behalf of themselves and all others similarly situated, against Defendant Ascena Retail Group, Inc. and Defendant Ann Inc. (collectively "Defendants") and state:

## I.     NATURE OF ACTION

1.     This is a class action regarding Defendants' deceptive pricing scheme whereby Defendants misrepresent regular or original prices and corresponding phantom "savings" on clothing, shoes, and fashion apparel sold in their retail outlet stores, including Ann Taylor Factory and Ann Taylor Loft Outlet stores.  During the Class Period (defined below), Defendants represented on their sales tags, in-store displays, and their website false price discounts for merchandise sold throughout their retail outlet stores.

2.     During the Class Period, Defendants continually misled consumers by advertising clothing, shoes and fashion apparel at discounted, "savings" prices.  Defendants offered false "sale" prices which were misrepresented as a percentage or dollar amount off the regular or

original retail prices from which the "savings" was discounted.  The represented discounts were nothing more than mere phantom markdowns because the represented regular or original prices were artificially inflated and were never the original prices for clothing, shoes and fashion apparel sold at Defendants' retail outlet stores.  In addition, the represented regular or original prices were not the prevailing retail prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

3.      Through their deceptive pricing scheme, Defendants uniformly represent and convey to consumers through their sales tags, in-store displays, promotional materials and print advertisements.   For example, in Defendants' retail outlet stores, the pricing scheme is prominently displayed, advertising deep discounts, including "50% off" and "40% off" various items throughout the store.

4.      The regular or original price never existed and/or did not constitute the prevailing retail prices for such products within the three months immediately preceding the publication of the sales tag.  Defendants sell their own, exclusive, branded products.  There is no other regular or original price for the products being sold other than the price set at Defendants' retail outlet stores.   The difference between the "sale" and regular or original price is a false savings percentage used to lure consumers into purchasing products they believe are significantly discounted.

5.      Through their deceptive pricing scheme Defendants violated, and continue to violate California, Pennsylvania, federal, and other state law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.   Specifically, Defendants violated, and continue to violate, California's Business & Professions Code §§17200, *et seq.* (the "UCL"),

California's Business & Professions Code §§17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), Pennsylvania's Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. §§201-1, *et seq.* (the "UTPCPL"), the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and dissemination of false advertisements. 15 U.S.C. §52(a).

6.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more items of clothing, shoes, or fashion apparel at Defendants' retail outlet stores that were deceptively represented as discounted from false regular or original former prices in order to halt the dissemination of this false, misleading, and deceptive price scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased products resulting from this scheme. Given that Defendants' conduct is pervasive and ongoing to this day, Plaintiffs seek to permanently enjoin Defendants from using deceptive pricing regarding retail price comparisons, including but not limited to such pricing contained on the sales tags, in-store displays, and online. Further, Plaintiffs seek to obtain damages, restitution, and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of their sales of merchandise offered at a false discount. Finally, Plaintiffs seek reasonable attorneys' fees pursuant to California Code of Civil Procedure §1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

7.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2) and (6).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Classes have a different citizenship from Defendants.

8.    The Southern District of New York has personal jurisdiction over the Defendants named in this action because Defendants are corporations or other business entities authorized to conduct, and do conduct business, in the State of New York.  Defendant Ann Inc. maintains its headquarters in New York and Defendant Ascena Retail Group, Inc. is registered with the New York Secretary of State to do sufficient business with sufficient minimum contacts in New York. Defendants are registered to do business in New York, Defendants intentionally avail themselves of the New York market through the ownership and operation of numerous retail outlet Ann Taylor Factory and Ann Taylor Loft Outlet stores, and other retail outlet stores within the State of New York.

9.    Venue is proper under 18 U.S.C. §1391 because Defendant Ann Inc. is headquartered in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District, including the creation of the scheme alleged in this Complaint.

## III.    PARTIES

### I.    Plaintiffs

10.    Siobhan Morrow ("Plaintiff Morrow") resides in San Diego, California.  Plaintiff Morrow, in reliance on Defendants' false and deceptive pricing scheme, purchased a pair of pants for herself for $39.99 on or around November 13, 2015 at an Ann Taylor Factory Store

located in San Diego, California.  The pair of pants was advertised on the sales tag and in-store display as having an original price of $79.99.  That price was discounted and represented on the sales tag and in-store display to Plaintiff as "50% off" according to the price tag and related signage.  However, this product was never offered for sale at $79.99 at Defendants' retail outlet store, nor was it offered at that price within the 90-day time period immediately preceding Plaintiff Morrow's purchase.  Therefore, Ms. Morrow was damaged by her purchase of the product.

11.     Ashley Gennock ("Plaintiff Gennock") resides in New Castle, Pennsylvania. Plaintiff Gennock, in reliance on Defendants' false and deceptive pricing scheme, purchased a pair of pants for herself for $39.99 on or around April 11, 2016 at an Ann Taylor Factory Store located in Grove City, Pennsylvania.  The pair of pants was advertised on the sales tag and in-store display as having an original price of $79.99.  That price was discounted and represented to Plaintiff  Gennock as "50% off" according to the price tag and related signage.  However, this product was never offered for sale at $79.99 at Defendants' retail outlet store.  Additionally, on or around April 15, 2016, Plaintiff Gennock purchased two knit fashion tops for herself for $20.99 each at an Ann Taylor Loft Outlet Store located in Grove City, Pennsylvania.  The knit tops were advertised on the sales tags and in-store display as having an original price of $34.99. That price was discounted and represented to Plaintiff Gennock as "40% off" according to the price tag and related signage.  However, this product was never offered for sale at $34.99 at Defendants' retail outlet store.  Therefore, Ms. Gennock was damaged by her purchase of these products.

II.     **Defendants**

12.     Defendants operate Ann Taylor and related outlet Ann Taylor Factory and Ann Taylor Loft Outlet stores as well as the anntaylor.com website, and advertise, market, distribute, and/or sell clothing and accessories in California, Pennsylvania, and throughout the United States.

13.     Ascena Retail Group, Inc. ("Defendant Ascena"), is a Delaware corporation with its principle executive offices located at 933 MacArthur Boulevard, Mahwah, New Jersey. According to Defendant Ascena's Form 10-K filed with the Securities and Exchange Commission for the fiscal year ending July 25, 2015, Ascena Retail Group, Inc. is a national specialty retailer offering clothing, shoes and accessories for missy and plus-size women, through its 100% owned subsidiaries.  On August 21, 2015, Defendant Ascena acquired Ann Inc. along with its subsidiaries Ann Taylor, LOFT and Lou & Grey brands.  Defendant Ascena is registered with the New York State Division of Corporations to do business in New York.

14.     Defendant Ann Inc. ("Defendant Ann") is a Delaware corporation with its principle executive offices located at 7 Times Square, New York, New York.  Defendant Ann is a wholly-owned subsidiary of Defendant Ascena.  Defendant Ann, through its wholly-owned subsidiaries, is a leading national specialty retailer of women's apparel, shoes and accessories, sold primarily under the "Ann Taylor" and "LOFT" brands, and its executives and principle offices are located in New York and the conduct and practices at issue in this litigation emanates from New York.  Defendant Ann's employees relating to pricing, merchandising, procurement, marketing, including Defendant Ann's Planning and Allocation and Inventory Strategy, Pricing & Reporting departments are located in New York.  Defendant Ann is registered with the New York State Division of Corporations to do business in New York.

6

## IV.    **FACTUAL BACKGROUND**

15.     On or around November 13, 2015, Plaintiff Morrow went shopping at the Las

Americas Premium Outlets in San Diego, California to purchase clothing and related apparel for

herself and her family.   Upon examining a particular pair of women's "M Pants" at the Ann

Taylor Factory store, she observed that the pants were advertised at "50% off."   Plaintiff Morrow

observed signage within the store and the price tag on the pants, which represented that the pants

were "50% off."   Believing that she was receiving a significant value by purchasing a pair of

pants for $39.99 that were originally priced at $79.99, she decided to purchase the pants and

proceeded to the cash register where she did in fact purchase the pants.

16.     Specifically, relying upon Defendants' misrepresentations and false and deceptive

advertising, Plaintiff Morrow purchased the pants for $39.99 on sale from a regular or original

price of $79.99. Indeed, the receipt for the pants claimed that they were originally $79.99 and

stated: "YOU SAVED 40.00."   Plaintiff Morrow relied on the price tag that indicated the

original or regular price of the pants was "$79.99", and that they were being offered at a

discount, described as "79.99 – 40.00 Special % Off Total."   These purported regular or original

prices and corresponding price "discounts" and savings were false and misleading, as the

prevailing retail price for the "M Pants" during the three months immediately prior to Plaintiff

Morrow's purchase was not the $79.99 price advertised by Defendants.

17.     On or around April 11, 2016, Plaintiff Gennock went shopping at the Grove City

Premium Outlets in Grove City, Pennsylvania to purchase clothing and related apparel for

herself.   Upon examining a particular pair of women's "M Pants" at the Ann Taylor Factory

store, she observed that the pants were advertised at "50% off."   Plaintiff Gennock observed

signage within the store and the price tag on the pants which represented that the pants were

"50% off."  Believing that she was receiving a significant value by purchasing a pair of pants for $39.99 that were originally priced at $79.99, she decided to purchase the pants and proceeded to the cash register where she did in fact purchase the pants.

18.     Specifically, relying upon Defendants' misrepresentations and false and deceptive advertising, Plaintiff Gennock purchased the pants for $39.99.  Plaintiff Gennock relied on the price tag that indicated that the original regular price of the pants were "79.99," and that they were being offered at a discount, described on the receipt as "79.99 – 40.00 Special Price (%) Pants."  These purported regular or original prices and corresponding price "discounts" and savings were false and misleading, as the prevailing retail price for the "M Pants" were artificially inflated and were never the original price for the "M Pants" sold at Defendants' retail outlet stores.

19.     On or around April 15, 2016, Plaintiff Gennock again went shopping at the Grove City Premium Outlets in Grove City, Pennsylvania to purchase clothing and related apparel for herself.  Upon examining a couple of women's "M Knits" tops at the Ann Taylor Loft Outlet store, she observed that the tops were advertised at "40% off."  Plaintiff Gennock observed signage within the store and the price tag on the tops which represented that the tops were "40% off."  Believing that she was receiving a significant value by purchasing knit tops for $20.99 each that were originally priced at $34.99, she decided to purchase the knit tops and proceeded to the cash register where she did in fact purchase two knit tops.

20.     Specifically, relying upon Defendants' misrepresentations and false and deceptive advertising, Plaintiff Gennock purchased the knit tops for $20.99 each.  Indeed, the receipt for the knit tops claimed that they were originally $34.99 and stated: "YOU SAVED 28.00."  Plaintiff relied on the price tag that indicated the original or regular price of the tops was

"$34.99," and that they were being offered at a discount, described on the receipt as "34.99-14.00 Special Price (%) Tops."  These purported regular or original prices and corresponding price "discounts" and savings were false and misleading, as the prevailing retail price for the "M Knits" were artificially inflated and were never the original prices for the "M Knits" sold at Defendants' retail outlet stores.

21.     Plaintiffs believed that the products' regular or original prices were in fact *bona fide* and the actual prices at which Defendants sold such products.  Plaintiffs would not have purchased the products without the misrepresentations made by Defendants.  As a result, Plaintiffs have been personally victimized by and suffered economic injury as a direct result of Defendants' unlawful, unfair, and fraudulent conduct.

22.     Defendants knew that their comparative price advertising is false, deceptive, misleading and unlawful under California, Pennsylvania, federal, and other state law.

23.     Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the proposed Classes the truth about their advertised prices and former prices.

24.     At all relevant times, Defendants have been under a duty to Plaintiffs and the proposed Classes to disclose the truth about theit false discounts.

25.     Plaintiffs relied upon Defendants' artificially inflated regular or original prices and the false discounts associated thereto when purchasing their pants and knit tops at Defendants' Ann Taylor Factory store and Ann Taylor Loft Outlet store, respectively.  Plaintiffs would not have made such purchases but for Defendants' representations of fabricated regular or original prices and false discounts.

26.     Plaintiffs and the Classes reasonably and justifiably acted and relied on Defendants' false pricing scheme which utilized price tags and in-store displays to create substantial price differences that Defendants advertised, and Plaintiffs made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiffs, like other class members, were lured in, relied on, and were damaged by the false pricing scheme that Defendants carried out.

27.     Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the proposed Classes to purchase Ann Taylor branded products in its Ann Taylor Factory, Ann Taylor Loft Outlet, and/or retail outlet stores.

## V.     CLASS ALLEGATIONS

28.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Class (the "Nationwide Class") against Defendants:

> All persons who purchased one or more items from Defendants offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

29.     Plaintiffs also bring this action individually and as a Class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of California (the "California Class"):

> All persons residing in the State of California who purchased one or more items from Defendants offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

30.     Plaintiffs also bring this action individually and as a Class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of Pennsylvania (the "Pennsylvania Class"):

> All persons residing in the State of Pennsylvania who purchased one or more items from Defendants offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

31.     Plaintiffs also bring, as applicable to the various States, Count VI under Federal Rule of Civil Procedure 23 on behalf of themselves and State Sub-Classes (the "Multistate Classes") defined as:

> All persons in the applicable States who purchased one or more items from Defendants offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

32.     The Nationwide, California, Pennsylvania, and Multistate Classes are collectively referred to as the "Classes."  Excluded from the Classes are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

33.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

34.     ***Numerosity***: The class members are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the proposed Classes contain hundreds of

thousands of individuals who have been damaged by Defendants' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiffs.

35.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.      Whether, during the Class Period, Defendants used false regular  or original price labels and falsely advertised price discounts on their Ann Taylor branded products they sold in their Ann Taylor Factory, Ann Taylor Loft Outlet, and/or retail outlet stores;

b.      Whether, during the Class Period, the regular or original prices advertised by Defendants were the prevailing  prices for the respective Ann Taylor branded products during the three-month period preceding the dissemination and/or publication of the advertised former prices;

c.      Whether Defendants' alleged conduct constitutes violation of the laws asserted;

d.      Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

e.      Whether Defendants engaged in false or misleading advertising;

f.      Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

g.      Whether an injunction is necessary to prevent Defendants from continuing to use false, misleading or illegal price comparison.

36.     ***Typicality***: Plaintiffs' claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members have been deceived (or were likely to be

deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

37.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no antagonistic or adverse interests to those of the Classes.

38.     *Superiority*: The nature of this action and the nature of laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

39.     All Class members, including Plaintiffs, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that former regular or original advertised prices were in existence.  Due to the scope and extent of Defendants' consistent deceptive pricing scheme, disseminated in a years-long campaign to consumers nationwide, including in California and Pennsylvania via a number of different platforms – sales tags, in-store displays, print advertisements, *etc*. – it can be reasonably inferred that such

misrepresentations or omissions of material fact were uniformly made to all members of the Classes.  In addition, it can be reasonably presumed that all Class members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendants' false advertising scheme when purchasing Defendants' merchandise at Defendants' Ann Taylor Factory, Ann Taylor Loft Outlet, and/or retail outlet stores.

40.     During the Class Period, Defendants' deceptive price comparison advertising scheme has been uniformly implemented as part of a concerted, years-long, pervasive campaign to mislead consumers, which is ongoing and continues to this day.  Therefore, Plaintiffs and the Classes face a substantial and imminent risk of future harm and will be injured in the future.

41.     Defendants keep extensive computerized records of their customers through, *inter alia*, customer loyalty programs, co-branded credit cards and general marketing programs. Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

### FIRST CAUSE OF ACTION
### Violation of Unfair Competition Law (the "UCL")
### California Business and Professions Code §17200, *et seq.*
### On Behalf of the California Class

42.     Plaintiff Morrow repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

43.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

44.     The UCL imposes strict liability.   Plaintiff Morrow does not need to prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

45.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

46.     Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison advertising that represented false regular or original prices that were nothing more than fabricated regular prices leading to phantom markdowns.   Defendants' acts and practices offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

47.     The harm to Plaintiff Morrow and California Class members outweighs the utility of Defendants' practices.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

48.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

49.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

50.     Defendants' acts and practices alleged above have deceived Plaintiff Morrow and are highly likely to deceive members of the consuming public.   Plaintiff Morrow relied on Defendants' fraudulent and deceptive representations regarding their regular or original prices

for Ann Taylor branded products that Defendants sell at their Ann Taylor Factory and/or other retail outlet stores.   These misrepresentations played a substantial role in Plaintiff Morrow's decision, and that of the proposed California Class, to purchase merchandise at a steep discount. Plaintiff Morrow would not have purchased such merchandise without Defendants' misrepresentations.

51.   The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. §52(a).   Under the FTCA, false former pricing schemes, similar to the ones implemented by Defendants, are described as deceptive practices that would violate the FTCA:

a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an article price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level — $7.50 — and advertises: "Terrific Bargain: X Pens, Were $10, Now

Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

16 C.F.R. §233.1.

52.     Indeed, the FTCA prohibits such conduct regardless of whether the merchandise

sold uses the words regular, original or former price to deceptively describe merchandise:

> d)  If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered. [Guide I]

16 C.F.R. §233.1.

53.     California law also expressly prohibits false former pricing schemes.  Cal. Bus. &

Prof. Code §17501, entitled "*Worth or value; statements as to former price,*" states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> ***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

54.     As detailed in Plaintiff Morrow's Third Cause of Action below, Cal. Civ. Code

§1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell

them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or

misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

55.     Defendants' practices, as set forth above, have violated the FTCA and California law.  Consequently, Defendants' practices constitute an unlawful and unfair practice within the meaning of the UCL.

56.     Defendants' violation of the UCL through their unlawful, unfair and fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated original or regular prices to "discount" prices that created merely phantom markdowns and lead to financial damage for consumers, like Plaintiff Morrow and the California Class.

57.     Pursuant to the UCL, Plaintiff Morrow and the California Class are entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as disgorgement and restitution to Plaintiff Morrow and the California Class of all of Defendants' revenues associated with their unfair competition, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of the California False Advertising Law,**
**California Business & Professions Code §17500, *et seq.***
**on Behalf of the California Class**

58.     Plaintiff Morrow repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

59.     Cal. Bus. & Prof. Code §17500 provides that:

[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or

means whatever, including over the Internet, any statement…which is ***untrue*** or ***misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

[Emphasis added].

60.    The "intent" required by Cal. Bus. & Prof. Code §17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

61.    Similarly, Cal. Bus. & Prof. Code §17501 provides:

no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

62.    Defendants' routine of advertising discounted prices from false regular or original prices associated with its merchandise, which were never the true prevailing prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue and misleading practice.  Defendants disseminated their false regular or original prices on product sales tags, in-store displays, as well as in print advertising.  This deceptive regular or original prices practice gave consumers the false impression that the products were regularly sold for a substantially higher price than they actually were, therefore leading to the false impression that the Ann Taylor branded products were worth more than they actually were.

63.    Defendants misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

64.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff Morrow and California Class members have suffered injury in fact and have lost money.  As such, Plaintiff Morrow requests that this Court order Defendants to restore this money to her and all California Class members, and to enjoin Defendants from continuing

these unfair practices in violation of the UCL in the future.  Otherwise, Plaintiff Morrow, the

California Class members, and the broader general public will be irreparably harmed and/or

denied an effective and complete remedy.

**THIRD CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §1750, *et seq*.**
**on Behalf of the California Class (for injunctive relief only)**

65.     Plaintiff Morrow repeats and re-alleges the allegations contained in every

preceding paragraph as if fully set forth herein.

66.     This cause of action is brought pursuant to the Consumers Legal Remedies Act

(CLRA), California Civil Code §1750, *et seq*. and similar laws in other states.  Plaintiff Morrow

and each member of the proposed California Class are "consumers" as defined by California

Civil Code §1761(d).  Defendants' sale of Ann Taylor branded products at their Ann Taylor

Factory, Ann Taylor Loft Outlet, and/or other retail outlet stores to Plaintiff Morrow and the

California Class were "transactions" within the meaning of California Civil Code §1761(e).  The

products purchased by Plaintiff Morrow and the California Class are "goods" within the meaning

of California Civil Code §1761(a).

67.     Defendants violated and continue to violate the CLRA by engaging in the

following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff

Morrow and the California Class which were intended to result in, and did result in, the sale of

Ann Taylor branded products:

      a.   Advertising goods or services with intent not to sell them as advertised
(§1770(a)(9));

      b.   Making false or misleading statements of fact concerning reasons for,
existence of, or amounts of price reductions (§1770(a)(13)).

20

68. Pursuant to §1782(a) of the CLRA, on May 4, 2016 Plaintiff Morrow's counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.  If Defendants fail to respond to Plaintiff Morrow's counsel's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of the written notice, as proscribed by §1782, Plaintiff Morrow will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendants.  As to this cause of action, at this time, Plaintiff Morrow seeks only injunctive relief.

### FOURTH CAUSE OF ACTION
**Violation of Unfair Trade Practices & Consumer Protection Law ("UTPCPL")**
**73 Pennsylvania Statute §§201-1, *et seq.***
**on Behalf of the Pennsylvania Class**

69. Plaintiff Gennock repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

70. This cause of action is brought pursuant to Pennsylvania's Unfair Trade Practices & Consumer Protection Law (UTPCPL), Title 73 of Pennsylvania Statute §§201-1, *et seq.* Defendants' advertising, marketing, and sale of Ann Taylor branded products at their Ann Taylor Factory, Ann Taylor Loft Outlet, and/or other retail outlet stores to Plaintiff Gennock and the Pennsylvania Class constitutes "trade" or "commerce" within the meaning of 73 P.S. §201-2(3).

71. The UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean any one or more of the following acts and declares such acts to be unlawful under §201-3:

    a. Advertising goods or services with intent not to sell them as advertised (§201-2(4)(ix));

    b. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions (§201-2(4)(xi));

    c. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§201-2(4)(xxi)).

72.    Defendants violated and continue to violate the UTPCPL by engaging in the above conduct proscribed under 73 P.S. §201-2(3) in transactions with Plaintiff Gennock and the proposed Pennsylvania Class which were intended to result in, and did result in, the sale of Ann Taylor branded products.

73.    Defendants' acts and practices alleged above have misled Plaintiff Gennock and the proposed Pennsylvania Class and are highly likely to create confusion and misunderstanding among the consuming public. Plaintiff Gennock relied on Defendants' fraudulent and deceptive representations regarding their "market" prices for Ann Taylor branded products that Defendants sell at their Ann Taylor Factory Store, Ann Taylor Loft Outlet Store, and/or other retail outlet stores. These misrepresentations misled Plaintiff Gennock and the proposed Pennsylvania Class as to the true value of the price reductions because the pants were never offered for sale at $79.99 and the knit tops were never offered for sale at $34.99 at Defendants' retail outlet stores. This deceptive pricing scheme gave consumers the false impression that the products were regularly sold for a substantially higher price than they actually were, therefore leading to the false impression that the Ann Taylor branded products were worth more than they actually were.

74.    Plaintiff Gennock and the proposed Pennsylvania Class would not have purchased such products but for Defendants' misleading and false advertisements. As a direct and proximate result of Defendants' misrepresentations, Plaintiff Gennock and the proposed Pennsylvania Class members have suffered injury in fact and have lost money.

75.     As such, Plaintiff Gennock requests that this Court issue a permanent injunction to restrain Defendants from continuing these unfair practices in violation of the UTPCPL in the future. 73 P.S. §201-4.   Plaintiff Gennock also requests that this Court order Defendants to restore the money to her and all proposed Pennsylvania Class members that was acquired as a result of Defendants' unfair and deceptive practices. §201-4.1.   Otherwise, Plaintiff Gennock, Pennsylvania Class members, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.   Lastly, Plaintiff Gennock seeks actual damages and requests that the Court exercise its discretion to award treble damages based on Defendants' egregious and systematic misconduct and award Plaintiff Gennock costs and reasonable attorneys' fees. §201-9.2.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment on Behalf of the Nationwide Class,
### or, in the Alternative, on Behalf of the California and Pennsylvania Classes

76.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

77.     Plaintiffs bring this claim individually, as well as on behalf of members of the Nationwide Class, under the law of New York.   Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are a few real differences.   In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.   At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.   The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the

different jurisdictions from which Class members will be drawn, the law of New York applies to the claims of the Classes.

78.     In the alternative, Plaintiffs bring this claim individually as well as on behalf of the California and Pennsylvania Classes.

79.     At all times relevant hereto, Defendants deceptively priced, marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

80.     Plaintiffs and members of the Classes conferred upon Defendants non-gratuitous payments for merchandise that they would not have if not for Defendants' deceptive pricing, advertising, and marketing.  Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

81.     Defendants have been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiffs and members of the Classes, which retention, under these circumstances, is unjust and inequitable because Defendants misrepresented, among other things, that their merchandise was being offered at a significant discount, which caused injuries to Plaintiffs and members of the Classes because they paid for, and/or paid a price premium due to the misleading pricing and advertising.

82.     Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiffs and members of the Classes for unjust enrichment, as ordered by the Court.

**SIXTH CAUSE OF ACTION**
**Violations of the Consumer Protection Laws on Behalf**
**of Classes in the States with Similar Laws**

83.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

84.     Plaintiffs bring this Count individually under the laws of California and Pennsylvania and on behalf of all other persons who have purchased Defendants' merchandise in states having similar laws regarding consumer fraud and deceptive trade practices.

85.     Plaintiffs and each of the other members of the Classes are consumers, purchasers entitled to the protection of the consumer protection laws of the states in which they purchased merchandise from Defendants.

86.     The consumer protection laws of the states in which Plaintiffs and the other members of the Classes purchased Defendants' merchandise declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

87.     Forty-one states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade, business practices, and false advertising that allow consumers to bring private and/or class actions.  These statutes are found at:

   a.     Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, *et seq.*;

   b.     Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471, *et seq.*;

   c.     Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq.*;

d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

e.    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq.*;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§42-110a, *et seq.*;

g.    Delaware Deceptive Trade Practices Act, Del. Code tit. 6, §2511, *et seq.*;

h.    District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901, *et seq.*;

i.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, *et seq.*;

j.    Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*;

k.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes §480-1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1, *et seq.*;

l.    Idaho Consumer Protection Act, Idaho Code Ann. §48-601, *et seq.*;

m.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*;

n.    Kansas Consumer Protection Act, Kan. Stat. Ann §50-623, *et seq.*;

o.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §365.020, *et seq.*;

p.    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, *et seq.*;

q.    Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. Tit. 10, §1211, *et seq.*;

r.     Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A, §1, *et seq.*;

s.     Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, *et seq.*;

t.     Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §325F.68 *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44, *et seq.*;

u.     Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1, *et seq.*;

v.     Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

w.     Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101, *et seq.*;

x.     Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903, *et seq.*;

z.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1, *et seq.*;

aa.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1, *et seq.*;

bb.     New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1, *et seq.*;

cc.     New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349, *et seq.*;

dd.     North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01, *et seq.*;

ee.     Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.01, *et seq.*; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.     Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §751, *et seq.*;

gg.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat. §646.605, *et seq.*;

hh.   Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 P.S. §§201-1, *et seq.*;

ii.   Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, *et seq.*;

jj.   South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.*;

kk.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §37 24 1, *et seq.*;

ll.   Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*;

mm.   Vermont Consumer Fraud Act, Vt. St. Ann. tit. 9, §2451 *et seq.*;

nn.   Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010, *et seq.*;

oo.   West Virginia Consumer Credit and Protection Act, W. Va. Code §46A-6-101, *et seq.*; and

pp.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq.*

88.   Defendants' merchandise constitutes products to which these consumer protection laws apply.

89.   In the conduct of trade or commerce regarding the pricing, advertising, marketing, and sale of their merchandise, Defendants engaged in one or more unfair or deceptive acts or practices, including but not limited to, uniformly representing to Plaintiffs and each member of the Classes by means of the pricing and advertising of their merchandise that it was, among other things, being offered at a discount, as described herein.

90.   Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

91.     Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

92.     Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiffs and members of the Classes rely thereon.

93.     Plaintiffs and the other members of the Classes did so rely.

94.     Plaintiffs and the other members of the Classes purchased merchandise sold by Defendants which misrepresented the magnitude of the price discounts offered for the merchandise.

95.     Plaintiffs and the other members of the Classes would not have purchased such merchandise but for Defendants' deceptive and unlawful acts.

96.     As a result of Defendants' conduct, Plaintiffs and the other members of the Classes sustained damages in amounts to be proven at trial.

97.     Defendants' conduct showed complete indifference to, or conscious disregard for, the rights of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## VI.     PRAYER FOR RELIEF

98.     Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the Classes, request that this Court award relief against Defendants as follows:

a.     An order certifying the class and designating Siobhan Morrow and Ashley Gennock as the Class Representatives and their counsel as Class Counsel;

b.     Awarding damages to Plaintiffs and the proposed Classes members;

c.      Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

d.      Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

e.      Order Defendants to engage in a corrective advertising campaign;

f.      Awarding attorneys' fees and costs; and

g.      For such other and further relief as the Court may deem necessary or appropriate.

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated: May 4, 2016

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
Erin Green Comite
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com

30

**CARLSON LYNCH SWEET KILPELA &
CARPENTER, LLP**
Edwin J. Kilpela
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com
glynch@carlsonlynch.com

*Attorneys for Plaintiffs*