UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated, | Civil Action No.16-cv-3340 (JPO) (SN) |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| ANN INC., a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Siobhan Morrow and Ashley Gennock ("Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Defendant Ann Inc. ("Defendant") and state:

I.      **NATURE OF ACTION**

1.      This is a class action regarding Defendant's deceptive pricing and advertising scheme whereby Defendant misrepresented the quality and price of merchandise sold in its Ann Taylor Factory and LOFT Outlet stores (the "Outlet Stores").

2.      During the Class Period (defined below), Defendant engaged in a uniform nationwide, on-going, pervasive and continuous campaign of falsely claiming on its sales tags, in-store displays, and its websites that its Outlet Store products were originally or regularly sold at much higher prices, and misrepresenting that its Outlet Store products once were sold in its Ann Taylor and LOFT retail stores (the "Retail Stores"), in order to induce Plaintiffs and all Class members to purchase its merchandise.

3.     However, Defendant's Outlet Store merchandise was specifically manufactured for exclusive sale in its Outlet Stores, and was not previously sold in its mainline Retail Stores. In addition, the advertised discount prices on these goods are illusory as those prices were based on a fictitious original or regular price.  In fact, the represented discounts were nothing more than mere phantom markdowns because the represented regular or original prices were artificially inflated and were never the original prices for the merchandise sold at Defendant's Outlet Stores. In addition, the represented regular or original prices were not the prevailing retail prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

4.     Through its deceptive pricing and advertising scheme, Defendant uniformly represented and conveyed to consumers false pricing and quality information.  For example, in Defendant's Outlet Stores, the pricing scheme is prominently displayed, advertising deep discounts, including "50% off" and "40% off" various items throughout the stores.

5.     Based on the combination of the represented price reduction, combined with the express percentage discount, reasonable consumers would believe that Defendant was offering *bona fide* discounts off of true former prices.  Indeed, the "% off" representations on price tags and displays are nonsensical if no true former price existed, since "% off" necessarily implies a true former price.

6.     However, the regular or original price never existed and/or did not constitute the prevailing retail prices for such products within the three months immediately preceding the publication of the sales tag.

7.     In fact, Defendant sells its own, exclusive, branded products, and these products are manufactured specifically for Defendant's Outlet Stores and were not previously sold in the

mainline Retail Stores.  There is no other regular or original price for the products being sold other than the price set at Defendant's Outlet Stores.  The difference between the "sale" and regular or original price is a false savings percentage used to lure consumers into purchasing products they believe are significantly discounted and once were sold at Defendant's Retail Stores.  Moreover, Defendant falsely suggests that the products sold at its Outlet Stores are equivalent to the products sold at its mainline Retail Stores.

8.    Defendant's representations were likely to mislead reasonable consumers into believing that Defendant's prices were significantly lower than the prices regularly offered for those products by Defendant, and that consumers would enjoy significant savings by purchasing those products from Defendant.

9.    Furthermore, Defendant's false and/or misleading pricing representations made it more likely that consumers would purchase particular products from Defendant.  For some products, Defendant's misleading claims of a huge discount (often in excess of 40% or 50% off of "regular" or "original" listed prices) were likely to deceive consumers, who were not inclined to purchase the product at all, to buy it from Defendant solely because they were misled into believing that they were getting an unusually good deal.

10.    Through its deceptive pricing scheme Defendant violated, and continues to violate California, Pennsylvania, federal, and other state law.  Specifically, Defendant violated, and continues to violate, California's Business & Professions Code §§17200, *et seq.* (the "UCL"), California's Business & Professions Code §§17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), Pennsylvania's Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. §§201-1, *et seq.* (the "UTPCPL"), the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or

deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and dissemination of false advertisements.  15 U.S.C. §52(a).

11.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more items at Defendant's Outlet Stores that were deceptively represented as discounted from false regular or original former prices in order to halt the dissemination of these false, misleading, and deceptive pricing scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased products resulting from this scheme.   Given that Defendant's conduct is pervasive and ongoing, Plaintiffs seek to permanently enjoin Defendant from using deceptive pricing regarding retail price comparisons, including but not limited to, such pricing contained on the sales tags, in-store displays, and online.   Further, Plaintiffs seek to obtain damages, restitution, and other appropriate relief in the amount by which Defendant was unjustly enriched as a result of its sales of merchandise offered at a false discount and of false quality.

## II.     <u>JURISDICTION AND VENUE</u>

12.     This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2) and (6).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Classes have a different citizenship from Defendant.

13.     The Southern District of New York has personal jurisdiction over Defendant because Defendant is a corporation or other business entity authorized to conduct, and does conduct business, in the State of New York.  Defendant maintains its headquarters in New York and is registered to do business in New York.  Defendant intentionally availed itself of the New York market through the ownership and operation of numerous retail and outlet Ann Taylor

Factory and LOFT Outlet stores, and other retail outlet stores within this District.

14.     Venue is proper under 18 U.S.C. §1391 because Defendant is headquartered in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District, including the creation of the scheme alleged in this Complaint.

## III.   PARTIES

### A.     Plaintiffs

15.     Siobhan Morrow ("Plaintiff Morrow") resides in, and is a citizen of, San Diego, California.  In reliance on Defendant's false and deceptive pricing scheme, she purchased a pair of pants from an Ann Taylor Factory store located in San Diego, California on or around November 13, 2015.  As detailed herein, Plaintiff Morrow would not have purchased the pants, or would have paid less for them, but for Defendant's false and misleading advertising.

16.     Ashley Gennock ("Plaintiff Gennock") resides in, and is a citizen of, New Castle, Pennsylvania.  In reliance on Defendant's false and deceptive pricing scheme, she purchased a pair of pants from an Ann Taylor Factory store located in Grove City, Pennsylvania, and two knit fashion tops from a LOFT Outlet store also located in Grove City, Pennsylvania.  As detailed herein, Plaintiff Gennock would not have purchased the pants or tops, or would have paid less for them, but for Defendant's false and misleading advertising.

### B.     Defendant

17.     Defendant Ann Inc. ("Defendant") is a Delaware corporation with its principle executive offices located at 7 Times Square, New York, New York.  Defendant is a leading national specialty retailer of women's apparel, shoes and fashion accessories, sold primarily under Defendant's "Ann Taylor" and "LOFT" brand names.  Defendant markets, advertises, distributes and/or sells "Ann Taylor" and "LOFT" branded merchandise throughout California,

Pennsylvania and the United States.

18.    Defendant's conduct and practices described below and at issue in this litigation emanate from New York.  Defendant's principal executive offices are located in New York and Defendant's employees relating to pricing, merchandising, procurement, marketing, including Defendant's Planning and Allocation and Inventory Strategy, Pricing & Reporting departments are located in New York.  Defendant is registered with the New York State Division of Corporations to do business in New York.

## IV.    FACTUAL BACKGROUND

### A.    Discount Pricing Schemes Are Deceptive

19.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. §52(a).

20.    Under the FTCA, advertising must be truthful and non-deceptive, advertisers, such as Defendant, must have evidence to support their claims, and advertisements cannot be unfair.  An advertisement is deceptive, according to the FTCA, if it contains a misstatement, or omits information, that is likely to mislead consumers acting reasonably under the circumstances and if the statement, or omitted information is material, that is important to a consumer's decision to buy or use the product.

21.    The FTCA has issued regulations describing misleading discount price comparison schemes, such as those used by Defendant, as deceptive:

    a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on

the other hand, the former price being advertised is not bona fide but fictitious – for example, where an article, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.   The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level — $7.50 — and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

16 C.F.R. §233.1.

22.    Indeed, the FTCA prohibits such conduct regardless of whether the merchandise

sold uses the words regular, original or former price to deceptively describe merchandise:

d) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered. [Guide I]

16 C.F.R. §233.1.

23.     California law also expressly prohibits false former pricing schemes.  Cal. Bus. &

Prof. Code §17501, entitled "*Worth or value; statements as to former price,*" states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> ***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

24.     As detailed in Plaintiff Morrow's Third Cause of Action below, Cal. Civ. Code

§1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell

them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or

misleading statements of fact concerning reasons for, existence of, or amounts of price

reductions."

25.     The Better Business Bureau ("BBB") Code of Advertising similarly suggests that,

when a retailer compares its selling price to a "former" or "regular" price, "[t]he former price

must be the actual price at which the advertiser has openly and actively offered the product . . .

for sale, for a reasonably substantial period of time, in the recent, regular course of business,

honestly and in good faith."  BBB Code of Advertising, BBB.ORG, https://www.bbb.org/code-

of-advertising/#a1 (last visited July 15, 2016).  The BBB warns:

> Offering prices, as distinguished from actual former selling prices, may be used to deceptively imply a savings. In the event few or no sales were made at the advertised comparative price, the advertiser should make sure that the higher price does not exceed the advertiser's usual and customary retail markup for similar products . . .

*Id*. at 3.3.

26.     Empirical marketing studies demonstrate that retailers have an incentive to engage

in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth for the product and any potential savings. . . . [A] comparative price advertisement can be construed as deceptive if it makes any representation . . . or involves any practice that may materially mislead a reasonable consumer.

Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Marketing 52 (1992).

27.    In short, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value." *Id.* at 55, 56.

28.    Consumers are not told exactly what the regular or original price is, or given any information about the supposed regular or original price, other than the dollar amount and the representation that it is the item's regular or original price.  Nor are they told where Defendant came up with the regular or original price.  They are simply presented with the two prices (the selling price and the higher, "regular," or "original" reference price) and are led to believe that they are actually saving the difference between the two prices.

29.    In the case of semantic cues, such as "original price" or "regular price," the reference price can be informative if, and only if, the reference price provided by the retailer is a true, accurate, *bona fide* original or regular price, which the retailer has charged for the item on a regular basis for a reasonably substantial period o time.  If the "regular" or "original" reference price is not a true, accurate, or *bona fide* regular or original price, the reference price is not only false, but will be deceptive and/or misleading.  *See* Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Marketing 52,

54-55 (1992).

30.     If the "regular" or "original" reference price is not a true, accurate, or *bona fide* regular or original price, then the use of that word or phrase in connection with a reference price is false and/or deceptive and thus, is prohibited by, among other things, FTC regulations, 16 C.F.R. §233.1, *et seq*.

**B.     Defendant's False Advertising Scheme**

31.     Defendant operates Ann Taylor and LOFT Retail and Outlet Stores.  Defendant also operates www.anntaylor.com and www.loft.com.

32.     Defendant manufactures separate items for sale in its Retail and Outlet Stores. The items manufactured for sale at Defendant's Retail Stores generally are high quality merchandise, while the items manufactured for sale at Defendant's Outlet Stores typically are a lower quality product manufactured with cheaper materials and through cheaper processes.

33.     Nevertheless, Defendant represents to consumers that the quality of the items offered between its Retail and Outlet Stores are identical.

34.     Defendant does not use different brand names or labels to distinguish the low-grade merchandise produced exclusively for its Outlet Stores from the higher-grade merchandise produced exclusively for its Retail Stores.  Instead, Defendant uses the same "Ann Taylor" and "LOFT" retail brand names and labeling across all of its Retail and Outlet Stores.  Defendant's uniform use of labels and branding on high and low-grade products makes it impossible for average consumers to distinguish between Defendant's low-grade Outlet Store merchandise and Defendant's high-grade Retail Store products.

35.     Defendant's uniform branding and labeling of its Outlet and Retail products make it reasonable for consumers to believe that the products are of the same quality and grade.

36.     Outlet stores, like Defendant's, historically have "offered excess inventory and slightly damaged goods that retailers were unable to sell at regular retail stores."  *See* Letter from Congress to Federal Trade Commission (Jan. 30, 2014), *available at*, http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers.

37.     Indeed, the very term "outlet" or "factory" conveys to reasonable consumers that at least some products are comprised of high quality merchandise formerly offered for sale at full-price retail locations.  *See, e.g.*, *In re Simon Prop. Grp. Inc.*, 151 F.T.C. 23, 36 (F.T.C. 2011) (consent decree defining "outlet stores" as "retail stores, shops or other establishments in which manufacturers sell their stock and other merchandise directly to the public through factory-direct-to-consumer branded store locations at discounted prices, and which are often used by manufacturers to liquidate stock").

38.     Defendant even refers to its Retail Stores as "full-price" stores.  *See* Ann Inc., About Us, http://www.anninc.com/aboutUs.asp (last visited July 15, 2016).  Defendant's "full-price" label suggests that its Retail Stores sell merchandise at "full-price," while Defendant's Outlet Stores sell the same merchandise at a discount.

39.     Defendant further deceives consumers about the price of the goods offered at its Outlet Stores by representing that its Outlet merchandise is being sold at a discount, when in fact, the merchandise is being sold at its regular or original price.

40.     Specifically, Defendant displays signs advertising deep discounts of "XX% off" various items throughout its Outlet Stores.  Additionally, for specific products, Defendant represents on the price tag that the particular product once was sold at a higher original price, but now is being sold at a substantially lower discount price.  Defendant advertises the difference

between the higher original price and the lower discount price as a savings percentage.

41.     Below is an example of a store display advertising Defendant's purported discount:



42.     Defendant's advertised original and discount prices are a sham.  These prices never existed and are created by Defendant to create the illusion of a sale.  The true original price for Defendant's discounted merchandise is the advertised discount price.  As the advertised discount price is the actual original price, Defendant's advertised discount savings are fictional and constitute false savings representations.

43.     By representing that its Outlet products once were sold at a high original price, but now are being sold at a substantial discount, Defendant further deceives consumers into believing that Defendant's Outlet products are of the same quality as its Retail Products, and once were sold at full-price in Defendant's Retail Stores.

44.     Defendant also induces consumers into buying its Outlet products on the belief that the consumer is enjoying a substantial price savings, and receiving a product of high quality,

when, in fact, the consumer is buying a low-grade product at its regular, original price.

45.     Defendant intentionally labeled and branded its products with uniformity across its Retail and Outlet stores to deceive consumers into believing that they were purchasing higher quality goods, when, in fact, consumers were purchasing low-quality goods specifically made for Defendant's Outlet Stores.  Defendant furthered this deception by falsely pricing its Outlet Store goods to lead consumers to believe that these goods once were sold for their full, original price at Defendant's Retail Stores.

46.     Defendant also intentionally advertised its Outlet Store merchandise as being sold at a substantial discount in order to induce consumers to buy those goods on the representation that the consumer was receiving a substantial price savings and purchasing a product of higher, rather than lower, quality.

**C.     Plaintiffs' Experience**

47.     On November 13, 2015, Plaintiff Morrow went shopping at an Ann Taylor Factory store located in the Las Americas Premium Outlets in San Diego, California to purchase clothing for herself.

48.     Upon entering the store, she noticed a pair of women's "M Pants" branded and labeled with the "Ann Taylor" brand name.  The product price tag advertised the pants as having an original price of $79.99 and as being on sale at a discount price of $39.99.  Plaintiff viewed and relied on the representation that the product price tag and related in-store signage also advertised the pants as "50% off."

49.     The pants' branding and labeling, as well as its price tag and related in-store signage, led Plaintiff Morrow to believe that by purchasing the pants she was receiving a significant discount on a high-quality product manufactured for, and once sold in, Defendant's

Retail Stores.  The pants' price tag and in-store signage further induced Plaintiff to purchase the pants because they led Plaintiff to believe that by purchasing the pants, she was enjoying a substantial discount on a product formerly valued at $79.99.

50.     Plaintiff Morrow observed signage within the store and the price tag on the pants, which represented that the pants were "50% off."  Believing that she was receiving a significant value by purchasing a pair of pants for $39.99 that were originally priced at $79.99, she decided to purchase the pants and proceeded to the cash register where she did in fact purchase the pants.

51.     Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff Morrow purchased the pants for $39.99 on sale from a regular or original price of $79.99. Indeed, the receipt for the pants claimed that they were originally $79.99 and stated: "YOU SAVED 40.00."   Plaintiff Morrow relied on the price tag that indicated the original or regular price of the pants was "$79.99", and that they were being offered at a discount, described as "79.99 - 40.00 Special % Off Total."

52.     The receipt confirmed the "savings" of $40.00 Plaintiff Morrow believed she was receiving based on the price tag and store signage:



53.     On April 11, 2016, Plaintiff Gennock went shopping at an Ann Taylor Factory store located in the Grove City Premium Outlets in Grove City, Pennsylvania to purchase clothing and related apparel for herself.

54.     Upon entering the store, she noticed a pair of women's "M Pants" branded and labeled with the "Ann Taylor" brand name.  The product price tag advertised the pants as having an original price of $79.99 and as being on sale at a discount price of $39.99.  Plaintiff viewed and relied on the representation that the product price tag and related in-store signage also advertised the pants as "50% off."

55.     The pants' branding and labeling, as well as its price tag and related in-store signage, led Plaintiff Gennock to believe that by purchasing the pants she was receiving a significant discount on a high-quality product manufactured for, and once sold in, Defendant's Retail Stores.  The pants' price tag and in-store signage further induced Plaintiff to purchase the pants because they led Plaintiff to believe that by purchasing the pants, she was enjoying a substantial discount on a product formerly valued at $79.99.

56.     Plaintiff Gennock observed signage within the store and the price tag on the pants which represented that the pants were "50% off."  Believing that she was receiving a significant value by purchasing a pair of pants for $39.99 that were originally priced at $79.99, she decided to purchase the pants and proceeded to the cash register where she did in fact purchase the pants.

57.     Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff Gennock purchased the pants for $39.99.  Plaintiff Gennock relied on the price tag that indicated that the original regular price of the pants were "79.99," and that they were being offered at a discount, described on the receipt as "79.99 - 40.00 Special Price (%) Pants."

58.     The receipt confirmed the "savings" of $40.00 Plaintiff Gennock believed she was receiving based on the price tag and store signage:



59.     On April 15, 2016, Plaintiff Gennock again went shopping at a LOFT Outlet store in the Grove City Premium Outlets in Grove City, Pennsylvania to purchase clothing and related apparel for herself.

60.     Upon entering the store, she noticed a pair of women's "M Knits" tops branded and labeled with the "Ann Taylor" brand name.  The product price tag advertised the tops as having an original price of $34.99 and as being on sale at a discount price of $20.99.  Plaintiff viewed and relied on the representation that the product price tag and related in-store signage also advertised the tops as "40% off."

61.     The tops' branding and labeling, as well as its price tag and related in-store signage, led Plaintiff Gennock to believe that by purchasing the tops she was receiving a

significant discount on a high-quality product manufactured for, and once sold in, Defendant's Retail Stores. The tops' price tag and in-store signage further induced Plaintiff to purchase the tops because they led Plaintiff to believe that by purchasing the tops, she was enjoying a substantial discount on a product formerly valued at $34.99.

62.     Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff Gennock purchased the knit tops for $20.99 each. Indeed, the receipt for the knit tops claimed that they were originally $34.99 and stated: "YOU SAVED 28.00." Plaintiff relied on the price tag that indicated the original or regular price of the tops was "$34.99," and that they were being offered at a discount, described on the receipt as "34.99-14.00 Special Price (%) Tops."

63.     The receipt confirmed the "savings" of approximately $48.00 Plaintiff Gennock believed she was receiving based on the price tags and store signage:



64.    The purported regular prices, discount prices, and corresponding discount savings on which Plaintiffs relied were false and misleading.   The "M Pants" purchased by both Plaintiffs and the "M Knits" tops purchased by Plaintiff Gennock were never offered at their advertised original prices.   Instead, the advertised original prices were artificial, and created by

19

Defendant to lead to a false savings impression.   The true original price for the products Plaintiffs' purchased were the advertised discount prices, and Defendant's advertised discount savings were illusory.

66.     Furthermore, the products purchased by Plaintiffs were manufactured specifically for sale at Defendant's Outlet Stores.   Defendant never sold these products at its Retail Stores, and the products were not the same high quality products generally offered at Defendant's Retail Stores.

66.     Plaintiffs believed they were purchasing Retail quality merchandise from Defendant, and would not have purchased the products, or would have paid less for them, had they known they were purchasing cheaper, low quality, made-for-outlet clothing.

67.     Plaintiffs further believed the products' regular or original prices were, in fact, *bona fide* and the actual prices at which Defendant sold such products, and  Plaintiffs would not have purchased the products, or would not have paid as much for the merchandise, had they known the products were being sold at their regular price, rather than at a substantial discount. As a result, Plaintiffs have been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair, and fraudulent conduct.

68.     Plaintiffs were each confronted with a reference price – the price tags – on the items they purchased and the in-store displays from Defendant, which were falsely represented to be regular or original prices.   Plaintiffs reasonably believed, like all reasonable consumers, that the regular or original price represented the price at which each respective item regularly sold at Defendant's Retail and Outlet Stores and that they were receiving a significant discount off of that regular or original price.

69.     Reasonable consumers, like Plaintiffs, would believe that Defendant's advertised

"regular" and/or "original" prices referred to the actual prices that each respective item regularly or originally sold for.

70.     Plaintiffs' counsel tracked the pricing on various consumer goods at various retail stores, including the Ann Taylor Factory store and LOFT Outlet stores for several months preceding and subsequent to Plaintiffs' purchases.  Plaintiffs' counsel's investigation revealed that the "original" price of the pants purchased by Plaintiff Morrow was never the prevailing market price at the Ann Taylor Factory store in the 90 days preceding Plaintiff Morrow's purchase, nor were the pants ever offered for sale at the "original" price at the Ann Taylor retail store.  Instead, Defendant continuously offered all styles of pants for sale at discounted prices, varying from 20% to 50% off the "original" price on the products' price tags.  Plaintiffs' counsel's investigation revealed that this was a pervasive practice at the Ann Taylor Factory store where Plaintiff Morrow made her purchase.   Plaintiff's counsel's investigation also revealed that women's slacks and various blouses at the LOFT Outlet store were continuously offered at a 40% off discount.

71.     Plaintiffs' counsel conducted a follow up investigation on July 11, 2016 at the Ann Taylor Factory store and the LOFT Outlet store located at Las Americas Premium Outlets, 4155 Camino De La Plaza, San Diego, CA 92173.   The Ann Taylor Factory store was advertising all of its women's slacks at 40% off discount.  In fact, every piece of merchandise in the outlet was discounted on a "percentage off," basis, consistent with Plaintiffs' counsel's previous investigations in 2015.   The LOFT Outlet store was similarly discounting women's pants anywhere from 25% to 40% off.  The LOFT Outlet store also offered a "percentage off" discount on every item offered for sale within the store.

72.     Plaintiffs are informed and believe that similar acts of misleading, untrue, false

and deceptive advertising were committed by Defendant with respect to Plaintiffs and Class members' purchases at Defendant's Outlet Stores throughout the years.

73.     Plaintiffs are informed and believe that Defendant's practices have been on-going, pervasive throughout the Class Period, and hundreds of thousands of consumers have been injured not only in California and Pennsylvania but throughout the U.S.

74.     Plaintiffs assert that Defendant continues to employ deceptive, false, and misleading advertising practices as alleged herein.

75.     Defendant knew its comparative price and outlet advertising scheme was false, deceptive, misleading and unlawful under California, Pennsylvania, federal, and other state law.

76.     Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the proposed Classes the truth about its advertised prices and product quality.

77.     At all relevant times, Defendant has been under a duty to Plaintiffs and the proposed Classes to disclose the truth about its false discounts and the true quality of its products.

78.     Plaintiffs relied upon Defendant's artificially inflated regular or original prices and the false discounts associated thereto when purchasing merchandise at Defendant's Outlet Stores.  Plaintiffs also relied on Defendant's representation that its products were of high quality Retail grade.  Plaintiffs would not have made their purchases, or would have paid less for them, but for Defendant's representations of fabricated regular or original prices and false discounts, and the representation that Defendant's Outlet Store products are of the same high quality as Defendant's Retail Store merchandise.

79.     Plaintiffs and the Classes reasonably and justifiably acted and relied on Defendant's false pricing and advertising scheme, which utilized price tags, brand names and labels, and in-store displays to create the illusion that Plaintiffs were purchasing high quality Retail grade merchandise for a substantial discount.  Plaintiffs, like other class members, were lured in, relied on, and were damaged by the Defendant's false pricing scheme.

80.     Defendant intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the proposed Classes to purchase "Ann Taylor" and "LOFT" branded products in its Outlet Stores.

## V.     CLASS ALLEGATIONS

81.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Class (the "Nationwide Class") against Defendant:

> All persons who purchased one or more items from Defendant at the Outlet Stores offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

82.     Plaintiffs also bring this action individually and as a Class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of California (the "California Class"):

> All persons residing in the State of California who purchased one or more items from Defendant at the Outlet Stores offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

83.     Plaintiffs also bring this action individually and as a Class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of Pennsylvania (the "Pennsylvania Class"):

> All persons residing in the State of Pennsylvania who purchased one or more items from Defendant at the Outlet Stores offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

84.     Plaintiffs also bring, as applicable to the various States, Count VI under Federal Rule of Civil Procedure 23 on behalf of themselves and State Sub-Classes (the "Multistate Classes") defined as:

> All persons in the applicable States who purchased one or more items from Defendant at the Outlet Stores offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the "Class Period").

85.     The Nationwide, California, Pennsylvania, and Multistate Classes are collectively referred to as the "Classes."  Excluded from the Classes are Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Defendant.  Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

86.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

87.     This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

88.     *Numerosity*: The class members are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the proposed Classes contain hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiffs.

89.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.    whether, during the Class Period, Defendant used false regular or original price labels and falsely advertised price discounts on its "Ann Taylor" and "LOFT" branded products they sold in its Outlet Stores;

b.    whether, during the Class Period, the regular or original prices advertised by Defendant were the prevailing  prices for the respective "Ann Taylor" and "LOFT" branded products during the three-month period preceding the dissemination and/or publication of the advertised former prices;

c.    whether, during the Class Period, Defendant falsely represented that the products sold at Defendant's Outlet Stores were once sold at sold at Defendant's Retail Stores;

d.    whether, during the Class Period, Defendant falsely represented that the products sold at Defendant's Outlet Stores are equivalent to the products sold at Defendant's main line Retail Stores and are significantly reduced from the advertised former prices;

e.    whether Defendant's advertising scheme lead reasonable consumers to believe that they were purchasing high quality Retail grade products, when, in fact, they were purchasing low quality made-for-outlet merchandise;

f.    whether Defendant's alleged conduct constitutes violation of the laws asserted;

g.    whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

h.    whether Defendant engaged in false or misleading advertising;

i.      whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

j.      whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparison.

90.     *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

91.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no antagonistic or adverse interests to those of the Classes.

92.     *Superiority*: The nature of this action and the nature of laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

93.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because individual actions by Class members would create: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant; and/or (2) adjudications that, as a practical matter, would be dispositive of the interests of other Classes members not parties to the adjudications, and would substantially impair or impede the ability of such non-party Class members to protect their interests.

94.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief respecting the Classes as a whole.

95.     This action is maintainable as a Class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

96.     All Class members, including Plaintiffs, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that former regular or original advertised prices were in existence, that the products sold at Defendant's Outlet Stores were once sold at Defendant's Retail Stores, that the products sold at Defendant's Outlet Stores are equivalent to the products sold at Defendant's main line Retail Stores and are significantly reduced off of the advertised former prices and that Plaintiffs and the members of the Classes were receiving high quality Retail Store items by purchasing Defendant's Outlet Store products. Due to the scope and extent of Defendant's consistent deceptive pricing scheme, disseminated in a years-long campaign to consumers nationwide, including in California and Pennsylvania, via a number of different platforms — sales tags, in-store displays, print advertisements, *etc*. — it can

be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Classes.  In addition, it can be reasonably presumed that all Class members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing Defendant's merchandise at Defendant's Outlet Stores.

97.     During the Class Period, Defendant's deceptive price comparison advertising scheme has been uniformly implemented as part of a concerted, years-long, pervasive campaign to mislead consumers, which is ongoing and continues to this day.  Therefore, Plaintiffs and the Classes face a substantial and imminent risk of future harm and will be injured in the future.

98.     Defendant keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs, co-branded credit cards and general marketing programs. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and Defendant maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

### FIRST CAUSE OF ACTION
**Violation of Unfair Competition Law (the "UCL")**
**California Business and Professions Code §17200, *et seq*.**
**On Behalf of the California Class**

99.     Plaintiff Morrow repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

100.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

101.   The UCL imposes strict liability.  Plaintiff Morrow does not need to prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

102.   A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

103.   Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false regular or original prices that were nothing more than fabricated regular prices leading to phantom markdowns.  Defendant's actions also lead consumers to believe that: the products sold at Defendant's Outlet Stores were once sold at Defendant's Retail Stores, products sold at Defendant's Outlet Stores are equivalent to the products sold at Defendant's main line Retail Stores and are significantly reduced off of the advertised former prices, and they were purchasing high quality Retail products, when, in fact, they were purchasing lower grade made-for-outlet merchandise.  Defendant's acts and practices offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

104.   The harm to Plaintiff Morrow and California Class members outweighs the utility of Defendant's practices.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

105.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

106.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

107.    Defendant's acts and practices alleged above have deceived Plaintiff Morrow and are highly likely to deceive members of the consuming public.  Plaintiff Morrow relied on Defendant's fraudulent and deceptive representations regarding its branding and labeling and its regular or original prices for Ann Taylor branded products that Defendant sells at its Outlet Stores.  These misrepresentations played a substantial role in Plaintiff Morrow's decision, and that of the proposed California Class, to purchase merchandise at a steep discount.  Plaintiff Morrow would not have purchased such merchandise, or would have paid less for the merchandise, without Defendant's misrepresentations.

108.    Defendant's practices, as set forth above, have violated the FTCA and California law.  Consequently, Defendant's practices constitute an unlawful and unfair practice within the meaning of the UCL.

109.    Plaintiff Morrow purchased Defendant's merchandise in reliance on Defendant's representations that its merchandise was, among other things, being offered at a significant discount and was high-quality retail grade merchandise.  Plaintiff would not have purchased the merchandise at all, or would not have paid as much as she did, but for Defendant's false promotion that its merchandise was, among other things, being offered at a significant discount and was high-quality retail grade merchandise.  Plaintiff and the California Class have all paid money for Defendant's merchandise.  However, Plaintiff and the California Class did not obtain the full value of the advertised product due to Defendant's misrepresentations regarding its merchandise.  Accordingly, Plaintiff and the California Class have suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

110.    Defendant's violation of the UCL through its unlawful, unfair and fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on deceptive brand names and labeling and price comparisons of arbitrary and inflated original or regular prices to "discount" prices that created merely phantom markdowns and lead to financial damage for consumers, like Plaintiff Morrow and the California Class.

111.    Pursuant to the UCL, Plaintiff Morrow and the California Class are entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiff Morrow and the California Class of all of Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of the California False Advertising Law ("FAL"),**
**California Business & Professions Code §17500, *et seq.***
**on Behalf of the California Class**

112.    Plaintiff Morrow repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

113.    Cal. Bus. & Prof. Code §17500 provides that:

[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is ***untrue*** or ***misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

[Emphasis added].

114.    The "intent" required by Cal. Bus. & Prof. Code §17500 is the intent to dispose of

property, and not the intent to mislead the public in the disposition of such property.

115.   Similarly, Cal. Bus. & Prof. Code §17501 provides:

> no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

116.   Defendant's routine of advertising discounted prices from false regular or original prices associated with its merchandise, which were never the true prevailing prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue and misleading practice.  Defendant disseminated its false regular or original prices on product sales tags, in-store displays, as well as in print advertising.  These deceptive regular or original prices practice gave consumers the false impression that the products were regularly sold for a substantially higher price than they actually were, therefore leading to the false impression that the "Ann Taylor" and "LOFT" branded products were worth more than they actually were.  Moreover, Defendant falsely represented that the products sold at Defendant's Outlet Stores were once sold at Defendant's Retail Stores and that the products sold at Defendant's Outlet Stores are equivalent to the products sold at Defendant's main line Retail Stores and are significantly reduced off of the advertised former prices and they were purchasing high quality Retail products, when, in fact, they were purchasing lower grade made-for-outlet merchandise.

117.   Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code, as alleged above.

118.   As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff Morrow and California Class members have suffered injury in fact and have lost money.  As such, Plaintiff Morrow requests that this Court order Defendant to restore

this money to her and all California Class members, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future.  Otherwise, Plaintiff Morrow, the California Class members, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §1750, *et seq.* on Behalf of the California Class

119.    Plaintiff Morrow repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

120.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code §1750, *et seq.*  Plaintiff Morrow and each member of the proposed California Class are "consumers" as defined by California Civil Code §1761(d). Defendant's sale of "Ann Taylor" and "LOFT" branded products at its Outlet Stores to Plaintiff Morrow and the California Class were "transactions" within the meaning of California Civil Code §1761(e).  The products purchased by Plaintiff Morrow and the California Class are "goods" within the meaning of California Civil Code §1761(a).

121.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Morrow and the California Class which were intended to result in, and did result in, the sale of "Ann Taylor" and "LOFT" branded products:

a.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another (§1770(a)(7));

b.  Advertising goods or services with intent not to sell them as advertised (§1770(a)(9));

c.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (§1770(a)(13)).

33

122.    Pursuant to §1782(a) of the CLRA, on May 4, 2016, Plaintiff Morrow's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.

123.    Defendant failed to respond to Plaintiff's letter, and, as of the date of this Amended Complaint, still has not provided a response.  Therefore, and pursuant to §1782 of the CLRA, Plaintiff Morrow, in addition to injunctive relief, seeks claims for actual, punitive and statutory damages, as appropriate against Defendant.

**FOURTH CAUSE OF ACTION**
**Violation of Unfair Trade Practices & Consumer Protection Law ("UTPCPL")**
**73 Pennsylvania Statute §§201-1, *et seq.***
**on Behalf of the Pennsylvania Class**

124.    Plaintiff Gennock repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

125.    This cause of action is brought pursuant to Pennsylvania's Unfair Trade Practices & Consumer Protection Law (UTPCPL), Title 73 of Pennsylvania Statute §§201-1, *et seq.* Defendant's advertising, marketing, and sale of "Ann Taylor" and "LOFT" branded products at its Outlet Stores to Plaintiff Gennock and the Pennsylvania Class constitutes "trade" or "commerce" within the meaning of 73 P.S. §201-2(3).

126.    The UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean any one or more of the following acts and declares such acts to be unlawful under §201-3:

   a.   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another ((§201-2(4)(vii));

34

    b.   Advertising goods or services with intent not to sell them as advertised (§201-2(4)(ix));

    c.   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions (§201-2(4)(xi));

    d.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§201-2(4)(xxi)).

127.    Defendant violated and continue to violate the UTPCPL by engaging in the above conduct proscribed under 73 P.S. §201-2(3) in transactions with Plaintiff Gennock and the proposed Pennsylvania Class which were intended to result in, and did result in, the sale of "Ann Taylor" and "LOFT" branded products.

128.    Defendant's acts and practices alleged above have misled Plaintiff Gennock and the proposed Pennsylvania Class and are highly likely to create confusion and misunderstanding among the consuming public.  Plaintiff Gennock relied on Defendant's branding and labeling and fraudulent and deceptive representations regarding their regular or original prices for "Ann Taylor" and "LOFT" branded products that Defendant sells at its Outlet Stores.   These misrepresentations misled Plaintiff Gennock and the proposed Pennsylvania Class as to the true value of the price reductions because the pants were never offered for sale at $79.99 and the knit tops were never offered for sale at $34.99 at Defendant's Retail Stores.  This deceptive pricing scheme gave consumers the false impression that the products were of Retail quality and were regularly sold for a substantially higher price than they actually were, therefore leading to the false impression that the "Ann Taylor" and "LOFT" branded products were worth more than they actually were.

129.    Plaintiff Gennock and the proposed Pennsylvania Class would not have purchased such products but for Defendant's misleading and false advertisements.   As a direct and proximate result of Defendant's misrepresentations, Plaintiff Gennock and the proposed

Pennsylvania Class members have suffered injury in fact and have lost money.

130.    As such, Plaintiff Gennock requests that this Court, pursuant to 73 P.S. § 201-9.2, award actual damages, statutory damages, treble damages, costs and reasonable attorney fees, and provide such additional relief as it deems necessary or proper.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment on Behalf of the Nationwide Class,**
**or, in the Alternative, on Behalf of the California and Pennsylvania Classes**

131.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

132.    Plaintiffs bring this claim individually, as well as on behalf of members of the Nationwide Class, under the law of New York.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are a few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn, the law of New York applies to the claims of the Nationwide Class.

133.    In the alternative, Plaintiffs bring this claim individually as well as on behalf of the California and Pennsylvania Classes.

134.    At all times relevant hereto, Defendant deceptively priced, marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

135.    Plaintiffs and members of the Classes conferred upon Defendant non-gratuitous

payments for merchandise that they would not have if not for Defendant's deceptive pricing, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

136.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiffs and members of the Classes, which retention, under these circumstances, is unjust and inequitable because Defendant misrepresented, among other things, that its merchandise was being offered at a significant discount, which caused injuries to Plaintiffs and members of the Classes because they paid for, and/or paid a price premium due to the misleading pricing and advertising.

137.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Classes under these circumstances make Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and members of the Classes for unjust enrichment, as ordered by the Court.

### SIXTH CAUSE OF ACTION
**Violations of the Consumer Protection Laws
on Behalf of the Multi-State Class**

138.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

139.    Plaintiffs bring this Count individually under the laws of California and Pennsylvania and on behalf of all other persons who have purchased Defendant's merchandise in states having similar laws regarding consumer fraud and deceptive trade practices.

140.    Plaintiffs and each of the other members of the Classes are consumer-purchasers entitled to the protection of the consumer protection laws of the states in which they purchased merchandise from Defendant.

141.    The consumer protection laws of the states in which Plaintiffs and the other members of the Classes purchased Defendant's merchandise declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

142.    Forty-one states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade, business practices, and false advertising that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.     Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, *et seq.*;

    b.     Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471, *et seq.*;

    c.     Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101, *et seq.*;

    d.     California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

    e.     Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq.*;

    f.     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§42-110a, *et seq.*;

    g.     Delaware Deceptive Trade Practices Act, Del. Code tit. 6, §2511, *et seq.*;

    h.     District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901, *et seq.*;

    i.     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.

§501.201, *et seq.*;

j.      Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*;

k.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes §480-1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1, *et seq.*;

l.      Idaho Consumer Protection Act, Idaho Code Ann. §48-601, *et seq.*;

m.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*;

n.      Kansas Consumer Protection Act, Kan. Stat. Ann §50-623, *et seq.*;

o.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §365.020, *et seq.*;

p.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401, *et seq.*;

q.      Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. Tit. 10, §1211, *et seq.*;

r.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A, §1, *et seq.*;

s.      Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, *et seq.*;

t.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §325F.68 *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44, *et seq.*;

u.      Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1, *et seq.*;

v.      Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

w.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101, *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903, *et seq.*;

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1, *et seq.*;

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1, *et seq.*;

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1, *et seq.*;

cc.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349, *et seq.*;

dd.   North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01, *et seq.*;

ee.   Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.01, *et seq.*; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.   Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §751, *et seq.*;

gg.   Oregon Unfair Trade Practices Act, Ore. Rev. Stat. §646.605, *et seq.*;

hh.   Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 P.S. §§201-1, *et seq.*;

ii.   Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, *et seq.*;

jj.   South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.*;

kk.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §37 24 1, *et seq.*;

ll.   Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*;

mm.   Vermont Consumer Fraud Act, Vt. St. Ann. tit. 9, §2451 *et seq.*;

nn.    Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010, *et seq.*;

oo.    West Virginia Consumer Credit and Protection Act, W. Va. Code §46A-6-101, *et seq.*; and

pp.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, *et seq.*

143.    Defendant's merchandise constitutes products to which these consumer protection laws apply.

144.    In the conduct of trade or commerce regarding the pricing, advertising, marketing, and sale of their merchandise, Defendant engaged in one or more unfair or deceptive acts or practices, including but not limited to, uniformly representing to Plaintiffs and each member of the Classes by means of the pricing and advertising of its merchandise that it was, among other things, being offered at a discount, as described herein.  Moreover, Defendant falsely represented that the products sold at Defendant's Outlet Stores were once sold at Defendant's Retail Stores and that the products sold at Defendant's Outlet Stores are equivalent to the products sold at Defendant's main line Retail Stores and are significantly reduced off of the advertised former prices and they were purchasing high quality Retail products, when, in fact, they were purchasing lower grade made-for-outlet merchandise.

145.    Defendant's representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

146.    Defendant knew, or should have known, that its representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

147.    Defendant used or employed such deceptive and unlawful acts or practices with the intent that Plaintiffs and members of the Multi-State Class rely thereon.

148.    Plaintiffs and the other members of the Multi-State Class did so rely.

149.    Plaintiffs and the other members of the Multi-State Class purchased merchandise

sold by Defendant, which Defendant misrepresented the magnitude of the price discounts offered for the merchandise.

150.    Plaintiffs and the other members of the Classes would not have purchased such merchandise but for Defendant's deceptive and unlawful acts.

151.    As a result of Defendant's conduct, Plaintiffs and the other members of the Multi-State Class sustained damages in amounts to be proven at trial.

152.    Defendant's conduct showed complete indifference to, or conscious disregard for, the rights of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## VI.   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and on behalf of the other members of the Classes, request that this Court award relief against Defendant as follows:

A.    An order certifying the class and designating Siobhan Morrow and Ashley Gennock as the Class Representatives and their counsel as Class Counsel;

B.    Awarding damages to Plaintiffs and the proposed Classes members;

C.    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

Case 1:16-cv-03340-JPO   Document 23   Filed 07/15/16   Page 43 of 44


E.      Order Defendant to engage in a corrective advertising campaign;

F.      Awarding attorneys' fees and costs; and

G.      For such other and further relief as the Court may deem necessary or appropriate.

## VII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial for all of the claims so triable.


Date: July 15, 2016                          <u>s/ Joseph P. Guglielmo</u>
                                             Joseph P. Guglielmo
                                             Erin Green Comite
                                             **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
                                             The Chrysler Building
                                             405 Lexington Avenue, 40th Floor
                                             New York, NY 10174
                                             Telephone: 212-223-6444
                                             Facsimile: 212-223-6334
                                             jguglielmo@scott-scott.com
                                             ecomite@scott-scott.com

                                             **CARLSON LYNCH SWEET KILPELA &
                                             CARPENTER, LLP**
                                             Todd D. Carpenter (*Pro Hac Vice forthcoming*)
                                             402 West Broadway, 29th Floor
                                             San Diego, California 92101
                                             Telephone: (619) 347-3517
                                             Facsimile: (619) 756-6990
                                             tcarpenter@carlsonlynch.com

                                             **CARLSON LYNCH SWEET KILPELA &
                                             CARPENTER, LLP**
                                             Gary F. Lynch (*Pro Hac Vice forthcoming*)
                                             Edwin J. Kilpela
                                             1133 Penn Avenue, 5th Floor
                                             Pittsburgh, Pennsylvania 15222
                                             Telephone: (412) 322-9243
                                             Facsimile: (412) 231-0246
                                             ekilpela@carlsonlynch.com
                                             glynch@carlsonlynch.com

                                             *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2016, I caused the foregoing to be served via ECF which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Date: July 15, 2016

*s*/ Joseph P. Guglielmo
Joseph P. Guglielmo