## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated, <br><br>      Plaintiffs, <br><br> vs. <br><br> ANN INC., a Delaware corporation, <br><br>      Defendant. | Civil Action No. 16-cv-3340-JPO-SN |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## <u>PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT</u>

**Table of Contents**

I.      INTRODUCTION .................................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................................3

III.    PLEADING STANDARDS..................................................................................................5

        A.      Federal Rule of Civil Procedure 12(b)(1) .............................................................5

        B.      Federal Rule of Civil Procedure 12(b)(6) .............................................................6

        C.      Federal Rule of Civil Procedure 9(b) ....................................................................6

IV.     ARGUMENT ......................................................................................................................6

        A.      Plaintiffs Have Article III Standing to Pursue Their Asserted Claims ................6

        A.      Plaintiff Morrow Has Statutory Standing to Pursue Claims Under the
                UCL, FAL, and CLRA for Damages and Restitution...........................................9

        B.      Plaintiff Gennock Has Standing to Pursue Claims Under the UTPCPL ...........12

        C.      Plaintiffs' Multi-State Claim Is Adequately Pleaded........................................14

        D.      Plaintiffs Meet Rule 9(b)'s Pleading Requirements ..........................................17

        E.      Plaintiff Morrow's Claims Under the UCL, FAL, and CLRA Satisfy the
                "Reasonable Consumer" Test .............................................................................21

        F.      Plaintiff's UCL Claim Is Viable .......................................................................23

        G.      The FAC Adequately Pleads Unjust Enrichment .............................................24

V.      CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Holiday Universal*,
249 F.R.D. 166 (E.D. Pa. 2008)................................................................................13

*Asis Internet Servs. v. Subscriberbase Inc.*,
No. 09-cv-3503-SC, 2010 WL 1267763 (N.D.Cal. Apr. 1, 2010)...........................21

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...................................................................................24

*Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ................................................................................10

*Barquis v. Merchants Collection Assn.*,
7 Cal. 3d 94 (1972) ..................................................................................................13

*Branca v. Nordstrom, Inc.*,
No. 14-cv-2062, 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015)...................18, 20, 22

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .....................................................................................8

*Cel-Tech Commc'n., Inc. v. L. A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) .........................................................................................24

*Chester v. TJX Cos., Inc.*,
No. 515-cv-01437(ODW)(DTB), 2016 WL 4414768
(C.D. Cal. Aug. 18, 2016)................................................................................ *passim*

*Cohen v. Chicago Title Ins. Co.*,
242 F.R.D. 295 (E.D. Pa. 2007)..............................................................................13

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ...........................................................................22, 23

*Degelmann v. Advanced Med. Optics, Inc.*,
659 F.3d 835 (9th Cir. 2011) ...................................................................................10

*Georgia Malone & Co., Inc. v. Rieder*,
973 N.E.2d 743 (N.Y. 2012)....................................................................................24

*Hall v. Equifax Info. Servs. LLC*,
No. CV 15-2938, 2016 WL 4538898 (E.D. Pa. Aug. 31, 2016).........................12, 13

*Hall v. Time, Inc.*,
  158 Cal. App. 4th 847 (Cal. Ct. App. 2008) ....................................................7, 11

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ..................................................................... *passim*

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013).........................15

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ...............................................................15, 17

*In re Grand Theft Auto Video Game Consumer Litig.* (No. II),
  No. 06-md-1739(SWK)(MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006)......................15

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014) ...........................................................................16

*Indergit v. Rite Aid Corp.*,
  No. 08-cv-9361 (PGG), 2009 WL 1269250 (S.D.N.Y. May 4, 2009) .............................14, 16

*Jarzyna v. Home Props., L.P.*,
  763 F. Supp. 2d 742 (E.D. Pa. 2011) .................................................................12, 13

*Jurgensen v. Felix Storch, Inc.*,
  No. 12 Civ. 1201(KBF), 2012 WL 2354247 (S.D.N.Y. June 14, 2012) ................................16

*Kabbash v. Jewelry Channel, Inc.*,
  No. 15-cv-4007, 2016 WL 6690236 (Nov. 2, 2015) .........................................17, 20

*Kaymark v. Bank of Am., N.A.*,
  783 F.3d 168 (3d Cir. 2015),
  *cert. denied sub nom. Udren Law Offices, P.C. v. Kaymark*,
  136 S. Ct. 794, 193 L. Ed. 2d 710 (2016) ..........................................................12, 13

*Knapp v. Art.com, Inc.*,
  No. 16-cv-00768, 2016 WL 3268995 (N.D. Cal. June 15, 2016)...........................23

*Kwikset Corp. v Super. Ct.*,
  51 Cal. 4th 310 (2011) .................................................................................7, 10, 11

*Le v. Kohls Dep't Stores, Inc.*,
  160 F. Supp. 3d 1096 (E.D. Wis. 2016)...................................................................16

*Lyons v. Litton Loan Servicing LP*,
  158 F. Supp. 3d 211 (S.D.N.Y. 2016)........................................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011) ...................................................................24

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581(9th Cir. 2012) ......................................................................9

*Mulder v. Kohl's Dep't Stores, Inc.*,
  No. 15-11377, 2016 WL 393215 (D. Mass. Feb. 1, 2016) ................................8, 25

*Murillo v. Kohl's Corp.*,
  No. 16-cv-196 (JPS), 2016 WL 3919555 (E.D. Wisc. June 24, 2016)............................17, 19

*Parks v. Dick's Sporting Goods, Inc.*,
  No. 05-CV-6590 (CJS), 2006 WL 1704477 (S.D.N.Y. June 15, 2006) ...................................16

*Perea v. Walgreen Co.*,
  939 F. Supp. 2d 1026 (C.D. Cal. 2013) ..................................................24

*Pickles v. Kate Spade and Co.*,
  No. 15-cv-5329 (VC), 2016 WL 3999531 (N.D. Cal. July 26, 2016) ........................17, 21, 25

*Pulse Creations, Inc. v. Vesture Grp., Inc.*,
  154 F. Supp. 3d 48 (S.D.N.Y. 2015).........................................................5

*Rael v. Dooney & Bourke, Inc.*,
  No. 16-cv-0371 JM(DHB), 2016 WL 3952219 (S.D. Cal. July 22, 2016)............................8, 9

*Ramirez v. STi Prepaid LLC*,
  644 F. Supp. 2d 496 (D.N.J. 2009) ..........................................................15

*Rhodes v. Stewart*,
  488 U.S. 1 (1988)....................................................................16

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)................................................................6

*Rose v. Bank of Am.*, N.A.,
  304 P.3d 181 (Cal. 2013) ...............................................................23, 24

*Rubenstein v. Neiman Marcus Grp. LLC*,
  No. CV 14-07155 SJO JPRx, 2015 WL 1841254 (C.D. Cal. Mar. 2, 2015) ........................22

*Russell v. Kohl's Dep't Stores, Inc.*,
  Case No. 5:15-cv-01143-RGK-SPx (C.D. Cal.) ................................................8, 11

*San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*,
  No. 13-cv-3660, 2013 WL 4711611 (N.D. Cal. Aug. 30, 2013) ...............................24

*Shaulis v. Nordstrom Inc.*,
  120 F. Supp. 3d 40 (D. Mass. 2015) ...................................................................8, 16

*Simington v. Lease Fin. Grp., LLC*,
  No. 10-cv-6052-KBF, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ......................16

*Spann v. J.C. Penney Corp.*,
  307 F.R.D. 508 (C.D. Cal. 2015) ..........................................................................23

*Spann v. J.C. Penney Corp.*,
  No. 8:12-cv-00215-FMO-KES (C.D. Cal. July 16, 2012)......................................11

*Spann v. J.C. Penney Corp.*,
  No. SA CV 12-0215 FMO, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) .......................8, 24

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..........................................................................................6, 7

*Stathakos v. Columbia Sportswear Co.*,
  No. 15-cv-04543, 2016 WL 1730001 (N.D. Cal. May 2, 2016).......................17, 18

*Steinberg v. CVS Caremark Corp.*,
  899 F. Supp. 2d 331 (E.D. Pa. 2012) ...................................................................13

*Strumlauf v. Starbucks Corp.*,
  No. 16-cv-01306-TEH, 2016 WL 3361842 (N.D. Cal. June 17, 2016)................................21

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*,
  23 F. Supp. 3d 242 (S.D.N.Y. 2014)........................................................................6

*Waldman v. New Chapter, Inc.*,
  714 F. Supp. 2d 398 (E.D.N.Y. 2010) .............................................................24, 25

*Walkup v. Santander Bank*, N.A.,
  147 F. Supp. 3d 349 (E.D. Pa. 2015) ...................................................................13

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...........................................................................21, 22

**Statutes, Rules, and Regulations**

Mass. Gen. Laws Ann.
  ch. 93A §2(a) .........................................................................................................8

Pa. Stat.
  §201-1. ...................................................................................................................2

Federal Rules of Civil Procedure
    Rule 12(b)(1)......................................................................................5
    Rule 12(b)(6)......................................................................................6
    Rule 9(b) ...................................................................................... *passim*

Cal. Bus. & Prof. Code
    §17200.............................................................................................2
    §17204...........................................................................................10
    §17500.............................................................................................2
    §17535...........................................................................................10
    §17501.....................................................................................1, 4, 25

Cal. Civ. Code
    §1770........................................................................................4, 25
    §1750......................................................................................2, 10

4 C.C.R.
    §1301.............................................................................................25
    §1302.............................................................................................25

16 C.F.R.
    §233.1.....................................................................................4, 5, 25
    §233.1(a)..................................................................................1, 24

## I.       INTRODUCTION

Defendant Ann, Inc. ("Ann" or "Defendant") engages in a deceptive pricing scheme which targets retail consumers through a nationwide marketing campaign in its stores and on its corresponding websites that represents and advertises its women's merchandise with fictitiously inflated "original" prices along with corresponding substantially lower "sale" prices – representing that such products are 40% and 50% off the original prices.  Ann's representations are false, and its advertised discount prices are illusory and designed to deceive consumers into believing that they are purchasing merchandise that was once sold at substantially higher prices.

Ann further deceives consumers by claiming to offer for sales in its "Factory" and "Outlet" stores the same high-quality merchandise that was once sold at its retail stores at significantly reduced prices.  Ann goes so far as to label its "Factory" and "Outlet" merchandise with the same "Ann Taylor" and "LOFT" brand names, and the labeling found on its Retail Products leading consumers to believe that they are purchasing retail-quality products at bargain prices and would enjoy significant savings by purchasing these products from Defendant.

Ann's deceptive pricing scheme have an obvious purpose: to drive consumers to the store with the promise of a good deal.  California and the Federal Trade Commission (the "FTC") prohibit the very conduct that Ann engages in.  *See* 16 C.F.R. §233.1(a), Cal. Bus. & Prof. Code §17501.  The Ninth Circuit in *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1101 (9th Cir. 2013) is addressing a similar deceptive pricing scheme explained why the conduct is deceptive and injures consumers:

> Most consumers have, at some point, purchased merchandise that was marketed as being "on sale" because the proffered discount seemed too good to pass up.  Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher "original" price in order to induce customers to purchase merchandise at a purportedly marked-down "sale" price.  Because such practices are misleading – and effective – the California legislature has prohibited them.

1

Plaintiffs allege that they were victims of Ann's deceptive pricing scheme and advertisements, buying merchandise that they would not have purchased had they not been misled by advertisements stating that the merchandise was marked down from a fictitious "original" price.  FAC ¶¶47-69.[1]  Moreover, Plaintiffs have alleged that they were also victims of Ann's deceptive pricing scheme, which led them to believe that the "Outlet" and "Factory" products were the same high quality products that were once sold at Ann's retail stores.  *Id.*  Thus, Plaintiffs allege that they lost money as a result of Defendants' deceptive discount pricing scheme and seek injunctive relief, restitution, and damages.  FAC ¶¶78-79.  Plaintiffs, on behalf themselves and other aggrieved consumers, have alleged Ann's conduct constitutes violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq*. ("FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"), Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. §§201-1, *et seq*. ("UTPCPL") and seek to represent a multi-state class of consumers in states with consumer protection laws similar to those in California and Pennsylvania.  FAC ¶¶99-130, 138-52.  Plaintiffs also bring an unjust enrichment claim on behalf of a nationwide class, or in the alternative, California and Pennsylvania classes.  ¶¶131-37.

Defendant raises a series of unsupported and fact intensive arguments to obtain dismissal. As set forth below, each of Ann's arguments fails.  Plaintiffs have adequately alleged the elements required to demonstrate that they have Article III standing to pursue these claims individually and on behalf of the proposed classes they seek to represent, and have properly alleged economic injuries under California and Pennsylvania law and satisfied the requirement to

---

[1]      ¶___ and ¶¶___, refer to Plaintiffs' First Amended Class Action Complaint ("FAC"), filed on July 15, 2016, ECF No. 23.

plead an ascertainable loss under Pennsylvania law.  Moreover, as discussed in detail below, Plaintiffs have produced sufficient details regarding their purchases, and how they were deceived, satisfying Rule 9(b).  Therefore, Ann's motion to dismiss should be denied.

## II.    STATEMENT OF FACTS

Defendant operates Ann Taylor and LOFT Retail Stores (the "Retail Stores"), Ann Taylor Factory and LOFT Outlet Stores (the "Outlet Stores"), and the www.anntaylor.com and www.loft.com websites (the "Websites").  ¶31.  Through the Retail Stores, Outlet Stores and Websites, Defendant sells women's apparel, shoes and fashion accessories under the "Ann Taylor" and "LOFT" brand names.  ¶17.  The items sold at Defendant's Retail and Outlet Stores are not of the same quality.  ¶¶3, 7, 32, 65.  Defendant manufactures higher quality products for its Retail Stores (the "Retail Products") and lower quality products for its Outlet Stores (the "Outlet Products").  ¶¶32, 65.  Defendant sells the Outlet Products exclusively through the Outlet Stores.  ¶¶3, 7.

Defendant deceives consumers with respect to its product quality.  Defendant sells its made-for-outlet products in stores labeled with the "Factory" and "Outlet" monikers.  ¶1.  These monikers lead reasonable consumers to believe the "Factory" and "Outlet" stores offer excess inventory that retailers were unable to sell at retail.  ¶¶36-37.  Defendant even labels its Retail Stores as "full-price" stores, suggesting its Outlet Stores sell the retail-quality products at "reduced-prices."  ¶38.  Moreover, Defendant labels its Outlet Products with the same "Ann Taylor" and "LOFT" brand names and labeling found on its Retail Products, ¶¶33-35, and represents its Outlet Products as discounted from higher original prices.  ¶¶39-41.  Defendant's uniform branding and labeling, coupled with the setting in which it sells its products and the deceptive pricing scheme (described below), lead consumers to believe that they are purchasing retail-quality products at bargain prices.  ¶¶31-46.

3

Defendant's deceptive pricing scheme involves selling its Outlet Products with an "original" price and a substantially lower "sale" price, representing that such products are "XX% off."  ¶¶3, 6-7, 39-42, 64.   These representations are false, however, because Defendant fabricates its original prices to create phantom markdowns and discounts to create the illusion of a sale.  *Id.*  ¶¶3, 6-7, 39-42, 64, 70-72.  As alleged in the FAC, in 2015, Plaintiffs' counsel performed an investigation at Defendant's Outlet Stores, which included tracking prices of various products including all styles of "Ann Taylor" branded pants and "LOFT" branded slacks and blouses.  ¶70.  These products, for a significant period, both before and after November 13, 2015, were not offered for sale at their advertised original price, but, instead, were continually discounted and sold at their discount price.  *Id.*  A follow-up 2016 investigation showed that the same products involved in the 2015 investigation still were advertised as on sale.  ¶71.  In fact, Outlet Products sold at Defendant's Outlet Stores are perpetually discounted, and almost never offered for sale at prices other than the advertised discount.  ¶¶70-71.  California and the  FTC prohibit the very conduct Defendant engaged in.  *See* Cal. Bus. & Prof. Code §17501, Cal. Civ. Code §1770, 16 CFR 233.1.  Empirical marketing studies demonstrate that retailers have an incentive to engage in this false and fraudulent behavior.  *See* ¶100.

Plaintiff Morrow visited an Ann Taylor Factory Store at an outlet mall in San Diego, California, and observed "Ann Taylor" branded pants.  ¶¶47-52.  These pants were advertised as "50% off", and their original and discount prices were represented as $79.99 and $39.99, respectively.  *Id.*  Relying on the pants' branding, labeling and discount pricing representations, Plaintiff Morrow purchased the pants on the belief that she was receiving a retail quality product at a steep discount.  *Id.*

Plaintiff Gennock visited an Ann Taylor Factory Store and a LOFT Outlet Store at an outlet mall in Grove City Pennsylvania, and observed "Ann Taylor" branded pants and "LOFT" branded knit tops.  ¶¶53-63.  The pants were advertised as "50% off", and their original and discount prices were represented as $79.99 and $39.99, respectively; the knit tops were advertised as "40% off", and their original and discount prices were represented as $34.99 and $20.99, respectively.  *Id.*  Relying on the products' branding, labeling and discount pricing representations, Plaintiff Gennock purchased the products on the belief that she was receiving retail quality merchandise at a steep discount.  *Id.*

Defendant's conduct deceived and injured Plaintiffs by causing them to purchase products they would not have purchased absent Defendant's false advertising scheme.  The products Plaintiffs purchased were not discounted and they were not the high quality Retail products sold at Defendant's Retail Stores.  ¶¶64-65, 70-71.  Had Plaintiffs known they were purchasing low-quality, made-for-outlet merchandise that was not being sold at a discount, but at its regular price, Plaintiffs would not have purchased Defendant's products.  ¶¶66-69, 78-79.

## III.    PLEADING STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

"'A district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it.'"  *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 52 (S.D.N.Y. 2015).[2]  "'In resolving a Rule 12(b)(1) motion to dismiss, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, but jurisdiction must be shown affirmatively, and that showing may not be made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Id.* at 53.

---

[2]        Unless otherwise noted, all emphasis is added and citations are omitted.

### B.      Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss pursuant to Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.*  "For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Id.*

### C.      Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud must "state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  This "require[s] that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

## IV.      ARGUMENT

### A.      Plaintiffs Have Article III Standing to Pursue Their Asserted Claims

Relying primarily on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Defendant mistakenly contends Plaintiffs have not alleged any concrete injury because their allegations are "nothing more than the 'bare procedural violation' that *Spokeo* held was insufficient."  MTD at 8-11.[3]  Contrary to Defendant's claims, Plaintiffs' injuries are not predicated on mere statutory violations.  Rather, as set forth in the FAC, Plaintiffs have alleged specific, concrete injuries

---

[3]      Citations to "MTD at __" refer to Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, filed on August 15, 2016, ECF No. 30.

resulting from Defendant's deceptive pricing scheme that are clearly sufficient to confer Article III standing.

In *Spokeo*, the plaintiff brought a class action under the Fair Credit Reporting Act ("FCRA") after discovering searches on Spokeo's website returned inaccurate information about him – like, for example, that he was married, had children, and held a graduate degree.  136 S. Ct. at 1544.  Spokeo claimed that the plaintiff lacked standing to bring his claim because he did not allege any injury as a result of the inaccuracies.  *Id.*  In rejecting that argument, the Ninth Circuit concluded the plaintiff had, in fact, asserted a sufficiently particularized injury, because "*his* statutory rights" were violated, and the plaintiff had a personal, rather than collective, interest in controlling his credit information.  *Id.*

The Supreme Court reversed, finding the Ninth Circuit's analysis lacking.  *Id.* at 1545. The analysis, the Supreme Court explained, should have considered, in addition to whether the injury was particularized, whether it was sufficiently concrete.  *Id.*  And to be concrete, the Court explained, the injury must be "real" or "tangible" – *i.e.*, it must actually exist.  *Id.* at 1549.  The Court also made it clear that intangible injuries may nevertheless satisfy the requirement of concreteness in certain circumstances. *Id.*  Ultimately, the Court held that the plaintiff could not establish his standing by alleging a "bare procedural violation" because such a violation may result in no harm, and remanded the case for further consideration.  *Id.* at 1550.

The facts of *Spokeo* are distinguishable, and its reasoning does not warrant dismissal here.[4]  Unlike in *Spokeo,* Plaintiffs have not alleged a procedural statutory violation.  Rather, the

---

[4]        Likewise, *Spokeo* has no bearing on the Ninth Circuit's opinion in *Hinojos*.  MTD at 10 n.4  *Hinojos* did not involve a bare procedural violation; rather, it involved allegations of a deceptive pricing scheme.  Defendant's attempt to distinguish *Hinojos* because it did not cite or distinguish *Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (Cal. Ct. App. 2008) is a red herring, as there was no basis to cite *Hall.*  Indeed, in *Hall,* the plaintiff failed to allege any injury: "[h]e did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it."  *Id.* at 471.  Compare *Kwikset Corp. v Super. Ct.*, 51 Cal. 4th 310, 323 (2011) (stressing "there are innumerable ways in which economic injury from unfair competition may be shown" and citing *Hall* as a case

FAC sets forth in great detail how Plaintiffs were misled by Defendant's deceptive pricing scheme and its fabricated regular or original prices.  ¶¶2-9, 31-66, 116, 128.  Plaintiffs allege that they believed and relied on Defendant's representations that its regular prices were actual, *bona fide* prices at which Defendant sold its products, and that Plaintiffs would not have purchased or paid as much for the products, had they known the truth concerning Defendant's deceptive pricing scheme.  ¶¶67-68, 78-79, 103, 109, 118, 129.[5]  Such allegations do not amount to bare procedural violations; rather, they establish a particularized and concrete injury – the loss of money directly resulting from Defendant's conduct.  Accordingly, Plaintiffs have established injury-in-fact and have Article III standing.

The cases cited by Defendant do not suggest a different conclusion.  MTD at 10.  By citing to *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), Defendant conflates standing under a state consumer protection statute with standing under Article III. *Camasta* involved a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and did not address whether the plaintiff had standing under Article III. [6]

---

"cataloguing *some* of the *various forms* of economic injury").  In any event, Plaintiffs have alleged a concrete injury – that they lost money as they would not have paid as much for their products if not Defendant's misleading and false advertisements.  ¶¶66, 109, 118, 121.

[5]      Moreover, courts have rejected Defendant's argument that Plaintiffs need to establish that the merchandise was defective to establish Article III standing.  *See* MTD at 10.  *See Russell v. Kohl's Dep't Stores, Inc.*, Case No. 5:15-cv-01143-RGK-SPx (C.D. Cal.), Order denying Kohl's motion to dismiss (Oct. 6, 2015) (ECF No. 32), attached as Ex. A; *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 WL 1526559, at *4-5 (C.D. Cal. Mar. 23, 2015); *Chester v. TJX Cos., Inc.*, No. 515-cv-01437(ODW)(DTB), 2016 WL 4414768, at *5-6 (C.D. Cal. Aug. 18, 2016).

[6]      Defendant's citations to case in Massachusetts is likewise unpersuasive.  *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377, 2016 WL 393215 (D. Mass. Feb. 1, 2016) and *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40 (D. Mass. 2015), both of which are currently on appeal to the First Circuit, are further distinguishable in that both involved violations of Mass. Gen. Laws Ann. ch. 93A §2(a).  Here, California claims are at issue.  Neither *Mulder* nor *Shaulis* is controlling.  While Defendant's other cited case, *Rael v. Dooney & Bourke, Inc.*, No. 16-cv-0371 JM(DHB), 2016 WL 3952219 (S.D. Cal. July 22, 2016), did raise California claims, and is factually distinguishable. The plaintiff in that action failed to plead the factual basis of her claim, and the court dismissed because she did not plead a false former price comparison.  *See id.* at *3 ("Plaintiff alleges no facts to illustrate *why* the 'original' price of the purchased handbag or, for that matter, any other D&B product sold at the outlet was false or misleading.").

By contrast, other price comparison cases hold that "there is no difficulty" in finding Article III injury in fact. *See, e.g., Hinojos*, 718 F.3d at 1107 n.3 ("We have explained that when, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact. The only issue before us, therefore, is whether this 'injury in fact' is an economic injury sufficient for purposes of statutory standing under the UCL and FAL.") (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)). Accordingly, the Court should reject Defendant's misplaced and unsupported position.

### A.   Plaintiff Morrow Has Statutory Standing to Pursue Claims Under the UCL, FAL, and CLRA for Damages and Restitution

Defendant argues Plaintiff Morrow has failed to allege an economic injury, and therefore, lacks statutory standing under the UCL, FAL, and CLRA. MTD at 11-13. This ignores Plaintiff Morrow's factual allegations regarding her loss of money and the injury resulting from the fact that Defendant's deceptive pricing scheme induced her to purchase products she otherwise would not have purchased. ¶¶11, 15, 31-46, 47-52, 64-80. The Ninth Circuit has found such allegations sufficient to confer statutory standing under the UCL and FAL.[7] *See Hinojos*, 718 F.3d at 1107 (holding that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury").

---

[7]   The economic injury standard under the UCL and FAL is more exacting than the "any damage" standard under the CLRA; therefore, for purposes of consistency and convenience, in this section of the brief Plaintiffs refer only to the UCL and FAL. *See, e.g., Hinojos*, 718 F.3d at 1108 (citing cases and explaining that because the "'any damage' standard includes even minor pecuniary damage, we conclude that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing").

In an attempt to discount the Ninth Circuit's Opinion in *Hinojos* and muddy the waters, Defendant mischaracterizes the holding in *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011).[8] MTD at 12.  *Kwikset*, however, actually supports Plaintiff Morrow's argument.  In *Kwikset*, the plaintiffs brought UCL and FAL claims based on a lock manufacturer's labeling of its products as "Made in U.S.A," when, in fact, some parts were manufactured abroad.  *Id.* at 317.  The California Supreme Court held that any "consumer who relies on a product label and challenges a misrepresentation contained therein," has standing under the UCL and FAL, so long as he/she allege he/she "would not have bought the product but for the misrepresentation."  *Id.* at 330.  The Court explained:

> From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product.  That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

*Id.* at 330.

Here, as in *Kwikset*, Plaintiff Morrow alleges that she paid for merchandise that she would not have purchased, or would not have paid as much for, absent Defendant's deceptive pricing and advertising scheme.  ¶¶11, 15, 31-46, 47-52, 64-80.  Thus, she has pled that she "lost money or property" and has met the standing requirements to assert claims under the UCL, FAL, and CLRA.  *See* Cal. Bus. & Prof. Code §§17204, 17535 and California Civil Code §1750; *see also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 (9th Cir. 2011) (relying on *Kwikset* to hold that allegations that plaintiffs were "deceived into purchasing a product that did not disinfect as well as it represented" and that they "would have refused to purchase the

---

[8]  Defendant's other cited case, *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (2006), is a pre-*Kwikset*, intermediate appellate court decision and is not controlling.

product" had it been accurately labeled were sufficient even though "class members would have bought other contact lens solution"); *Russell*, No. 5:15-cv-01143-RGK-SP, slip op. at 4 , ECF No. 32 (relying on *Hinojos* to find plaintiffs had alleged sufficient harm to confer standing under the UCL and FAL); *Spann v. J.C. Penney Corp.*, No. 8:12-cv-00215-FMO-KES, slip op. at 5-7 (C.D. Cal. July 16, 2012), ECF No. 24 ("Spann I") (citing additional cases and holding on the basis of *Kwikset* that plaintiff's allegations were sufficient to establish standing under the UCL and FAL) (attached as Exhibit B).

Defendant mistakenly asserts a narrower reading of *Kwikset*, applying its holding only to misrepresentations about "the nature of the product itself" that "affect the worth of the product." MTD at 12.  This argument is foreclosed by *Hinojos*, where the Ninth Circuit reversed dismissal for lack of standing and stressed that "price advertisements matter."  718 F.3d at 1107.  Indeed, the court specifically rejected an overly narrow interpretation of *Kwikset*:

> *Kwikset* cannot be so easily limited. It is true that *Kwikset* itself involved misrepresentations regarding how the merchandise in question was produced . . . It is also true that *Kwikset* described a number of other examples of misrepresentations concerning a product's origin or composition that would be actionable under the UCL and FAL: meat falsely labeled as kosher or halal, wine labeled with the wrong region or year . . . Nothing in *Kwikset*, however, suggests that these examples were intended to be exhaustive instead of illustrative. To the contrary, these examples were offered to explain why the particular misrepresentation at issue in *Kwikset*, which did involve how the product was manufactured, was significant.

*Id.* at 1105.[9]  By contrast, Plaintiff Morrow alleges precisely that she **relied** on Defendant's deceptive pricing scheme in purchasing her merchandise.  ¶¶51, 78-79, 107, 109.  Thus, under *Hinojos*, and the cases that have followed it, Plaintiff Morrow has pled all that is required to demonstrate economic injury sufficient to confer statutory standing under the UCL, FAL, and CLRA.

---

[9]    Defendant's reliance on *Hall* fails for the same reasons stated in footnote 3, *supra*.

### B.        Plaintiff Gennock Has Standing to Pursue Claims Under the UTPCPL

Defendant next claims that Plaintiff Gennock has failed to allege an economic injury because she pleads "***no*** facts to 'suggest the nature of' her economic loss, such as by alleging that the pants and shirts she purchased were worth less than she paid for them or that there is anything wrong with the items."  MTD at 14.  This ignores the specific places where Plaintiff Morrow ***does allege that the merchandise she purchased was worth less than what she paid***, and that she would not have purchased or paid less for the merchandise.  ¶¶53-67.  In addition to overlooking these allegations, Defendant mischaracterizes the scope of the term "ascertainable loss."

To have standing under the UTPCPL, a plaintiff must show that she suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]."  *See, e.g., Jarzyna v. Home Props., L.P.*, 763 F. Supp. 2d 742, 749 (E.D. Pa. 2011).  Defendant does not (and cannot) contest that Plaintiff Gennock properly alleges numerous acts and practices deemed unlawful under §201-3.  ¶53-67, 128.  Instead, Defendant ignores those allegations and argues that Plaintiff Gennock lacks statutory standing because she has not alleged "ascertainable loss."  MTD at 14.  But as courts have recognized, "the Pennsylvania Supreme Court has not definitively addressed what constitutes ascertainable loss under the statute."  *See, e.g., Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180 (3d Cir. 2015), *cert. denied sub nom. Udren Law Offices, P.C. v. Kaymark*, 136 S. Ct. 794, 193 L. Ed. 2d 710 (2016); but *see Walkup v. Santander Bank*, N.A., 147 F. Supp. 3d 349, 359 (E.D. Pa. 2015) (finding late fees/charges and increased interest rates on plaintiff's mortgage loan constituted ascertainable losses); *Hall v. Equifax Info. Servs. LLC*, No. CV 15-2938, 2016 WL 4538898, at *4 (E.D. Pa. Aug. 31, 2016) (finding increased interest rates and payments on plaintiff's automobile loan constituted ascertainable

losses); *Jarzyna*, 763 F. Supp. 2d at 12 (finding attorneys' fees, time off of work, and travel expenses did not constitute ascertainable losses).   What is more, courts have stressed that "ascertainable loss" must be liberally construed, that it is "designed merely to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice," and that it must be established from the factual circumstances of each individual case. *See Jarzyna*, 763 at 749; *see also Kaymark*, 783 F.3d at 180.

Plaintiff Gennock has properly alleged an ascertainable loss as she has alleged that the merchandise she purchased was worth less than what she paid, and that she would not have purchased or would have paid less for the merchandise absent Defendant's deceptive pricing scheme, and in so doing she lost money.   ¶¶11, 16, 31-46, 53-80.   Thus, she has pled "ascertainable loss" and has met the standing requirements to assert her claim under the UTPCPL.  *See Hall*, 2016 WL 4538898 at *4.   Indeed, the allegations in this case are closely analogous to those in *Allen v. Holiday Universal*, 249 F.R.D. 166, 193 (E.D. Pa. 2008) and *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295 (E.D. Pa. 2007).   In both cases, plaintiffs alleged they had been charged in excess: in *Allen*, an excessive initiation fee charged by a health club; in *Cohen*, a charge in excess of the filed rate of an insurer.   Those allegations were found to fall under the scope of the term "ascertainable loss" with "no real issue."

Defendant's cited cases do not hold otherwise.  MTD at 14.   While the court in *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 340 (E.D. Pa. 2012) held that the plaintiff had not properly alleged ascertainable loss the case does not eliminate any of the appropriate and varied ways to suffer an ascertainable loss.   There is no precise and tidy definition of ascertainable loss – and for good reason.   Fixed definition might not be able to keep up with rapidly changing business practices.  *See, e.g., Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 112 (1972)

(noting that California's early unfair competition statute intentionally included broad, sweeping language, "precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's inventions would contrive'").  For all of the foregoing reasons, the Court should reject Defendant's arguments.

### C.     Plaintiffs' Multi-State Claim Is Adequately Pleaded

Defendant next argues that Plaintiffs' sixth cause of action should be dismissed because Plaintiffs "lack standing to assert violations of laws other than California and Pennsylvania . . . because ANN's alleged conduct at other stores in other states cannot have impacted Plaintiffs in any real and personal way."  MTD at 15-17.  This challenge to Plaintiffs' multi-state claim is meritless, premature, and should be rejected.

As an initial matter, Plaintiffs are not seeking to assert individual claims under state consumer protection statutes from around the country, but rather are seeking to represent individuals who have been similarly harmed, and whose laws provide similar redress to the laws of California and Pennsylvania.  Indeed, Plaintiffs bring their sixth cause of action "individually under the laws of California and Pennsylvania and on behalf of all other persons who have purchased Defendant's merchandise in states having similar laws regarding consumer fraud and deceptive trade practices."  ¶139.  Thus, to the extent that Plaintiffs have standing in their own right, they have standing to assert claims on behalf of absent class members.  *See Indergit v. Rite Aid Corp.*, No. 08-cv-9361 (PGG), 2009 WL 1269250, at *4 (S.D.N.Y. May 4, 2009) ("In short, once a named plaintiff establishes individual standing, the issue of whether a named plaintiff can assert claims on behalf of absent class members is determined at the class certification stage of the litigation. Numerous cases illustrate this basic principle.")

"Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' [to a motion to dismiss for failure to state a claim] because they are not

bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states." *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010). *See also Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009) (rejecting the defendants' argument that the plaintiffs could not bring claims based on the violation of consumer protection laws in states where the named plaintiffs did not suffer injury); *In re Grand Theft Auto Video Game Consumer Litig.* (No. II), No. 06-md-1739(SWK)(MHD), 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) ("The relevant question, therefore, is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action."); and *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *11 (E.D. Mich. June 6, 2013) (collecting cases and refusing to dismiss claims brought under laws of states in which the named plaintiffs did not reside because the named plaintiffs "advance[d] claims for relief under the statutes of the jurisdictions in which they [did] reside but s[ought] similar relief for absent class members under the antitrust and consumer protection statutes of other states.").

Here, Plaintiffs adequately allege that they can represent a multi-state Class of consumers. Plaintiffs allege Defendant has engaged in a nationwide deceptive pricing scheme across all of its Stores and Websites, that is long-running, pervasive, continuous, and that uniformly represents that Defendant's products are sold at a discount, when in fact they are not, and that the products sold at Defendant's Outlet Stores were once sold at its Retail Stores and are of the same quality, when they are not. ¶¶31-46, 81-98. Whether Defendant's pricing scheme is deceptive and likely to mislead presents common questions that predominate over individual issues. ¶89. Likewise, Defendant's common course of conduct makes Plaintiffs typical of the

individuals in the Nationwide Class and Plaintiffs will adequately represent the Class's interests.

¶¶90-1.  Finally, given the nature of the claims , as well as the large number of individuals with

potential claims, the class action mechanism clearly is superior to individual litigation.  ¶92.  In

sum, Plaintiffs have alleged that they can represent the Nationwide Class, on behalf of which

their sixth cause of action is brought.  *See Rhodes v. Stewart*, 488 U.S. 1 (1988).

While courts are admittedly divided over this issue,[10] recently, in *Le v. Kohls Dep't*

*Stores, Inc.*, 160 F. Supp. 3d 1096, 1113 (E.D. Wis. 2016), a case involving very similar price

comparison allegations, the court denied the defendants' motion to dismiss, finding that the

plaintiff had constitutional standing to pursue his multi-state claim – despite the fact that he

"[did] not live, nor was injured, in the 40 states under which his claim [arose]."  The court

explained:

> [W]ith regard to the choice of law issue, it bears mentioning that Le is pursuing
> this claim "individually under the laws of California," namely the UCL and
> CLRA.  As discussed above, Le has constitutional standing to pursue relief under
> those statues.  It is unclear, at least on the pleadings, whether the claim will
> continue to be litigated under the laws of California or some combination of other
> states' statutes.  This will be the proper focus of the class certification process.
>
> The Court's conclusion also recognizes that "[t]he underlying standing principle is
> that the injury that a plaintiff suffers defines the scope of the controversy that she
> is entitled to litigate."  Here, Le claims that he and the putative class members have
> suffered a common injury as a result of Kohl's nationwide, pervasive advertising
> scheme.  Whether or not Le may adequately represent these yet unnamed and
> uncertified classes of consumers with which he has suffered a common injury is a
> proper subject of the Rule 23 inquiry.

*Id.* at 1114.

---

[10]       The cases cited by Defendant, *Edwards v. N. A. Power and Gas, LLC*, 120 F.Supp.3d 132 (D. Conn. 2015), *Jurgensen v. Felix Storch, Inc*., No. 12 Civ. 1201(KBF), 2012 WL 2354247 (S.D.N.Y. June 14, 2012), *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F.Supp.3d 34 (E.D.N.Y. 2014), *Parks v. Dick's Sporting Goods, Inc.,* No. 05-CV-6590 (CJS), 2006 WL 1704477 (S.D.N.Y. June 15, 2006) and *Simington v. Lease Fin. Grp., LLC,* No. 10-cv-6052-KBF, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) are not controlling authority and simply tend to demonstrate that courts in this District and Circuit are divided on the issue of whether standing for the entire class must be determined at the motion to dismiss stage as opposed to at class certification.  *See also Indergit*, 2009 WL 1269250, at *4.

This Court should adopt the reasoning of *Le* and uphold Plaintiffs' multi-state claim.[11]
The appropriate time to address Defendant's argument is at the class certification stage, not now.
*See Bayer*, 2010 WL 1268196, at *13-14.

### D.    Plaintiffs Meet Rule 9(b)'s Pleading Requirements

In false pricing cases, Rule 9(b) requires a plaintiff to "plead with particularity how and
why he was personally deceived" by the defendant's pricing practices and representations.
*Chester*, 2016 WL 4414768, at *12 (quoting *Branca v. Nordstrom, Inc.*, No. 14-cv-2062, 2015
WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015)); *see also Murillo v. Kohl's Corp.*, No. 16-cv-196
(JPS), 2016 WL 3919555, at *7-8 (E.D. Wisc. June 24, 2016) (finding Rule 9(b) satisfied in
complaint alleging false pricing scheme); *Pickles v. Kate Spade and Co.*, No. 15-cv-5329 (VC),
2016 WL 3999531, at *1 (N.D. Cal. July 26, 2016) (same); *Stathakos v. Columbia Sportswear
Co.*, No. 15-cv-04543, 2016 WL 1730001, at *3 (N.D. Cal. May 2, 2016) (same); *Kabbash v.
Jewelry Channel, Inc.*, No. 15-cv-4007, 2016 WL 6690236, at *5-6 (Nov. 2, 2015) (same).
Despite the FAC's detailed factual allegations, Defendant contends Plaintiffs' claims are "wholly
conclusory," and lack "sufficient particularity" to satisfy Rule 9(b).  MTD at 18.  Defendant's
contention is meritless and ignores the detailed, specific, and factual allegations.

---

[11]    In a last-ditch effort to have Plaintiffs' claim dismissed, Defendant argues that "Plaintiff Morrow also has
not alleged that she purchased *any* items at a LOFT Outlet Store," and thus, she has not suffered a concrete and
particularized injury fairly traceable to a LOFT Outlet Store.  MTD at 16 n.6.  This argument has been previously
rejected by other district courts.  The court in *Chester*, 2016 WL 4414768, at *7 puts it best:

> Plaintiffs here challenge the "Compare At" price labeling, which remains consistent across items in
> each of Defendants' stores, regardless of its placement in the home goods, shoe, or men's clothing
> departments.  To say that Plaintiff Chester only has standing to sue on behalf of others who purchased
> a Jessica Simpson handbag in a TJ Maxx store – and only a Jessica Simpson handbag – is to make a
> mockery of the false advertising class action itself and, based on such logic, a clear way to burden an
> already overburdened judicial system.  No court wishes to become a pit of despair, whereby it must
> adjudicate a claim for each individual item on a TJ Maxx shelf in order to rectify an alleged UCL,
> FAL, or CLRA violation.

*Id.*  The reasoning in *Chester* applies with equal force to the argument here.

First, Plaintiffs allege how and why Defendant's pricing statements are fraudulent, misleading and deceptive.  The FAC alleges Defendant's Outlet Products are "specifically manufactured for exclusive sale in. . . Outlet Stores" and the only prices for these products are those charged at Outlet Stores.  ¶¶3, 7, 32, 65.  This allegation matters because Defendant deceptively advertises Outlet Products as discounted from a fictitious original price.  ¶¶3, 6-7, 39-42, 64.  In fact, investigations revealed that Outlet Products are advertised at perpetual discounts, and always are sold at the advertised discount price.  ¶¶70-71.  Thus, Defendant's advertised discounts are deceptive because they do not exist – the regular price for Outlet products are the advertised discount prices.  *See, e.g.*, *Branca*, 2015 WL 10436858, at *7 ("Plaintiff alleges *why* the 'Compare At' prices are false as former prices – because they necessarily cannot be former prices or prevailing market prices, as the items were never sold elsewhere for any other price besides the Nordstrom Rack retail price.") (emphasis in original); *Stathakos*, 2016 WL 173001, at *4 (rejecting Rule 9(b) argument because "plaintiffs have alleged that there should have been no reference price because the products at issue were sold exclusively at Columbia Outlet stores and were not previously sold at the higher Reference Price at all.").

Second, Plaintiffs' allegations regarding their own purchases are specific enough to survive a Rule 9(b) challenge.  Plaintiffs allege: 1) the specific products they purchased (including the date and location of purchase and the advertised original and discount prices); 2) the signage and price tags associated with these products (including the exact "XX% off" representations); and 3) that Plaintiffs' relied on Defendants' discount pricing representations.  ¶¶47-63.  Plaintiffs further provide images of the sales receipts corroborating their observations concerning the discount and pricing representations.  ¶¶52, 58.  Finally, Plaintiffs explain how

and why these representations were deceptive, namely, that these representations led Plaintiffs to believe the products they purchased were discounted retail quality products, when the products actually were regular-price, low-quality Outlet Products.  ¶¶64-79.  These allegations are more than enough to satisfy Rule 9(b)'s requirements.  *See Murillo*, 2016 WL 3919555, at *7-8 (finding Rule 9(b) is satisfied where plaintiffs provide specific details as to which stores they visited, dates of visit, products they purchased, discount pricing they relied upon, and explain how and why the discount pricing deceived them); *Chester*, 2016 WL 4414768, at *12-13 (similar).[12]

Third, Defendant's argument regarding the deficiencies in Plaintiffs' investigations, MTD at 20, is meritless and not proper at the motion to dismiss stage.  Plaintiffs have provided the location and date for each investigation.  *See* ¶70 (investigation revealed false pricing practices "at the Ann Taylor Factory store where Plaintiff Morrow made her purchases," and occurred "several months preceding and subsequent to Plaintiff [Morrow's November 13, 2015] purchase"); ¶71 (investigation occurred on July 11, 2016 at San Diego Outlet Stores).  Plaintiffs also identified the products the investigations tracked: all styles of pants at Ann Taylor Factory Stores, and women's slacks and various blouses at LOFT Outlet Stores.  ¶¶70-71.  Defendant advertised these products as discounted for long and continuous periods before and after Plaintiff Morrow's 2015 purchase, and continued to offer these products at discount prices well into 2016. *Id.*  And, in any event, because Defendant applies a blanket continuous discount policy, and advertises all products at never-ending, perpetual discounts, ¶¶3, 6-7, 39-42, 64, 96-97,

---

[12]     Defendant criticizes Plaintiffs for not saving their price tags and not taking pictures of the in-store signage at the time of purchase.  MTD at 19.  The argument is baseless given the fact that Defendant knows what its signs state.  In any event, Plaintiffs, have alleged what they saw, have provided receipts confirming those allegations, and have explained how and why they were deceived.  That is all that is required to satisfy Rule 9(b).  *See Murillo*, 2016 WL 3919555, at *7-8.

identifying specific products is unnecessary.  *See also Kabbash*, 2015 WL 6690236, at *6 ("Plaintiffs' specific claims are that Defendant's. . . pricing is 'fabricated and inflated and do not represent an accurate retail price'. . . [I]t is not necessary. . . for Plaintiffs to describe all 186 products at issue in order to meet Rule 9(b)'s. . . standards."); *cf. Chester*, 2016 WL 4414768, at *13 (rejecting Rule 9(b) argument and finding it unreasonable to require plaintiffs to know what a product sold for at all retail locations within given trade area).  Tellingly, Defendants do not deny they advertised and sold the products at issue for the sale periods identified by Plaintiffs' investigations.  Accordingly, Plaintiffs' investigations adequately supplement their allegations.[13]

Fourth, Plaintiffs adequately allege Defendant's quality misrepresentations.  Plaintiffs are not, as Defendant contends, arguing that Defendant misrepresents product quality simply by selling items at its Outlet Stores.  To the contrary, the utilization of the same brand names and labels for high quality and low quality products, the setting in which Defendant sells its products (under the "Factory" and "Outlet" monikers), and the false discounts Defendant advertises, all combine to create the impression that Outlet Products are retail-quality products offered at bargain prices.  ¶¶31-46.  This is false and misleading because Ann's Outlet Products are not high-quality Retail Products, but instead, are low-quality, made-for-outlet goods being offered at regular, non-discounted prices.  Defendant brands low-quality products with high-quality brand names, falsely advertises fictitious discounts, and sells products in its "Factory" and "Outlet" Stores, rather than "full-price" Retail Stores, to portray an accurate representation of product

---

[13]    Defendant faults Plaintiffs for not identifying the "prevailing market price" of the products they purchased, but "Plaintiffs are not required to list the [discount] price, [regular] price, and *what the reference price should have been* in order to survive a Motion to Dismiss."  *See* MTD at 20, *Chester*, 2016 WL 4414768, at *12 (emphasis in original).  "The focus is on whether enough facts support a reasonable consumer's reaction to an allegedly deceptive advertisement – not whether facts can definitively prove fraud at the pleading stage."  *Id.*  Plaintiffs have included more than enough facts to support their, and other consumers' reactions to Defendants' false pricing scheme. Moreover, "Plaintiffs cannot be expected to have detailed personal knowledge of [Defendant's] internal pricing policies and procedures at this stage of the litigation."  *Branca*, 2015 WL 10436858, at *8; *Chester*, 2016 WL 4414768, at *12 (similar).

quality.  A district court in California recently agreed, and upheld similar allegations on a motion to dismiss.  *See Pickles*, 2016 WL 3999531, at *1 ("The plaintiffs plausibly allege that Kate Spade's representations as to the false "our price" and the corresponding percentage discount deceive reasonable consumers into thinking they are purchasing boutique-quality merchandise at a significant savings[.]").[14]  For these reasons, Plaintiffs' allegations satisfy the strictures of Rule 9(b) and the Court should reject Defendant's arguments to the contrary.

### E.   Plaintiff Morrow's Claims Under the UCL, FAL, and CLRA Satisfy the "Reasonable Consumer" Test

Defendant argues that Plaintiff Morrow's UCL, FAL, and CLRA claims should be dismissed because Plaintiff Morrow has not pled facts to demonstrate "***any*** deceptive, false or misleading statements by ANN regarding comparative pricing" nor "***any*** representations by ANN that the products it sells at its Outlet Stores are the same quality and/or were once sold in its Retail Stores."  MTD at 22.  This argument fails for two reasons.  First, and most important, it ignores the allegations of the FAC setting forth the deceptive pricing scheme along with Defendant's representations contained in sales tags, in-store displays, and Websites.  ¶¶4-9, 11, 31-46.  Second, numerous courts have held such inquiry premature at this stage in the litigation.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration of evidence from both sides' and which usually cannot be made on [a motion to dismiss].").[15]

---

[14]   The case cited at Exhibit B to Defendant's Declaration, contrary to this case and *Pickles*, ignores the meaning of the monikers "Outlet" and "Factory", and ignores the signal these monikers make to reasonable consumers, especially when a seller, like Defendant and the defendant in *Pickles*, labels and brands its made-for-retail and made-for-outlet products identically, and represents its made-for-outlet products as discounted from false original prices.

[15]   Most of the courts go one step further, finding it appropriate to dismiss on the basis of the reasonable consumer test only in "rare situation[s]."  *Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-TEH, 2016 WL 3361842, at *6 (N.D. Cal. June 17, 2016); *see also Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-cv-3503-SC, 2010 WL 1267763, at *2 (N.D.Cal. Apr. 1, 2010) (collecting cases and emphasizing reasonable consumer test "is clearly a question of fact, which is best left for a jury, unless no reasonable trier of fact could conclude otherwise.").

Nevertheless, should the Court reach the issue, under the UCL, FAL, and CLRA, whether a particular statement is false or misleading is measured by the "reasonable consumer" standard. A plaintiff needs only to allege that a defendant's purported misrepresentations are likely to deceive a reasonable consumer. *See Gerber Prods.*, 552 F.3d at 938. A "reasonable consumer," in turn, is "the ordinary consumer acting reasonably under the circumstances." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

The Ninth Circuit, in *Hinojos*, 718 F.3d at 1107, held that ordinary consumers "reasonably regard price reductions as material information when making purchasing decisions.". *See also Chester*, 2016 WL 4414768 (denying motion to dismiss holding the defendant's reference pricing and price tags could mislead a reasonable consumer.). Likewise, the FTC has issued regulations on the exact kind of discount pricing scheme alleged here. ¶¶21-22. Finally, empirical market studies have concluded that ordinary, reasonable consumers interpret "original" or "regular" prices, when presented in comparison to lower selling prices, to refer to prices at which the retailer has offered to sell the item, or has in fact sold the item in the recent past. ¶¶26-30, 100.

Defendant's reliance on *Rubenstein v. Neiman Marcus Grp. LLC*, No. CV 14-07155 SJO JPRx, 2015 WL 1841254 (C.D. Cal. Mar. 2, 2015) is misplaced. *See* MTD at 22-23. In that case, which currently is on appeal, there were no allegations that the retailer had branded and labeled its merchandise uniformly across its retail and outlet stores. *Rubenstein*, 2015 WL 1841254, at *5 (explaining that "Last Call" and "Compared To" were not sufficient to support inference that product was previously sold at flagship stores). Moreover, a different court has reached the opposite conclusion, on similar allegations. *See Branca*, 2015 WL 10436858, at *8 (holding the defendant retailer's outlet stores' use of "Compare At" on price tags was deceptive

because the retailer never sold the identical merchandise at the comparative price listed).  For the reasons set forth herein, Defendant's motion to dismiss should be denied.

### F.    Plaintiff's UCL Claim Is Viable

Defendant argues for dismissal of Plaintiff Morrow's UCL because the FTCA does not provide for a private right of action and thus, cannot support her claim.  MTD at 23.  Plaintiff does not assert a claim under the FTCA and its analysis is simply wrong.

First, "[t]he UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent."  *Rose v. Bank of Am.*, N.A., 304 P.3d 181, 185 (Cal. 2013).  "[V]irtually any state, federal or local law can serve as the predicate for an action under [the UCL's unlawful prong]."  *Davis*, 691 F.3d at 1168.  Here, Plaintiff's UCL claim is premised on each of the three prongs of the UCL, as Defendant's conduct is unfair, fraudulent and unlawful.  ¶¶99-111.  Moreover, the unlawful conduct challenged includes violations of the FAL and CLRA, in addition to violations of the FTCA.  ¶¶108, 112-123.  As such, Plaintiff Morrow's UCL claim survives regardless of whether FTCA violations support it.

Second, contrary to Defendant's arguments, FTCA violations can serve as predicate acts under the UCL's unlawful prong, and courts have rejected the argument Defendant makes here.  *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 521 n. 5 (C.D. Cal. 2015), ("Although the FTCA does not provide an individual cause of action, the California Supreme Court has made clear that Cal. Bus. & Prof. Code §17200 'borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable.'  Accordingly, plaintiff may use the FTCA as the basis for her UCL claim."); *Knapp v. Art.com, Inc.*, No. 16-cv-00768, 2016 WL 3268995, at *6-7 (N.D. Cal. June 15, 2016)

(allowing 16 C.F.R. §233.1(a) to serve as basis for UCL claim).[16]   Tellingly, Defendant cites no case holding contrary to *Spann*.   Therefore, the Court should reject Defendant's argument for dismissal.

### G.   The FAC Adequately Pleads Unjust Enrichment

In order to adequately plead an unjust enrichment claim, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."   *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012).[17]   The prime focus, however, "is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."   *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011). "Under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading representations."   *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010).

In *Waldman*, the defendant, as Defendant does here, deemed as invalid the plaintiff's unjust enrichment claim because the plaintiff "received the exact amount of product listed on the

---

[16]       That the FTCA does not contain a private enforcement provision is irrelevant. MTD at 23-24. While "[a] plaintiff may. . . not 'plead around' an '**absolute bar to relief**'" this does not "prohibit an action under the [UCL] merely because some other statute on the subject does not. . . provide for the action[.]"   *Cel-Tech Commc'n., Inc. v. L. A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999).   "To forestall an action under the [UCL], another [statutory] provision must actually 'bar' the action."   *Id.*   Thus, so long as a statute does not explicitly bar private enforcement, an action under the UCL is proper.   *See Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013) ("The UCL provides for a private right of action against any unlawful business practice, including violations of laws for which there is no direct private action."); *San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*, No. 13-cv-3660, 2013 WL 4711611, at *12 (N.D. Cal. Aug. 30, 2013) ("The absence of a private right of action does not foreclose a UCL claim based on a violation of that statute, unless such an action is actually barred by the statute.").   Here, the FTCA may have no direct private action, but it does not outright ban private consumer protection actions.   In fact, the various state FTCA acts, like the UCL, the CLRA and the UTPCPL, demonstrate that the FTCA allows for parallel state actions.   Moreover, the unpublished Ninth Circuit case cited by Defendant, MTD at 23, fails to recognize that "a UCL action does not 'enforce' the law on which a claim of unlawful business practice is based. *Rose*, 304 P.3d at 185.

[17]       Unjust enrichment claims are treated as quasi-contract claims under California law and are allowed to proceed despite Defendant's misrepresentations to the contrary.   *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (allowing California unjust enrichment claim to proceed as quasi-contract claim).

package[.]" *Id.* The Court disagreed. *Id.* at 404-05. Specifically, the plaintiff alleged that the defendant "slack filled" its products to mislead consumers regarding product amount. *Id.* at 404. The Court held that misleading consumers is not a valid reason to "slack fill" products, and that the plaintiff accordingly pled misleading representations sufficient to state an unjust enrichment claim. *Id.* at 405. Here, the FAC asserts that Defendant misrepresented its products as discounted, and further deceived consumers as to the quality of its products. *See* 16 C.F.R. §233.1; 4 C.C.R. §§1301, 1302; Cal. Bus. & Prof. Code §17501, Cal Civ. Code §§1770(a)(7), 1770(a)(9), 1770(a)(13); 73 P.S. §§201-2(4)(vii), 201-2(4)(ix), 201-2(4)(xi).  Defendant's conduct unjustly enriched Defendant by inducing consumers to purchase products they otherwise would not have purchased, or by causing consumers to pay more for products than they would have if all material information was provided.  Defendant should not be allowed to benefit from its misrepresentations.  Accordingly, Defendant's motion to dismiss Plaintiffs' unjust enrichment should be denied.[18]

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated:  September 16, 2016

s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Erin Green Comite
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334

---

[18]      *Mudler*, 2016 WL 393215 is not to the contrary.  That case, which is on appeal to the First Circuit, contained no allegations that the plaintiff did not receive the merchandise she attempted to purchase or that she paid more than its true value.  *Id.* at *8.  Here, Plaintiffs received low quality made-for-outlet merchandise instead of the high quality retail merchandise Defendant represented they were receiving at bargain prices.  They did not receive what they attempted to purchase.  *See Pickles*, 2016 WL 3999531, at *2 (holding similar allegations "support[ed] the inference that [the plaintiff] received items that were worth less than the price she paid[.]").

jguglielmo@scott-scott.com
ecomite@scott-scott.com

**CARLSON LYNCH SWEET KILPELA &**
**CARPENTER, LLP**
Todd D. Carpenter
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com

**CARLSON LYNCH SWEET KILPELA &**
**CARPENTER, LLP**
Edwin J. Kilpela
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com
glynch@carlsonlynch.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September, 2016, at New York, New York.

*s*/ Joseph P. Guglielmo
Joseph P. Guglielmo
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com