UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                      :

SIOBHAN MORROW and ASHLEY       :
GENNOCK, on behalf of themselves and all  :
others similarly situated,                :
                  Plaintiffs,  :       16-CV-3340 (JPO)
                      :

           -v-             :       OPINION AND ORDER
                      :
ANN INC.,                  :
                  Defendant.  :
                      :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiffs Siobhan Morrow and Ashley Gennock, on behalf of themselves and all others similarly situated, initiated this action on May 5, 2016, and filed the operative First Amended Complaint on July 15, 2016. (Dkt. No. 23 ("Compl.").) Plaintiffs allege that Defendant Ann Inc. ("Ann") engaged in a deceptive pricing and advertising scheme involving merchandise sold in its Ann Taylor Factory and LOFT Outlet stores (the "Outlet Stores") in violation of federal and state law. Ann moves to dismiss all claims against it for lack of subject matter jurisdiction and for failure to state a claim, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the motion is denied.

## I.    Background[1]

      Defendant Ann is a retail seller of women's apparel, shoes, and fashion accessories, sold under the "Ann Taylor" and "LOFT" brand names, including at the LOFT Outlet and Ann Taylor Factory outlet stores. (Compl. ¶ 17.) Plaintiffs shop at the Outlet Stores. (*Id.* ¶¶ 11, 15-16.)

---

[1]    The following facts are taken from the First Amended Complaint and are presumed true for the purposes of this motion.

Morrow purchased a pair of pants from an Ann Taylor Factory store in San Diego, California; Gennock purchased a pair of pants from an Ann Taylor Factory store in Grove City, Pennsylvania, and two knit tops from a LOFT Outlet store, also in Grove City.  (*Id.* ¶¶ 15-16.) Plaintiffs allege that they would not have purchased these garments, or would have paid less for them, were it not for Ann's false and misleading advertising.  (*Id.*)

Plaintiffs allege that Ann, whose principal place of business is in New York, engaged in a nationwide campaign of falsely claiming—on its sales tags, in-store signage, and website—that products sold in the Outlet Stores were originally or regularly sold at much higher prices.  (*Id.* ¶¶ 2, 17.)  Plaintiffs claim that Ann generated "phantom markdowns," by advertising discounted prices, based on a false full price (at which the clothing had never been marked for sale).  (*Id.* ¶ 3.)  The products sold at a supposed discount in the Outlet Stores, Plaintiffs allege, are manufactured specifically for the Outlet Stores and were not previously sold in Ann's retail stores, rendering "illusory" any advertised "discount" on original prices.  (*Id.* ¶¶ 3, 7.)  Ann's pattern of false markdowns was "likely to mislead reasonable consumers" into purchasing particular products on the mistaken belief that they were getting a good deal.  (*Id.* ¶¶ 8-9.)

Plaintiffs claim that Ann's conduct violates state and federal law.  In particular, Plaintiffs allege violations of California's Business & Professions Code §17200, *et seq.* (the "UCL"), California's Business & Professions Code §17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA"), Pennsylvania's Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.* (the "UTPCPL"), as well as the laws of numerous other states, and the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.* ("FTCA"), which prohibits "unfair or deceptive acts or

practices in or affecting commerce," *id.* § 45(a)(1), and dissemination of false advertisements, *id.* § 52(a).  Plaintiffs also bring a claim of unjust enrichment.  (Compl. ¶¶ 131-37.)

Plaintiffs bring their suit against Ann as a putative class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated, both nationwide and in individual states.[2]  Ann moved to dismiss on August 15, 2016.[3]

## II.   Legal Standard

### A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  When resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings, and the plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence.  *See id.*

---

[2]      Plaintiffs define the putative nationwide class as: "All persons who purchased one or more items from Defendant at the Outlet Stores offered at a purported discount from a regular or original price any time between the date in which the statute of limitations began to run to the date of certification (the 'Class Period')."  (Compl. ¶ 81.)  The state classes are defined similarly, but restricted to residents of single states.  (*Id.* ¶¶ 82-84.)  Plaintiffs assert jurisdiction under 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5,000,000, and the named Plaintiffs, who reside in Pennsylvania and California, are diverse from Ann, which is a Delaware corporation headquartered in New York (Compl. ¶¶ 12, 15-17).  However, Plaintiffs have not confirmed that jurisdiction is not defeated due to the proportion of proposed class members who are citizens of New York—the state in which this action was filed and of which Ann is a citizen.  *See* 28 U.S.C. § 1332(d)(3); *id.* § 1332(d)(4).  Plaintiffs are directed to do so by filing a letter with the court within 21 days of the date of this Opinion and Order.

[3]      Plaintiffs initially filed this action on May 5, 2016, naming as Defendants Ann and Ascena Retail Group, Inc.  (Dkt. No. 1.)  Plaintiffs then filed the operative First Amended Complaint on July 15, 2016, naming only Ann as Defendant, and voluntarily dismissed all claims against Ascena Retail Group, Inc.  (Dkt. No. 23; Dkt. No. 26.)  In light of the filing of an amended complaint and a new motion to dismiss, Defendants Ann and Ascena Retail Group, Inc.'s initial motion to dismiss is denied as moot.  (Dkt. No. 18.)

### B.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, courts must accept as true all "factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, and must draw "all inferences in the light most favorable to the non-moving party," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state her claim "with particularity." Fed. R. Civ. P. 9(b). The Second Circuit has "held that Rule 9(b) requires that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

## III.    Discussion

Ann argues that Plaintiffs' claims should be dismissed for several reasons. First, Ann argues that Plaintiffs lack constitutional and statutory standing to bring any of their claims. Second, Ann argues that Plaintiffs' claims under the Consumer Protection Laws of California and Pennsylvania must be dismissed for failure to state a claim. Third, Ann argues that Plaintiffs' UCL claim, which is based on their rights under the FTCA, should be dismissed because the FTCA does not authorize a private right of action directly. Finally, Ann argues that

4

Plaintiffs fail to state a claim for unjust enrichment.  The Court addresses each of these arguments in turn.

### A.      Standing

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Ann argues that Plaintiffs lack constitutional standing for all claims and statutory standing for the California and Pennsylvania law claims, as well as the other state consumer-protection law claims.

#### 1.  Constitutional Standing

The "irreducible constitutional minimum" of standing in federal court requires: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589-90 (1992).  The Supreme Court recently clarified the injury in fact requirement in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), requiring that an injury must be both "concrete *and* particularized," *id.* at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000)), and holding that a "bare" statutory violation is insufficient to confer constitutional standing absent some "concrete" harm, *id.* at 1549.

Ann argues that Plaintiffs fail to plead a concrete injury resulting from Ann's allegedly deceptive pricing scheme.  In their complaint, Plaintiffs allege that they "would not have purchased the products" had they known that the products were, in fact, "being sold at their regular price, rather than at a substantial discount" and were available only at the Outlet Stores and, not originally at Ann's full-price retail stores.  (Compl. ¶¶ 15-16.)  Plaintiffs do not allege, however, that the merchandise was worth less than the price they actually paid for it.

Plaintiffs adequately allege an injury in fact to satisfy Article III standing.  "[W]hen, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2014) (second alteration in original) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)).[4]  Plaintiffs allege that they would not have bought the products absent Ann's advertising, which caused them to spend money they would otherwise not have spent.  This injury is concrete, and while it may ultimately prove insufficient to justify relief under the statutes at issue, it is sufficient to confer constitutional standing.

The cases cited by Ann do not lead to a different conclusion.  The majority of cases Ann relies upon address whether a plaintiff had adequately stated a claim under a *particular* state consumer protection law, not constitutional standing.  *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014) (addressing "actual damage" under the Illinois consumer protection law); *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377, 2016 WL 393215, at *5-6 (D. Mass. Feb. 1, 2016) (addressing "economic injury" under Massachusetts consumer protection law); *Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 50-53 (D. Mass. 2015) (same).[5]

---

[4]      The Court is unmoved by Ann's argument that the Supreme Court's decision in *Spokeo* undermines the Ninth Circuit's holdings in *Hinojos* or *Mazza* that where "class members were relieved of their money by . . . deceptive conduct . . . they have suffered an 'injury in fact.'" *Mazza*, 666 F.3d at 595. (Dkt. No. 30 at 10 n.4.)  *Spokeo* focused on whether bare statutory violations—absent concrete injury—suffice to confer standing, in the context of a procedural violation of the Fair Credit Reporting Act.  *Spokeo*, 136 S. Ct. at 1544.  It therefore does not touch cases like *Hinojos*, *Mazza*, or the instant case, where plaintiffs allege concrete, monetary harm.  (Compl. ¶¶ 67-68, 78-79.)

[5]      Moreover, Plaintiffs here allege that their injury resulted from the purchase of products they would not have otherwise purchased, not the bare allegation that "outlet products are by definition inferior." *Rael v. Dooney & Bourke, Inc.*, No. 16 Civ. 0371, 2016 WL 3952219, at *4 (S.D. Cal. July 22, 2016).

### 2.   Statutory Standing for California Claims

Ann also argues that Plaintiffs lack standing under the California UCL, FAL, and CLRA, which require economic injury.

Standing under the California UCL and FAL is limited to plaintiffs "who ha[ve] suffered injury in fact and ha[ve] lost money or property" as a result of a statutory violation.  Cal. Bus. & Prof. Code §§ 17204, 17535.  "The 'lost money or property' requirement . . . requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant . . . ."  *Hinojos*, 718 F.3d at 1104 (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Calif. 2011)).  Economic injury from unfair competition may be shown in "innumerable ways."  *Kwikset*, 246 P.3d at 885.  Moreover, finding standing under the UCL and FAL necessarily leads to a finding of standing under the CLRA.  *Hinojos*, 718 F.3d at 1108.

In *Kwikset*, for example, the California Supreme Court found the following facts sufficient to establish standing under the UCL and FAL (and, by extension, the CLRA): "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise."  *Kwikset*, 246 P.3d at 889.

The allegations here are similar to those that were deemed sufficient to confer statutory standing in *Kwikset*: Ann labeled certain products with discounted prices that Morrow (the California Plaintiff) alleges were based on phantom retail prices, which induced her to buy a product she would not have otherwise bought.  (Compl. ¶¶ 67-68, 78-80.)

Though the alleged misrepresentation in *Kwikset* involved the nature of the product (that they were "Made in U.S.A."), Ann's argument that *only* misrepresentations about the nature of

the product are sufficient to confer standing is unavailing.  (Dkt. No. 30 at 12.)  *Kwikset* requires

only that the misrepresentation affect consumers' "beliefs about quality," *Kwikset*, 246 P.3d at

890, and subsequent cases interpreting *Kwikset* have suggested that its requirements should be

interpreted broadly, *see Hinojos*, 718 F.3d at 1105, 1107.  Prices, like other attributes, can impact

consumers' perception of merchandise.  Plaintiffs therefore adequately allege economic injury

sufficient to confer standing under the UCL and FAL, and, *a fortiori*, the CLRA.

### 3.  Statutory Standing for Pennsylvania Claims

Ann also argues that Plaintiffs lack standing under the Pennsylvania UTPCPL, which

requires allegation of ascertainable loss.

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable

loss of money or property" as a result of an unlawful practice.  73 Pa. Stat. § 201-9.2(a); *see,*

*e.g.*, *Jarzyna v. Home Props., L.P.*, 763 F. Supp. 2d 742, 749 (E.D. Pa. 2011).  Though "the

Pennsylvania Supreme Court has not definitively addressed what constitutes ascertainable loss

under the statute," lower state courts have confirmed that such loss must be "established from the

factual circumstances of each case."  *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180 (3d Cir.

2015) (quoting *Agliori v. Metro. Life Ins. Co.*, 879 A.2d 315, 321 (Pa. Super. 2005)), *cert. denied*

*sub nom. Udren Law Offices, P.C. v. Kaymark*, 136 S. Ct. 794 (2016).

As above regarding the California claims, Gennock (the Pennsylvania Plaintiff) also

alleges that the product she purchased was worth less than the amount she paid and that she

would not have purchased it but for Ann's alleged misrepresentation that it had been marked

down from a higher price.  (Compl. ¶¶ 67-68, 78-80.)  These allegations are sufficiently specific

for standing under the UTPCPL.  *Compare Allen v. Holiday Univ.*, 249 F.R.D. 166, 193 (E.D.

Pa. 2008) (finding ascertainable loss where consumers were charged "excessive" health club

initiation fees), *and Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 298 n.4 (E.D. Pa. 2007) (finding ascertainable loss where consumers were charged fees by an insurer in excess of the filed rate), *with Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 340 (E.D. Pa. 2012) (dismissing a UTPCPL claim because it lacked "specific factual allegations as to the injury . . . sustained" on the basis of a pharmacy's de-identifying purchaser information without any specifically identified resulting loss).

### 4.   Statutory Standing for Other State-Law Claims

Plaintiffs also allege violations of the consumer protection statutes of dozens of other states and the District of Columbia.  (Compl. ¶¶ 84-97.)  Ann argues that these claims should be dismissed because Plaintiffs lack standing to assert claims under state law from states other than those in which they reside and have purchased the products that are the subject of their claims. (Dkt. No. 30 at 15.)  Plaintiffs argue in response that they are not asserting individual claims under these other state laws, but rather that they seek to represent individuals in those states who are similarly harmed.  (Dkt. No. 32 at 14.)  The parties do not dispute that the named Plaintiffs reside and purchased products in California and Pennsylvania only.  (*See* Dkt. No. 30 at 16.)

Standing and class certification are related but discrete inquiries, and courts are divided as to whether the class-standing issue is more appropriately addressed at the motion to dismiss stage as a matter of standing or the class certification stage.  *See generally* Newberg on Class Actions § 2:6 (5th ed.) (describing the two approaches and concluding that "the class certification approach . . . is preferable to the standing approach").  Indeed, courts in this Circuit are divided on the precise question at issue here: whether a named plaintiff in a putative class action can assert claims under state laws other than those of the states where they themselves suffered injury.  *Compare In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices*

*Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states." (quoting *Ramirez v. STi Prepaid LLC*, 644 F.Supp.2d 496, 505 (D.N.J. 2009)), *and Blessing v. Sirius XM Radio Inc.*, 756 F.Supp.2d 445, 452 (S.D.N.Y. 2010) ("The class certification process will address whether named plaintiffs' injuries are sufficiently similar to those of the proposed class to justify a nationwide class action, and the answer to that question will determine whether there are plaintiffs with standing to bring claims under the laws of states in which no currently-named plaintiff resides."), *with In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) ("[T]his Court 'finds more persuasive the numerous cases holding that named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided.'" (quoting *Smith v. Pizza Hut, Inc.*, No. 09 Civ. 01632, 2011 WL 2791331, at *9 (D. Colo. July 14, 2011))), *and Simington v. Lease Fin. Grp., LLC*, No. 10 Civ. 6052, 2012 WL 651130, at *7 (S.D.N.Y. Feb. 28, 2012) (same).

The Court concludes that the prudent path here is to defer consideration of this issue to the class certification stage.  At this point, it appears that Plaintiffs have adequately pleaded that the conduct by Ann that resulted in their alleged injuries implicates the same set of concerns as the conduct alleged to have injured other class members.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).  At the class certification stage, the Court will be better positioned to determine whether class members have standing to pursue claims under the relevant state laws, and whether the claims adequately satisfy the commonality and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.

While the Court is mindful that this concern must be balanced against the additional cost of multi-state discovery that this delay may impose, deferring consideration of this issue seems more expedient than dismissing it now (which, assuming class members have standing, could result in the refiling of multiple additional class actions). *See* Newberg on Class Actions § 2:8 (5th ed.) ("In the case involving one class representative who lacks standing, where a court must dismiss for lack of jurisdiction, the dismissal may be little more than formal, for if class counsel has other available class representatives, then they can simply refile the case in those representatives' names.")

Accordingly, the Court declines to dismiss Plaintiffs' multistate claims at this stage.

### B.   California and Pennsylvania Claims

Ann next argues that Plaintiffs' California and Pennsylvania claims should be dismissed because they fail to satisfy the heightened pleading requirements of Rule 9(b).  (Dkt. No. 30 at 24.)  Plaintiffs do not dispute that Rule 9(b) applies to their claims; rather, they argue that their complaint satisfies this heightened pleading requirement.  (Dkt. No. 32 at 17.)  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that Rule 9(b) applies to false advertising claims under California law); *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (Pennsylvania law).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The Second Circuit has held that Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *DiMuro*, 572 F. App'x at 30 (quoting *Mills*, 12 F.3d at 1175).

Plaintiffs here have adequately specified the allegedly fraudulent statements.  Plaintiffs describe their purchases with specificity—naming the items they purchased, the dates on which they made those purchases, and the relevant store locations, and further explaining that they relied on Ann's price representations in making these purchases.  (Compl. ¶¶ 47-63.)  Plaintiffs also include, in the text of the complaint, receipts from their purchases, which show the allegedly misrepresentative "original" price and the apparently marked down discount price.  (*Id.* ¶¶ 52, 58, 63.)  Plaintiffs also describe price information shown on price tags, which they allege depicted an original price and a discount price, together with in-store signage describing the products as discounted.  (*Id.* ¶¶ 48, 54, 60.)   The complaint also includes a photograph describing pants as "40% off."  (*Id.* ¶ 41.)  Plaintiffs further allege that these prices are fraudulent because the products were originally produced for outlet stores (rather than Ann's full-price retail stores) and were never sold—at either the Outlet Stores or the retail stores—at the advertised "original price."  (*Id.* ¶¶ 3, 7.)  Plaintiffs confirmed this allegation through investigations—the date and location of at least one of which was specified—that revealed that the products were always sold at the advertised discounted price.  (*Id.* ¶¶ 70-71.)  At this stage, the Court need not determine whether Ann's alleged misstatements were actually false, only that Plaintiffs have identified them with sufficient particularity.  These numerous, specific allegations are sufficient to satisfy the heightened pleading requirement of Rule 9(b).

Ann also argues that Plaintiffs' UCL, FAL, and CLRA claims should be dismissed because they fail the "reasonable consumer" test, which requires plaintiffs to show that a reasonable consumer would be deceived by the alleged representations. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)*.*  However, the "reasonable consumer" question is "usually . . . a question of fact" best left to a jury and not decided by the Court at the motion to

dismiss stage. *Strumlauf v. Starbucks Corp.*, No. 16 Civ. 01306, 2016 WL 3361842, at *6 (N.D. Cal. June 17, 2016) (quoting *Williams*, 552 F.3d at 938) (noting that "courts will grant a motion to dismiss on the basis of the reasonable consumer test" only in "rare situations"); *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09 Civ. 3503, 2010 WL 1267763, at *2 (N.D. Cal. Apr. 1, 2010) (describing the reasonable consumer test as "clearly a question of fact, which is best left for a jury"). Moreover, the very fact that Ann represented its prices as discounted suggests that such representations might impact reasonable consumer purchasing decisions.

Construing all inferences in their favor, the Court concludes that Plaintiffs have adequately carried their burden at this juncture, suggesting that a reasonable consumer would believe that the advertised "original" prices were the prices at which items were originally sold in Ann's retail outlets. A final decision on this question is best left to the finder of fact at a later date.

## C.    FTCA Claims

Ann also argues that Plaintiffs' claims for violation of the UCL should be dismissed because they are based on violations of the FTCA, 15 U.S.C. § 41 *et seq.*, which does not allow for a private right of action. (Dkt. No. 30 at 23.)

It's true that if Plaintiffs' claims actually arose under the FTCA, they should be dismissed. *See Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F.Supp.2d 557, 560 (S.D.N.Y. 2008) ("[T]he Federal Trade Commission Act, which prohibits unfair or deceptive practices, does not provide for a private cause of action."). But none of Plaintiffs' individual claims arise under the FTCA. (Compl. ¶¶ 99-152.) Rather, Ann argues that Plaintiffs' UCL claim is actually "based" on the FTCA and should be dismissed for that reason. (Dkt. No. 30 at 23.) This argument fails for two reasons. First, the UCL claim is based not only on the FTCA, but also

upon independent violations of California state law.  (*See* Compl. ¶ 108.)  Second, though the

FTCA does not include a private right of action, courts have held that FTCA violations can be

relied upon in asserting violation of other statutes that do confer such a private right of action.

*See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 521 n.5 (C.D. Cal. 2015) ("Although the FTCA

does not provide an individual cause of action, the California Supreme Court has made clear that

[the UCL] 'borrows violations of other laws and treats these violations, when committed

pursuant to business activity, as unlawful practices independently actionable.'" (internal citation

omitted) (quoting *Farmers Ins. Exch. v. Superior Court*, 826 P.2d 730 (Calif. 1992))*; cf. Casper

Sleep, Inc. v. Mitcham*, No. 16 CIV. 3224, 2016 WL 4574388, at *4 (S.D.N.Y. Sept. 1, 2016)

(holding that plaintiffs can rely on FTCA violations in alleging false advertising under the

Lanham Act).

### D. Unjust Enrichment

Last, Ann argues that Plaintiffs fail to state a claim for unjust enrichment.  (Dkt. No. 30 at

24.)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1)

that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience

require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation

marks omitted).  "Under New York law, it is 'contrary to equity and good conscience' to enable

a party to benefit from misleading representations."  *Waldman v. New Chapter, Inc.*, 714 F.

Supp. 2d 398, 404 (E.D.N.Y. 2010) (citing *Firestone v. Miroth Const. Co.*, 215 A.D. 564, 565

(N.Y. App. Div. 1st Dep't 1926)).

Here, Plaintiffs allege that Ann misrepresented the price and the discount of its products, thereby inducing Plaintiffs to purchase merchandise that they would not have otherwise purchased.  This is sufficient to state a claim for unjust enrichment.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss is DENIED.  Ann is directed to answer Plaintiffs' claims within 21 days of the date of this Opinion and Order.  Plaintiffs are directed to file a letter with the Court confirming that jurisdiction is proper under 28 U.S.C. § 1332(d)(3) and (d)(4) within 21 days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Number 18 and Docket Number 29.


SO ORDERED.


Dated: January 24, 2017
        New York, New York

                                                J. PAUL OETKEN
                                            United States District Judge