UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated, | Civil Action No. 16-cv-3340(JPO)(SN) |
| Plaintiffs, | |
| v. | |
| ANN INC., a Delaware corporation, | |
| Defendant. | |

**JOINT DECLARATION OF JOSEPH P. GUGLIELMO AND GARY F. LYNCH
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

We, Joseph P. Guglielmo and Gary F. Lynch, pursuant to 28 U.S.C. § 1746, state as follows:

1.    We are Class Counsel for Plaintiffs and the proposed Settlement Class in the action ("Action") against ANN Inc. ("ANN").[1]  We submit this Joint Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class.  Unless otherwise noted, we have personal knowledge of the facts set forth herein and could testify competently to them if called upon to do so.

2.    Mr. Guglielmo is a partner at Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") in New York, which has successfully prosecuted some of the country's largest and most complex class actions.  Mr. Guglielmo has been practicing for over 20 years and has been appointed to leadership positions in numerous class actions and multidistrict litigation.  Mr. Lynch is a

---

[1]    All capitalized defined terms have the same meaning as defined in the Settlement Agreement attached as Exhibit 1 to the Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class.

founder of Carlson Lynch Sweet & Kilpela, LLP ("Carlson Lynch"), a leading national class action firm with extensive experience litigating complex cases across the country.  Mr. Lynch has been practicing for more than 20 years and represents class plaintiffs in complex matters, including many class actions.  A copy of the firm résumés of Scott+Scott and Carlson Lynch are attached hereto as Exhibits 2 & 3, respectively.

2.      Plaintiffs, Class Counsel, and ANN entered into a Settlement Agreement ("Settlement" or "Agreement") in which ANN has agreed to: (i) create a Settlement Fund with a total value of $6,100,000.00. including a common fund for the benefit of the Settlement Class; and (ii) implement significant injunctive relief, including modifying its current labeling, and agreeing to comply with applicable state and federal law addressing the deceptive pricing practice at issue in this Action.  Under the Settlement, members of the Settlement Class need only submit, via online or mail, a Claim Form stating that they purchased ANN Merchandise during the Class Period at a discount from the regular or original price in order to receive a distribution from the Settlement Fund.  Class Members have two options, they can elect to receive either $5.00 in cash or $12.00 in a Voucher to purchase Merchandise in any of ANN's Ann Taylor Factory or LOFT Outlet stores.  Class Members who elect to receive a cash award will only need to further identify the date and location of one of their purchases of Merchandise.

3.      Throughout the litigation, the Parties have held opposing positions on many core legal and factual issues.  Plaintiffs maintain that the claims asserted in the Action are meritorious; that they would establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment recovered in favor of Plaintiffs and the Settlement Class Members would be affirmed on an appeal.  Plaintiffs' ultimate success in the litigation requires them to prevail, in whole or in part, at all of these points in the litigation.  Success on the

part of ANN at any one of these points could, or would, have marked defeat for Plaintiffs and the Settlement Class.  Thus, continued litigation poses significant risks and uncertainties, as well as the time, expense, and delays associated with trial and appellate proceedings.

4.      In light of the risks, uncertainties, and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of an election between direct cash or voucher compensation and other valuable relief.

**A.      Background of the Litigation and Procedural History**

5.      On May 5, 2016, Plaintiffs filed a class action complaint in this Court seeking monetary damages, restitution, and declaratory relief from ANN and Ascena Retail Group for alleged false deceptive labeling and marketing of Merchandise sold at the Ann Taylor Factory or LOFT Outlet stores.  Plaintiffs allege that in reliance on ANN's misrepresentations regarding the existence, nature and amount of price discounts on ANN's Merchandise, they purchased ANN's Merchandise, and as a result thereby were damaged.  Plaintiffs further alleged that in reliance on ANN's misrepresentations, they believed that the Merchandise purchased at ANN's Ann Taylor Factory or LOFT Outlet stores was once sold in its mainline retail ANN stores and was of the same quality, and as a result thereby were damaged.

6.      On June 24, 2016, ANN filed a motion to dismiss the complaint.  On July 15, 2016, Plaintiffs filed an amended class action complaint.  On July 19, 2016, Plaintiffs voluntarily dismissed all claims against Ascena Retail Group.  On August 15, 2016, ANN filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim.  After full briefing by the parties, the Court denied ANN's motion on January 24, 2017.

7.      On February 14, 2017, ANN filed its answer to the amended complaint, denying liability for Plaintiffs' claims and putting forward ten affirmative defenses.  On March 8, 2017,

the Parties served document requests and interrogatories upon one another.  On March 30, 2017, the Parties exchanged their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.

8.    Beginning in early 2017, the Parties engaged in preliminary settlement discussions, which were overseen and supervised by Magistrate Judge Netburn.  As part of the preliminary settlement discussions, ANN shared with Class Counsel certain discovery, including proprietary sales data, to understand the case's value, as well as certain information regarding its business practices.

9.    On April 20, 2017, the Parties submitted *ex parte* mediation letters to Magistrate Judge Netburn.  On April 27, 2017, the Parties attended a full-day mediation before Magistrate Judge Netburn although they did not reach an agreement to settle the action.  Thereafter, the Parties continued their discussions and advised Magistrate Judge Netburn as to the status of their negotiations.  The Parties also notified Judge Oetken that the Parties were continuing their settlement discussions.  On May 26, 2017, the Parties wrote to Judge Oetken that they had reached a settlement in principle, but required some additional time to negotiate attorneys' fees and certain administrative provisions.  After months of negotiations, the Parties reached an agreement in principle to settle and signed a term sheet, which memorialized, subject to negotiation and execution of the Agreement and Preliminary and Final Approval, the Parties' good faith intention to fully, finally, and forever resolve, discharge, and release all rights and claims of Plaintiffs and the Settlement Class Members in exchange for ANN's agreement to: (a) create a Settlement Fund with a total value of $6,100,000.00 as a common fund for the benefit of the Settlement Class; and (b) implement significant changes to the pricing and labeling

4

of Merchandise and comply with relevant laws pertaining to the deceptive pricing practices at issue in this Action.

10.     A term sheet was signed on October 12, 2017 and on December 12, 2017, the Parties fully executed the Agreement.

**B.     Class Counsel's Investigation**

11.     Class Counsel spent many hours investigating Plaintiffs' claims against ANN. Prior to filing suit, Class Counsel conducted a factual and legal investigation that included gathering information about ANN's pricing practices of its Merchandise in its Ann Taylor Factory and LOFT Outlet stores and the impact the pricing policies had upon Plaintiffs and other consumers. Plaintiffs obtained certain information relating to ANN's pricing practices in various locations to determine whether the pricing practices at issue were systematic and applied to all of the Merchandise sold in ANN's Ann Taylor Factory or LOFT Outlet stores. This information was essential to Class Counsel's ability to understand the nature of the conduct, the language on the price tags at issue, and potential relief and remedies.

12.     Class Counsel expended significant resources researching and developing the legal claims at issue. Plaintiffs conducted legal research into the claims, including determining the specific claims alleged in the complaint. Plaintiffs' further retained consultants to develop and support the damage claims alleged by Plaintiffs.

**C.     The Relief for the Benefit of the Settlement Class**

13.     The Settlement consists of a fund with a total value of $6,100,000, including: Vouchers with a total value of $5,100,000 (425,000 Vouchers at $12.00 per Voucher) to be used to pay eligible Claimants who elect to receive Vouchers for ANN's Merchandise; $500,000 in cash to pay eligible Claimants who elect to receive a cash award; and $500,000 in cash to pay for notice and administration of the Settlement Fund. The Settlement Fund will be used to pay the

costs of class Notice and Settlement Administration, attorneys' fees, costs, and expenses, Plaintiffs' Incentive Awards sought in this case, and, most importantly, distributions to the Settlement Class Members.

14.     Additionally, within 60 days of the Effective Date, ANN will implement certain injunctive and prospective relief to ensure that its pricing practices conform with state and federal laws regarding price comparison advertising.  Specifically, ANN has agreed to label its Merchandise as being for "Ann Taylor Factory" or "LOFT Outlet."  Exemplars of the labels ANN intends to use are attached as Exhibit F to the Agreement.

### D.     Class Notice

15.     The Notice Plan in this Settlement is designed to provide the best notice practicable.  The Notice Plan is reasonably calculated under the circumstances to inform members of the Settlement Class of a description of the material terms of the Settlement, date by which persons in the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class, date by which persons in the Settlement Class may object to the Settlement, and date upon which the Final Approval Hearing will occur.

16.     The Notice Plan consists of email and direct mail notification, as well as direct mail by ANN for those customers who receive mailings from ANN through the use of ANN's credit card.  ANN has provided mail and email information of potential Settlement Class Members from its internal records to the Settlement Administrator.

17.     Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; date by which members of the Settlement may exclude themselves from or opt-out of the Settlement Class; date by which members of the Settlement Class may object to the Settlement; and date of the Final Approval Hearing.

18.     The Notice Plan is designed to reach a high percentage of the Settlement Class and exceed the requirements of constitutional due process.

**E.     Claims Process**

19.     To be eligible to participate in the Settlement, Settlement Class Members will be required to submit a Claim Form stating that they are members of the Class and purchased ANN's Merchandise during the Class Period at a discount from the regular or original price.  A copy of the Claim Form is attached as Exhibit A to the Agreement.  Class Members seeking a cash award will have to identify the date and store location of at least one purchase.  Settlement Class Members shall return the Claim Form to the address identified therein.

20.     Once the forms are submitted, the Settlement and Notice Administrator will be responsible for reviewing the forms for completeness.  Should a Claim Form be valid and complete, the Claimant will be added to the Settlement Class Member list.  If a Claim Form is invalid or incomplete, the Settlement and Notice Administrator will send written verification to the Claimant that the form is rejected.  The Claimant will have one more opportunity to submit a corrected completed form.

21.     All Claim Forms must be submitted online or postmarked no later than 45 days after the entry of the Final Approval Order.

**F.     The Plan of Allocation**

22.     Within 30 days of the Effective Date, Settlement Class Members submitting valid Claims Forms will be entitled to $5.00 in cash or $12.00 in a Voucher to purchase Merchandise in any of ANN's Ann Taylor Factory or LOFT Outlet stores.  If, after paying all valid claims for cash, value remains in the Cash Fund, such additional funds may be used to pay for any notice and administration costs that exceed the value of the Notice Fund.  If additional value remains in the Cash Fund, it will be used to increase eligible Settlement Class Members' claimed relief for

cash on a *pro rata* basis.  If distributing all valid claims for Vouchers results in a distribution of less than 425,000 Vouchers, an additional $12.00 Voucher will be issued to each Settlement Class Member, who submitted a valid claim for a Voucher, in the order those claims were received on a first come first served basis, with the process repeating until 425,000 Vouchers are distributed.  If the total amount of the timely, valid, and approved claims submitted by Settlement Class Members exceeds the amount of the Settlement Fund, each eligible Settlement Class Member's initial claim amount, for either monetary amounts claimed or Vouchers claimed, shall be proportionately reduced on a *pro rata* basis based on the number of affected accounts, such that the aggregate value of the cash payments or Voucher amounts does not exceed the value of the Cash Fund or the Voucher Fund, respectively, provided, however, that if the amount of the cash payment to each Settlement Class Member after *pro rata* reduction is less than $5.00, then each Settlement Class Member claiming cash shall receive their *pro rata* share of the cash plus a Voucher before any other Settlement Class Member receives a second Voucher. Settlement Class Members will be able to combine or stack two of the Vouchers (*i.e.*, $24.00) to purchase ANN's Merchandise.  The Vouchers are fully transferrable, have no cash value, expire one year from the date they are issued, and may not be combined with other coupon(s), except that Vouchers may be used on any Merchandise offered to the general public on promotion or at a discount.

### G.     Incentive Awards, Attorneys' Fees and Costs

23.     Class Counsel will seek Incentive Awards of $1,500 for each of the named Plaintiffs.  If the Court approves them, the total Incentive Awards of $3,000 will be approximately 0.05% of the Settlement Fund.  The Incentive Awards will be paid from the Settlement Fund and in addition to the distributions the Plaintiffs will be entitled to under the

terms of the Settlement.  These awards will compensate Plaintiffs for their time and effort in the Action and for the risks they assumed in prosecuting the Action against ANN.  Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; (3) responding to formal and informal discovery; (4) participating in conferences with Class Counsel; (5) attending the mediation in New York; and (6) participating in numerous subsequent discussions concerning the settlement negotiations and the terms of the Settlement Agreement.  In so doing, Plaintiffs were integral to this Action.  ANN does not object to Class Counsel's request for Incentive Awards for the Plaintiffs.

24.     ANN will not oppose Class Counsel's request for attorneys' fees, as well as reimbursement of costs and expenses incurred in connection with the Action, of up to 25% of the Settlement Fund, or $1,525,000.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.

### H.     Considerations Supporting Settlement

#### 1.     This Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations

25.     The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

26.     The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and the legal and

factual issues of this Action.   Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.

27.   As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in discovery with ANN.   Class Counsel's investigation and prosecution of the case enabled it to gain an understanding of the evidence related to central questions in the case and prepared it for well-informed settlement negotiations.   Accordingly, Class Counsel was well positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them.

28.   Furthermore, the settlement negotiations of the Parties were held under the supervision of Magistrate Judge Netburn.

### 2.   Complexity, Expense, and Likely Duration of the Litigation

29.   By reaching a favorable settlement prior to motions for summary judgment or trial, the Parties seek to avoid significant expense and delay and instead, ensure recovery for the Settlement Class.

30.   Non-class action means for handling claims like those at issue here would place burdens on the courts and require expenditure of public and private resources.   Given the relatively small value of the claims of the individual members of the Settlement Class, individual cases would be impracticable.   Although the Parties have already devoted considerable time and expense to litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.   Continued litigation here would be difficult, expensive, and time consuming.   Recovery by any means other than settlement would likely require additional years of litigation in this Court and potentially in the Second Circuit Court of Appeals.

31.   One of the most expensive aspects of ongoing litigation in this case involves the upcoming retention of experts to perform data analyses and to present those analyses in expert

reports, at depositions, and at trial.  Industry experts in the fields of retail and marketing would also likely have to be retained by both sides.

32.     The Settlement provides immediate and substantial relief to potentially hundreds of thousands of ANN customers.  The proposed Settlement is the best way for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

### 3.     The Reaction of the Class to the Settlement

33.     Since no notice has been sent, consideration of this factor is premature.

### 4.     The Stage of the Proceedings and Amount of Discovery

34.     Class Counsel conducted an in-depth factual and legal investigation into the claims underlying the Action and researched the procedural challenges around class certification issues.  Specifically, Class Counsel interviewed Plaintiffs and conducted legal research into the claims, including determining the specific claims alleged in the complaint.  Plaintiffs obtained certain information relating to ANN's pricing practices in various locations to determine whether the pricing practices at issue were systematic and applied to all of the Merchandise sold in ANN's Ann Taylor Factory and LOFT Outlet stores.  Plaintiffs further retained consultants to develop and support the damage claims alleged by Plaintiffs.

35.     Further, Class Counsel engaged in serious settlement discussions, overseen by Magistrate Judge Netburn, in which the merits of the case were examined by both sides in detail, ultimately resulting in the Settlement, which was designed to fairly compensate Class Members and elicit behavioral changes from ANN to sharply reduce the likelihood that the challenged behavior will repeat.

### 5.     The Risks of Establishing Liability and Damages

36.     Plaintiffs believe that they have developed a reasonably strong case against ANN; however, winning a judgment would require significant factual development, and the result is by

no means certain.  ANN has denied, and continues to deny, that its practices violate the laws at issue in the suit and has asserted numerous defenses to the claims herein.  Likewise, in similar outlet litigation elsewhere, defendants have argued that the comparative discount pricing language contained on the price tags at issue would not lead a reasonable consumer to believe that the product in question was previously sold at a higher price.  As such, there could be no violations under state consumer protection statutes for making an unlawful price comparison. The threshold issue of whether consumers would be deceived by such language was thus a significant obstacle Plaintiffs would have to overcome in order to move forward with the prosecution of their case.  In addition, there is the possibility that the Court would not certify a nationwide class here.  Even if Plaintiffs won a motion for class certification, they risk a jury finding against them as to the liability and/or damages sought.

37.     Class Counsel are experienced, realistic, and understand that the resolution of liability issues, outcome of the trial, and inevitable appeals process are inherently uncertain in terms of outcome and duration.  A settlement of $6.1 million and the behavior changes described above represent a significant recovery.

38.     In addition, proving damages in this Action would have been extremely complicated and would almost certainly require significant expert testimony and analysis. Although Plaintiffs believe that expert testimony would provide evidence sufficient to establish the measure of damages in this case, Plaintiffs are aware that there is a risk that the Court would find that Plaintiffs have failed to establish such damages.  Thus, Plaintiffs faced the risk of a non-monetary recovery for members of the Settlement Class, despite this Court's finding of ANN's liability.

### 6.     The Risks of Maintaining the Class Action Through Trial

39.     The risks of maintaining this Action as a class action through trial provide additional support to Plaintiffs' position that the Settlement should be approved.  ANN would likely have argued that individual issues predominate over common issues.

41.     Even assuming that Plaintiffs were successful in certifying a class, there is a risk that ANN would ask the Court to reconsider or amend the certification decision.

### 7.     The Ability of Defendants to Withstand a Greater Judgment

42.     Neither Plaintiffs nor their counsel have direct knowledge as to this factor; however, it is certainly possible that ANN could withstand a greater judgment for an amount significantly greater than the Settlement.

### 8.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

43.     Other courts have been uneven in allowing cases, such as this one, to survive a motion to dismiss, suggesting that liability is not certain.  Given the difficulties in establishing damages, Plaintiffs are unable to estimate with any certainty the best possible recovery for members of the Settlement Class at this stage of the litigation.

44.     However, as stated above, establishing damages would be a difficult and expensive task.  The law establishing a proper damages model to apply to outlet store deceptive pricing litigation is developing.  In addition, litigation through trial and appeal of this case would be lengthy, expensive, and would subject Plaintiffs' claims to a number of risks pertaining to liability.

45.     Given the risks and uncertainties of establishing liability and damages at trial, Plaintiffs believe that the Settlement, which includes a Settlement Fund with a value of $6.1 million – with the ability to choose the preferred method of relief – in addition to the benefit of

significant practice changes, falls within the range of reasonableness and will prevent future damages based on the practices at issue in this action.

### I.     Class Certification for Settlement Purposes

47.     ANN's business records identify millions of potential members in the Settlement Class.

48.     Plaintiffs and members of the Settlement Class bring identical claims arising from ANN's labeling and marketing of Merchandise that it sells at its Ann Taylor Factory and LOFT Outlet stores.  Specifically, Plaintiffs and members of the Settlement Class claim that the manner in which ANN labels its price tags deceived them into believing they were purchasing products at a discounted price.  Accordingly, the common questions are whether ANN used false price representations and falsely advertised price discounts on its Merchandise sold at its Ann Taylor Factory and LOFT Outlet stores, and whether such representations constitute a violation of state consumer protection statutes and common law.

49.     Plaintiffs and members of the Settlement Class were subjected to the same advertising and marketing practices by ANN and claim to have suffered from the same injuries, and will benefit equally from the relief provided by the Settlement.

50.     Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of members of the Settlement Class because Plaintiffs and members of the Settlement Class have the same interest in the relief afforded by the Settlement.  Plaintiffs and members of the Settlement Class do not have divergent interests.  Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.

51.     Liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.  As stated above, the central issue in this litigation is whether ANN engaged in a policy and practice of misrepresenting the existence, nature, and amount of price discounts on products manufactured exclusively for its Ann Taylor Factory and LOFT Outlet stores.  Because ANN's policies and practices applied to all members of the Settlement Class, questions regarding the legality of those policies are well suited for class treatment.

52.     Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2017.

 */s/ Joseph P. Guglielmo*          
Joseph P. Guglielmo

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2017.

 */s/ Gary F. Lynch*              
Gary F. Lynch

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

    */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com