**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated, | Civil Action No. 16-cv-3340(JPO)(SN) |
| Plaintiffs, | |
| v. | |
| ANN INC., a Delaware corporation, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................ 1

II.   SUMMARY OF CLASS COUNSEL'S WORK ............................................... 2

III.  SUMMARY OF THE PROPOSED SETTLEMENT ......................................... 4

          A.    The Settlement Class ........................................................................ 4

          B.    Benefits to Settlement Class Members .............................................. 4

          C.    Class Representative Compensation .................................................. 5

          D.    Attorneys' Fees and Expenses .......................................................... 5

IV.   THE NEGOTIATED REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED ......................................................... 6

    A.    **The Requested Fee Award Is Reasonable Under the Percentage or Lodestar Method of Determining Reasonable Attorneys' Fees** ........................... 6

    B.    **The Fee is Reasonable Under the Percentage of the Fund  Method** .................... 6

    C.    **The Fee Is Reasonable Under the Lodestar Method** ................................ 8

    D.    **The *Goldberger* Factors Further Support the Reasonableness of the Agreed-Upon Fee** .............................................................................. 10

        1.    **Time and Labor Expended by Counsel** ...................................... 10

        2.    **The Magnitude and Complexities of the Litigation** .................... 11

        3.    **The Risk of Litigation** .............................................................. 11

        4.    **The Quality of Representation** .................................................. 12

        5.    **The Requested Fee in Relation to the Settlement** ...................... 13

        6.    **Public Policy Consideration** ...................................................... 13

V.    APPLICATION FOR INCENTIVE AWARDS ................................................ 13

VI.   CONCLUSION .................................................................................................. 15

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*In re Alloy, Inc. Sec. Litig.*
No. 03 CV 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ....................................................10

*Berrios v. Sprint Corp.*
1998 WL 1749828 (S.D.N.Y.1998) .......................................................................................14

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ...................................................................6

*Castagna v. Madison Square Garden, L.P.*
No. 09 Civ. 10211, 2011 WL 2208614(S.D.N.Y. June 7, 2011) ......................................................9

*In re Citigroup Inc. Sec. Litig.*
965 F.Supp. 2d 369, 388 (S.D.N.Y. 2013) .....................................................................................7

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y.
2014) ...................................................................................................................7, 8, 9, 10

*Duchene v. Michael Cetta, Inc.*
No. 06-cv-4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ..................................................14

*Gattinella v. Michael Kors (USA), Inc.*,
No. 14cv5731, 2016 WL 690877 (S.D.N.Y. Feb. 9, 2016)..................................................9, 14

*Goldberger v. Integrated Res., Inc*.
209 F.3d 43, 50 (2d Cir. 2000) ......................................................................6, 8, 10, 11, 12, 13

*Hernandez v. Merrill Lynch & Co.*
No. 11 CV 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ..................................................10

*Luciano v. Olsten Corp.*
109 F.3d 111, 115 (2d Cir. 1997) ..................................................................................................9

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................6, 8, 12

*In re Marsh ERISA Litig.*
265 F.R.D. 128, 148 (S.D.N.Y. 2010) ........................................................................................11

*Massiah v. MetroPlus Health Plan, Inc.*
No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................13

*Masters v. Wilhelmina Model Agency, Inc.*
473 F.3d 423 (2d Cir. 2007) ...........................................................................7

*In re MetLife Demutalization Litig.*
689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) ...................................................12

*Milstein v. Huck*
600 F.Supp.254, 167 (E.D.N.Y. 1984) ...........................................................11

*Missouri v. Jenkins by Agyei*
491 U.S. 274, 283-84 (1989) ...........................................................................9

*Roberts v. Texaco*
979 F.Supp. 185 (S.D.N.Y.1997) ..................................................................14

*Salus v. Tse Group, LLC*
No. 07 Civ. 03142 (S.D.N.Y. April 3, 2008) ................................................14

*Sewell v. Bovis Lend Lease, Inc.*
No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *15 (S.D.N.Y. Apr. 16, 2012) ..........................14

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8831, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................11, 13

*Sykes v. Harris*
09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..............................14

*In re Telik, Inc. Sec. Litig.*
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...........................................................11

*Velez v. Novartis Pharms. Corp.*
No 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................7

*Yeagley v. Wells Fargo & Co.*
No. C05-03403 CRB, 2008 WL 171083 (N.D. Cal. Jan. 18, 2008) ............................7

Plaintiffs Siobhan Morrow and Ashley Gennock (the "Proposed Class Representatives" or "Plaintiffs"), and co-lead counsel Scott+Scott LLP and Carlson Lynch Sweet Kilpela and Carpenter, LLP, (collectively "Class Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of their litigation expenses, and payment of incentive awards to Plaintiffs.

## I.      PRELIMINARY STATEMENT

Class Counsel vigorously and efficiently prosecuted this action and was able to achieve an excellent result for the Class without expending unnecessary time or resources.  Under the terms of the Settlement, ANN Inc. ("ANN") will establish a Settlement Fund consisting of cash and vouchers with a combined total value $6,100,000. *See* Settlement Agreement, (ECF No. 60-1, §4.1.) The Settlement Fund consists of: (i) a $5,100,000 Voucher Fund (equaling 425,000 Vouchers valued at $12.00 per Voucher); (ii) $500,000 in a Cash Fund that will be used to pay cash awards; and (iii) $500,000 to provide Class Notice. *Id.*[1]

After reaching agreement on the substantive terms of the Settlement, the Parties were also able to negotiate an agreement on attorneys' fees, expenses, and incentive awards that ANN will pay separate and apart from its payments to the Settlement Fund. (Agreement § 1.10; Joint Declaration of Joseph P. Guglielmo and Gary F. Lynch (ECF No. 61, ¶ 9.) Per this agreement, Class Counsel respectfully requests an award of $1,525,000 in attorneys' fees, $18,214.59 in expenses, and a $1,500 incentive award to both of the Class Representatives.  The requested fee is approximately 25% of the Settlement Fund made available to the Class and is commensurate with

---

[1] Plaintiffs incorporate by reference the statement of facts and procedural history from Plaintiffs' contemporaneously filed Memorandum of Law In Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement.

Class Counsel's collective efforts, the substantial risks they undertook, the outstanding results they achieved, and is in line with fees awarded in other complex, contingency fee cases in this District and Circuit.

## II.     SUMMARY OF CLASS COUNSEL'S WORK

Class Counsel invested substantial time and money in the development and prosecution of the Action, including investigating background facts, interviewing industry insiders, drafting complaints, briefing dispositive motions, drafting and responding to discovery, reviewing documents, working with consultants regarding the damages theories.

Prior to commencing the action, Class Counsel spent many hours investigating the claims of potential plaintiffs against ANN. (Joint Decl. ¶¶ 11-12.) Class Counsel conducted a factual and legal investigation that included gathering information about ANN's pricing practices of its Merchandise in its Outlet Stores and the impact the pricing policies had upon Plaintiffs and other consumers. (*Id.* ¶ 11.) Plaintiffs obtained certain information relating to ANN's pricing practices in various locations to confirm that the pricing practices at issue were systematic and applied to all of the Merchandise sold in the Outlet Stores. (*Id.*) Plaintiffs further retained consultants to develop and support the damage claims alleged by Plaintiffs. (*Id.* ¶ 12.) This information was essential to Class Counsel's ability to understand the nature of the conduct, language on the price tags at issue, and potential relief and remedies. (*Id.* ¶ 11.) Class Counsel also expended significant resources researching and developing the legal claims at issue. (*Id.* ¶ 12.)

Class Counsel thereafter filed a complaint and amended complaint seeking monetary damages, restitution, and declaratory relief. (*Id.* ¶5.) Plaintiffs conducted further legal research and drafted a response to ANN's motion to dismiss which sought to dismiss all claims brought by Plaintiffs. (*Id.* ¶6.) Following the Court's denial of ANN's motion to dismiss, Class Counsel worked with their damages and liability consultants and drafted and served document requests and

2

interrogatories upon ANN.  (*Id.* ¶¶6-7.) Class Counsel also worked with their clients to respond to document requests and interrogatories served by ANN. (*Id.* ¶7.) While the parties were negotiating their discovery responses, in early 2017, the Parties agreed to commence settlement discussions. (*Id.* ¶8.) In connection with those discussions, Plaintiffs gathered certain information relating to their clients' purchases, and information relating to their factual investigation and provided that information to ANN.  Class Counsel reviewed certain sales and marketing data regarding the merchandise at issue and the labeling of ANN's Outlet merchandise.

Class Counsel continued working on the factual and legal claims.  Class Counsel prepared a confidential mediation statement which was submitted to Magistrate Netburn and attended at all-day mediation session on April 27, 2017 before Magistrate Netburn. (*Id.* ¶9.) Although a settlement was not reached during the mediation, the parties agreed to continue their settlement discussions. (*Id.*)

Thereafter, with the ongoing assistance and under the supervision of Magistrate Judge Netburn, the parties were able to reach a settlement in principle on May 26, 2017. (*Id.*) Plaintiffs began the process of drafting the settlement terms and the parties engaged in arms-length negotiations over the structure of the settlement which were embodied in a Term Sheet. (*Id.*) Thereafter, Class Counsel began drafting the principle terms for the Settlement, notice plan, and plan of allocation, and solicited potential administrators to submit proposals to act as the Settlement Administrator. (*Id.*)  Class Counsel, along with counsel for ANN, engaged with numerous potential administrators to develop the Notice Plan and claims process. (*Id.*) Class Counsel continued negotiating the formal terms and conditions of the Settlement with counsel for ANN which was ultimately agreed to and executed on October 12, 2017. (*Id.* ¶10.)

III.    **SUMMARY OF THE PROPOSED SETTLEMENT**

A.      **The Settlement Class**

The Settlement resolves the claims of:

all persons identified in ANN's business records as of April 18, 2017, who, from May 5, 2012 to May 4, 2016, purchased one or more items from Defendant's Ann Taylor Factory or LOFT Outlet Stores offered at a discount from a regular or original price.

B.      **Benefits to Settlement Class Members**

The Settlement consists of a fund with a total value of $6.1 million, including: Vouchers valued at $5.1 million (425,000 Vouchers at $12.00 per Voucher) to be used to pay eligible Claimants who elect to receive Vouchers for ANN's Merchandise; $500,000 in cash to pay eligible Claimants who elect to receive a cash award; and $500,000 in cash to pay for the costs of notice and administration of the Settlement Fund.  (Settlement Agreement § 4.1(a).)

Additionally, ANN has agreed to substantive prospective relief.  First, within 60 days of the Effective Date, ANN will ensure that its pricing and advertising of Merchandise sold at its Outlet stores comply with applicable state and federal merchandise pricing laws.  Second, ANN will label its Merchandise as being for "Ann Taylor Factory" or "LOFT Outlet."  (*Id.* § 4.6.) Specifically, as to the labeling, through this Settlement ANN has agreed to change the price tags it uses for Ann Taylor Factory and LOFT Outlet stores to specifically identify that such merchandise was manufactured and sold for such stores as opposed to ANN's mainline retail stores. (*Id.)* The combination of these two practice changes specifically and definitively address the claims alleged by Plaintiffs – namely that ANN deceptively priced Merchandise sold at Ann Taylor Factory and LOFT Outlet stores such that such Merchandise was perpetually on sale, and that ANN deceptively labeled Merchandise at its Ann Taylor Factory and LOFT Outlet stores to

give customers the impression that such Merchandise was previously sold at ANN mainline stores. (Joint Decl. ¶2.)

### C.  Class Representative Compensation

Class Counsel will seek Incentive Awards of $1,500 for each of the named Plaintiffs. (*Id.* § 8.4.)  If the Court approves them, the total Incentive Awards of $3,000 will be approximately 0.05% of the Settlement Fund.  (Joint Decl. ¶ 23.)  The Incentive Awards will be paid from the Settlement Fund and will be in addition to the distributions Plaintiffs will be entitled to under the terms of the Settlement.  (Agreement § 8.4.)  These awards will compensate the representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against ANN.  (Joint Decl. ¶ 23.)  Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; (3) responding to formal and informal discovery; (4) participating in conferences with Class Counsel; (5) attending the mediation in New York; and (6) participating in numerous subsequent discussions concerning the settlement terms.  (*Id.*)  In so doing, Plaintiffs were integral to the case.  (*Id.*)  ANN does not object to Class Counsel's request for Incentive Awards for the Plaintiffs.

### D.  Attorneys' Fees and Expenses

ANN will not oppose Class Counsel's request for attorneys' fees of up to 25% of the Settlement Fund, or $1,525,000, as well as reimbursement of costs and expenses incurred in connection with the Action.  (Agreement § 8.1; Joint Decl. ¶ 24.)  As described below, Plaintiffs' Counsel's expenses incurred in this litigation are $18,214.59.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.  (Agreement § 1.10; Joint Decl. ¶ 24.)

## IV.   THE NEGOTIATED REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Through the efforts of Class Counsel ANN has agreed to create a $6,100,000 Settlement Fund that provide the Class with notice of the Settlement and access to an award of either cash or vouchers.  Only after reaching agreement on the substantive terms of the Settlement did Class Counsel and ANN reach a negotiated agreement under which, subject to the Court's approval, ANN will pay an additional $1,525,000 in attorneys' fees and expenses. *See* Settlement Agreement ¶8.1. The Parties negotiated this payment at arm's-length, through sophisticated counsel. The agreement on fees and expenses reflects the risks for both sides, the nature of the result obtained for the Class, and the magnitude of the fee the Court might award if the matter were litigated.

### A. The Requested Fee Award Is Reasonable Under the Percentage or Lodestar Method of Determining Reasonable Attorneys' Fees

The court may determine an appropriate award of attorneys' fees by reference to either the percentage of the common fund created or counsel's lodestar.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Under either method, Plaintiffs' request is fair and reasonable and should be approved.

### B. The Fee is Reasonable Under the Percentage of the Fund  Method

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Thus, when "a class plaintiff successfully recovers a common fund for the benefit of a class, the costs of litigation should be spread among the fund's beneficiaries." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Where, as here, a class action settlement creates a common fund, plaintiff's counsel is entitled to "a reasonable fee- set by the court- to be taken from the fund." *Goldberger*, 209 F.3d 50. The Second Circuit courts favor fee awards under the percentage method

because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). Accordingly, the trend of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F.Supp. 2d 369, 388 (S.D.N.Y. 2013).

When using the percentage of the fund approach, courts compensate class counsel for their work in extracting both cash and non-cash relief from defendant. *See Velez v. Novartis Pharms. Corp.*, No 04 CIV 09194 CM, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiff's counsel have achieved a good recovery for the class includes the value of both monetary and non-monetary relief).

Here, Plaintiffs' Counsel requested fee amounts to approximately 25% of the fund if attorneys' fees are not included in the calculation, and approximately 20% of the fund if the attorneys' fees are included and considered part of the benefit to the Class. In calculating the value of the common fund created by class counsel's efforts, the Court should consider the "entire Fund, and not some portion thereof" that has been "created through the efforts of counsel at the instigation of the entire class." *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). This calculation also includes the value of the attorneys' fees a defendant has agreed to pay because "if [Defendant] did not pay the fees the class members would have to pay." *Yeagley v. Wells Fargo & Co.*, No. C05-03403 CRB, 2008 WL 171083, at *7 (N.D. Cal. Jan. 18, 2008), rev'd on other grounds, 365 F. App'x 886 (9th Cir. 2010) ("[I]t makes sense to include the fees as part of the common fund."). Indeed considering the percentage requested, Plaintiffs' Counsel's

request of either 20% of 25% is clearly within the range of awards that have been approved for actions challenging deceptive pricing schemes, *see, e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261–65 (C.D. Cal. 2016), appeal dismissed sub nom. *Spann v. J.C. Penney Corp., Inc.*, No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016) (approving award of 27% of the common fund), and that have otherwise been approved by courts in this Circuit and elsewhere.[2]

### C. The Fee Is Reasonable Under the Lodestar Method

Courts use the lodestar method as a "'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353.  When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar is calculated by multiplying the number of hours that counsel expended by a reasonable hourly rate. *Maley*, 186 F. Supp. 2d at 370. "[M]arket rates, where available, are the ideal proxy" for an attorney's compensation.  *Goldberger*, 209 F.3d at 52.  Courts use an attorney's

---

[2] *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding attorneys' fees of 33.33% of $586 million fund in complex securities class action settlement)*;In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2011 WL 2909162, at *6 (E.D.N.Y. July 15, 2011) (awarding attorneys' fees of 25% of $153 million fund); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2012 WL 3138596, at *4 (E.D.N.Y. Aug. 2, 2012) (awarding attorneys' fees of 25% of $198 million fund); *In re Priceline.com. Inc. Sec. Litig.*, No. 00–1884, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (awarding attorneys' fees of 30% of $80 million fund); *In re Converse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG), 2010 WL 2653354, at *6 (E.D.N.Y. June 23, 2010) (awarding attorneys' fees of 25% of $225 million settlement fund); *In re Oxford Health Plans, Inc. Sec. Litig.*, MDL 1222 (CLB), 2003 U.S. Dist. Lexis 26795 (S.D.N.Y. June 12, 2003) (awarding attorneys' fees of 28% of $300 million fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2013 WL 1365900, at *20 (N.D. Cal. Apr. 3, 2013) (awarding attorneys' fees of 28.6% of $1.08 billion fund in antitrust class action settlement); *In re Merck & Co., Inc. Sec., Derivative & "Erisa" Litig.*, MDL No. 1658, ECF No. 896 (D.N.J. June 28, 2016) (awarding attorneys' fees of 20% of $1.06 billion fund in securities class action settlement); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006) (awarding attorneys' fees of 31.33% of $1.06 billion fund in class action settlement of contract dispute); *In re Urethane Antitrust Litig.*, No. 04 Civ. 1616, 2016 WL 4060156, at *6 (D. Kan. July 29, 2016) (awarding 33.33% fee on $835 million settlement); *Dahl v. Bain Capital Partners, LLC*, No. 07 Civ. 12388, ECF No. 1095 (D. Mass. Feb. 2, 2015) (awarding attorneys' fees of 33% of $590.5 million fund in class action settlement); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (awarding attorneys' fees of 30% of $410 million fund);

current rates to calculate the lodestar figure to account for the delayed payment and inflation. *See, e.g.*, *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989).[3]

Class Counsel spent 2,284.5 hours litigating this action, producing a total lodestar amount of $870,801 based on standard hourly rates. *See* Scott Declaration ¶ 5 and Carpenter Declaration ¶5.

No attorneys billed in excess of their standard hourly rates that have been accepted by courts or clients in other cases. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"). Class Counsel's hourly rates are market rates for lawyers of similar quality litigating matters in New York City. *See, e.g.*, *CDS Litig*, 2016 WL 2731524, at *17 (partner rates of $834 to $1,125 and associate rates of $411 to $714, *see* ECF No. 482); *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (S.D.N.Y. Dec. 7, 2017) (partner rates of $875 to $975 and associate rates of $325 to $600, *see* ECF No. 817).

In applying the lodestar, courts generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal-Mart Stores, Inc.* 396 F.3d at 121. A fee award of 25% of the Settlement Fund reflects a multiplier of 1.8, which is within the range of multipliers approved in deceptive pricing actions, *see Spann*, 211 F. Supp. 3d at 1265 (approving a 3.07 multiplier and observing that it was "well within the range for reasonable multipliers"); *Gattinella v. Kors*, No. 14CV5731, 2016 WL 690877, at *2 (S.D.N.Y. Feb. 9, 2016) (approving a 1.94% multiplier and an award representing

---

[3]       *See also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *Colgate-Palmolive*, 36 F. Supp. 3d at 347 (calculating lodestar based on current attorney rates).

20% of the common fund), and within the Second Circuit.  *See Wal-Mart*, 396 F.3d at 123

(upholding multiplier of 3.5 as reasonable and observing that "'multipliers of between 3 and 4.5

have become common'").[4]

### D. The *Goldberger* Factors Further Support the Reasonableness of the Agreed-Upon Fee

Regardless of method used to calculate an appropriate fee award, courts examine the

reasonableness of a fee request under the following Goldberger factors: "'(1) the time and labor

expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement;

and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50. Each of the Goldberger factors

confirms that Class Counsel's fee request is reasonable.

#### 1. Time and Labor Expended by Counsel

The first *Goldberger* factor, the time expended by counsel, weighs in favor of the requested

fee.  Class Counsel spent 2,284.5 hours litigating this action, working to develop the factual and

legal theories sustained in the Court's ruling on ANN's Motion to Dismiss, and worked to

promptly settle this action to the benefit of the Class. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CV

1597, 2004 WL 2750089, at *1. (S.D.N.Y. Dec. 2, 2004)(commending plaintiffs' attorneys for

negotiating early settlement); *Hernandez v. Merrill Lynch & Co.*, No. 11 CV 8472, 2012 WL

5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (courts encourage early settlement of class actions, when

warranted, because early settlement allows class members to recover without unnecessary delay and

allows the judicial system to focus resources elsewhere); *Castagna v. Madison Square Garden, L.P.*,

---

[4] *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (awarding a "modest multiplier" of 4.65, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *CDS Litig.*, 2016 WL 2731524, at *17 (multiplier of over 6); *Colgate-Palmolive*, 36 F. Supp. 3d at 353 (multiplier of 5.2).

No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs'
attorneys for negotiating early settlement).

### 2.   The Magnitude and Complexities of the Litigation

The second *Goldberger* factor, the magnitude and complexity of the litigation, also
supports the fee request.  "[C]lass action have a well deserved reputation as being most complex."
*In re Nadsdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). As alleged
in the First Amended Complaint, ANN is a leading national specialty retailer, ¶17, and the
deceptive pricing practices at issue applied to over 200 ANN Taylor Factory and LOFT Outlet
stores.  "The expense and possible duration of the litigation should be considered in evaluating the
reasonableness of [a] settlement." *Milstein v. Huck*, 600 F.Supp.254,167 (E.D.N.Y. 1984).

### 3.   The Risk of Litigation

The third *Goldberger* factor, the risk of the litigation, is "perhaps the foremost factor to be
considered in determining whether to award an enhancement." Goldberger, 209 F.3d at 54.  This
factor recognizes the risk of non-payment in cases prosecuted on a contingent basis where claims
are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D.
128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs'
Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik,
Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases
brought on contingency basis). "It is well settled that class actions are notoriously complex and
difficult to litigate." *Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8831, 2014 WL 1224666,  *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

Here, Class Counsel faced significant risks in proving both liability and damages. ANN
would most likely have argued that a nationwide or even state wide classes could not be certified.
Plaintiffs would further have to show that individual class members' damages could be computed

11

on a common, formulaic basis. While Class Counsel believe that Plaintiffs and their experts would be able to develop damages models, even if a class were certified, Plaintiffs faced risks of having to prove their claims at summary judgment, trial, and then defend any such victories if challenged in the Second Circuit.

### 4. The Quality of Representation

The fourth *Goldberger* factor, the quality of representation, supports Class Counsel's fee request.  "[T]he quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55; see also *Maley*, 186 F. Supp. 2d at 373 ("'The critical element . . . is the result obtained.'"). The results here reflect the quality of representation as the Settlement immediately makes available $6,100,000 for the Class's benefit in the form of cash and voucher awards and provides for injunctive relief that will specifically enjoin the practices that were the basis for the action.

Class action litigation presents unique challenges, and Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively. In weighing the fourth *Goldberger* factor, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization Litig.,* 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). As demonstrated by the firm biographies previously submitted to this Court, Class' Counsel are among the most experienced and skilled class action attorneys handling consumer litigation attorneys in the country. It was through their experience and efforts that this excellent result was achieved.  (*See* ECF No. 61, Exs. 1 & 2.)  Moreover, ANN is represented by well-regarded counsel at Morgan, Lewis & Bockius LLP.  Class Counsel's ability to secure such substantial benefits for the Class in the face of such formidable opposition reflects on the quality of Class Counsel's representation.

### 5.   The Requested Fee in Relation to the Settlement

The fifth *Goldberger* factor, the relation of the fee to the settlement, supports Class Counsel's fee request and was discussed at length in §C., supra.  Class Counsel's request for a fee award of 25% of the Settlement Fund is not just consistent with approved awards by courts in this District and elsewhere in similar deceptive pricing cases, as discussed *supra* § IV.B, but is all the more reasonable in light of the substantial injunctive relief secured for the Class's benefit. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *17 & n.13 (S.D.N.Y. Sept. 9, 2015) ("The substantial injunctive relief is a major factor in favor of the fee request, even if no specific monetary value is assigned to it.").

### 6.   Public Policy Consideration

The final *Goldberger* factor is public policy. "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools police defendants who engage in misconduct. *See id.* "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).

### V.   <u>APPLICATION FOR INCENTIVE AWARDS</u>

Pursuant to the Settlement, for their time and effort in the Action and for the risks they assumed in prosecuting the action against ANN, Class Counsel requests, and ANN does not oppose, incentive awards of $1,500.00 for each named Class Representative for the risks they assumed in prosecuting the action against ANN. Joint Decl. ¶23. If approved, the incentive awards, totaling $3,000, will reflect approximately 0.05% of the Settlement Fund. *Id*. The incentive awards

13

are consistent with awards in other class action litigation in this Circuit. *See, e.g. Salus v. Tse Group, LLC,* No. 07 Civ. 03142 (S.D.N.Y. April 3, 2008) (approving incentive awards totaling 5.6% of the settlement); *Gatinella v. Kors*, No. 14 Civ. 5731 at *2 (S.D.N.Y. February 9, 2016) (approving incentive awards of 0.1% of the settlement); *Duchene v. Michael Cetta, Inc.*, No. 06-cv-4576, 2009 WL 5841175, at *9 (S.D.N.Y. Sept. 10, 2009) (approving awards of 0.8% of $3,150,000 settlement amount).

The Class Representative provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; (3) responding to formal and informal discovery; (4) participating in conferences with Class Counsel; (5) attending the mediation in New York; and (6) participating in numerous subsequent discussions concerning the settlement negotiations and the terms of the Settlement Agreement. In so doing, Plaintiffs were integral to this Action. Joint. Decl. ¶23. In light of the Plaintiff's efforts resulting in substantial benefits to Settlement Class Members, incentive awards for the Class Representative are appropriate. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *15 (S.D.N.Y. Apr. 16, 2012) (granting incentive awards to named plaintiffs who "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel"); *Sykes v. Harris*, 09 Civ. 8486 (DC), 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016) (incentive awards are appropriate when considering the sacrifice of Plaintiffs' anonymity.) (internal citations omitted); *Berrios v. Sprint Corp.*, 1998 WL 1749828, *3 (S.D.N.Y.1998); *Roberts v. Texaco*, 979 F.Supp. 185, 187—88 (S.D.N.Y.1997).

VI.  **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant their Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Incentive Awards, and (1) award payments of $1,525,000 in attorneys' fees and $18,214.59 in expenses to Class Counsel; and (2) award payments of $1,500 to Class Representatives Siobhan Morrow and Ashley Gennock.

DATED:  February 5, 2018                     Respectfully submitted,


                                             */s/ Gary F. Lynch*
                                             Gary F. Lynch
                                             **CARLSON LYNCH SWEET**
                                             **KILPELA & CARPENTER, LLP**
                                             Edwin J. Kilpela
                                             1133 Penn Avenue, 5th Floor
                                             Pittsburgh, PA 15222
                                             Telephone: (412) 322-9243
                                             Facsimile: (412) 231-0246
                                             ekilpela@carlsonlynch.com
                                             glynch@carlsonlynch.com


                                             **CARLSON LYNCH SWEET**
                                             **KILPELA & CARPENTER, LLP**
                                             Todd D. Carpenter
                                             402 West Broadway, 29th Floor
                                             San Diego, CA 92101
                                             Telephone: (619) 756-6994
                                             Facsimile: (619) 756-6991
                                             tcarpenter@carlsonlynch.com


                                             **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
                                             Joseph P. Guglielmo
                                             The Helmsley Building
                                             230 Park Avenue, 17th Floor
                                             New York, NY 10169
                                             Telephone:  212-223-6444
                                             Facsimile:  212-223-6334

15

jguglielmo@scott-scott.com

- and -

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Erin Green Comite
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:   860-537-4432
ecomite@scott-scott.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

<div style="margin-left:40%">

*/s/ Gary F. Lynch*
Gary F. Lynch
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Edwin J. Kilpela
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com
glynch@carlsonlynch.com

</div>

17