**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated, | Civil Action No. 16-cv-3340(JPO)(SN) |
| Plaintiffs, | |
| v. | |
| ANN INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO OBJECTIONS AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND MOTION FOR AN <u>AWARD OF FEES, EXPENSES, AND INCENTIVE AWARDS</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 2

    A.    The Class's Favorable Reaction to the Settlement Weighs in Favor of Final Approval...........................................................................................2

    B.    Each of the Objections Is Procedurally Defective and Should Not Be Considered..........................................................................................3

        1.    Objectors Sweeney & Morrow Improperly Filed Their Objections After the Court-Ordered Deadline to Object. ....................................3

        2.    Objectors Leach & Sweeney Failed to Comply With the Court-Ordered Requirements to Object. ......................................................4

        3.    Objectors Leach & Sweeney Lack Standing Because They Either Did Not File a Claim or Filed Claims that Establish They Are Not Class Members..........................................................................................6

        4.    Objector Sweeney Is a Serial Objector. ..........................................7

        5.    The Court Should View Objector Morrow's Objection with Suspicion..........................................................................................12

    C.    Even if Considered, the Objections Are Without Merit. ...........................14

        1.    Objector Leach's Objection Demonstrates the Risks of the Class Prevailing. .......................................................................................14

        2.    Objector Morrow's Speculation that the Cash Offered Is Insufficient Is Unsupported..............................................................15

        3.    No Part of Plaintiffs' Fee Request Is Attributable to an Award of Coupons. .........................................................................................16

        4.    Class Counsel's Request for an Award of Fees and Expenses Is Reasonable. ......................................................................................18

        5.    The Ninth Circuit Panel's Decision in *Hyundai* Has No Bearing Here..................................................................................................21

IV.    CONCLUSION............................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002)....................................................................3

*Blessing v. Sirius XM Radio Inc.*,
   507 F. App'x 1 (2d Cir. 2012) .....................................................................17

*Brown v. Hain Celestial Grp., Inc.*,
   No. 3:11-cv-03082-LB, 2016 WL 631880 (C.D. Cal. Feb. 17, 2016).....................9

*In re Cardinal Health, Inc. Sec. Litig.*,
   550 F. Supp. 2d 751 (S.D. Ohio 2008) ...........................................................7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)........................................................................6

*In re Centocor, Inc. Secs. Litig.*,
   No. 92-CV-1071, 1993 WL 189937 (E.D. Pa. June 2, 1993)...............................3, 4

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom.*
   *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) .............................................16

*In re Checking Account Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012)..................................................................22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated by*
   *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................14

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).........................................................................21

*In re Credit Default Swaps Antitrust Litig.*,
   No. 13md476 (DLC), 2014 WL 4379112 (S.D.N.Y. Sept. 4, 2014)......................22

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...........................................................................3

*Dorado v. Bank of Am., N.A.*,
   No. 1:16-cv-21147-UU, 2017 WL 5241042 (S.D. Fla. Mar. 24, 2017) ...............4, 5

*In re Excess Value Ins. Coverage Litig.*,
   598 F. Supp. 2d 380 (S.D.N.Y. 2005)...........................................................20

*Farber v. Crestwood Midstream Partners L.P.*,
  863 F.3d 410 (5th Cir. 2017) ........................................................4

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ....................20

*In re Hyundai & Kia Fuel Econ. Litig.*,
  881 F.3d 679 (9th Cir. 2018) ........................................................21

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000)..........................................................22

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
  No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016)....................17

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............5, 9, 14

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................2

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007)..........................................................19

*Melito v. Am. Eagle Outfitters, Inc.*,
  No. 14-CV-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017)..................6

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................18

*In re Polyurethane Foam Antitrust Litig.*,
  178 F. Supp. 3d 635 (N.D. Ohio 2016).................................................9

*Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) ......................................................3, 4

*Roberts v. Electrolux Home Prods., Inc.*,
  No. SACV12-1644-CAS(VBKx), 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) .................9

*Rougvie v. Ascena Retail Grp., Inc.*,
  No. 15-724, 2016 WL 6069968 (E.D. Pa. Oct. 14, 2016) ......................................9

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed sub nom.*
  *Spann v. J.C. Penney Corp., Inc.*, No. 16-56474, 2016 WL 9778633
  (9th Cir. Nov. 7, 2016)........................................................9, 14, 18

*Stathakos v. Columbia Sportswear Co.*,
    No. 4:15-cv-04543-YGR, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018)................................15

*Sykes v. Mel Harris & Assocs., LLC*,
    No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016).....................................3

*In re: TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
    No. 6:15-MN-2613-BHH, 2018 WL 1003548 (D.S.C. Feb. 22, 2018) .................................22

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
    No. 08-cv-11117, 2015 WL 3540723 (S.D.N.Y. June 5, 2015) .................................................3

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., FDCPA Litig.*,
    No. 2:13-MD-2426-DBH, 2016 WL 543137 (D. Me. Feb. 10, 2016)....................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)..........................................................................................................21

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
    246 F.R.D. 349 (D.D.C. 2007)..............................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................................................3, 15

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010)..............................................12, 13

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .....................................6

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................3

*In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ....................................12

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................................6

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016).................................10

## OTHER AUTHORITIES

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009).................7

Plaintiffs Siobhan Morrow and Ashley Gennock ("Plaintiffs") respectfully submit this Response pursuant to Paragraph 27(v) of the Court's Preliminary Approval Order (ECF No. 62) (as modified by the Court's Order, dated December 21, 2017 (ECF No. 64)), in further support of their Motions for Final Approval (ECF No. 66), and for an Award of Fees, Expenses, and Incentive Awards (ECF No. 73), and in response to the Objections of Ms. Paula Leach (ECF No. 74) ("Leach Obj."), Ms. Pamela Sweeney (ECF No. 75) ("Sweeney Obj."), and Ms. Becky Morrow (ECF No. 76) ("Morrow Obj.") (collectively, the "Objections").  For the reasons stated below, the Court should overrule the Objections and grant Plaintiffs' Motions.

## I.   __INTRODUCTION__[1]

Class Counsel are pleased to report that the Class has provided an overwhelmingly favorable response to the Settlement preliminarily approved by the Court.  Pursuant to the Court's Preliminary Approval Order (ECF No. 62), the Court-appointed Settlement Administrator, Kurtzman Carson Consultants LLC ("KCC"), has executed a robust notice process that conformed to the Notice Plan described in the previously submitted Declaration of Carla Peak (ECF No. 60-4).

KCC has emailed over 5.4 million notices to potential Class Members, mailed over 1 million notices, and re-mailed over 10,000 notices.  (Declaration of Lana Lucchesi re: Notice Procedures (ECF No. 67) ("Lucchesi Decl.") ¶¶ 7-9; Supplemental Declaration of Lana Lucchesi re: Notice Procedures ("Lucchesi Supp. Decl.") ¶ 3.)  The Court-approved Notice included a detailed explanation of the Settlement and the potential awards claimants could elect to receive; informed potential Class Members of their right to object or request exclusion from the

---

[1]    Plaintiffs incorporate by reference the factual background and procedural history set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement (ECF No. 68), and the summaries set forth in the Corrected Memorandum of Law in Support of Plaintiffs Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Incentive Awards. (ECF No. 73.)

Settlement, and how to do so; and informed potential Class Members that Class Counsel intended to request an award of $1,525,000 in attorneys' fees and expenses and incentive awards in the amount of $1,500 to each of the two Class Representatives.  (Lucchesi Decl., Exs. A-B.) The Notice was provided in summary form by email and mail and was included in full, along with the complete Settlement Agreement (ECF No. 60-1) and all relevant Court documents and briefing, on the Settlement website KCC established.  (*See id.* ¶ 11; Lucchesi Supp. Decl. ¶ 5.) KCC also established a toll-free number potential Class Members could call to receive information about the Settlement and to request Notice Packets.  (Lucchesi Decl. ¶ 10.)

As of this week, KCC has received over 769,000 visits to the Settlement website. (Lucchesi Supp. Decl. ¶ 5.)  Over 4,700 potential Class Members have called the toll-free number.  (*Id.* ¶ 4.)  And over 111,500 potential Class Members have submitted claims.  (*Id.* ¶ 7.) More than 65% of claimants have elected to forego a cash award in favor of the vouchers made available by the Settlement.  (*Id.* ¶ 8.)  Based on the claim filings made to date, the Settlement Fund will be able to compensate each Class Member 100% of their claimed amount.  With the March 6, 2018 deadline to object or request exclusion having passed (ECF No. 64), less than 0.001% of the Class has submitted a request for exclusion, (Lucchesi Supp. Decl. ¶ 6 & Ex. A), and only three objectors have lodged objections.  None of the Objections challenge the Notice Plan's adequacy or the Settlement's procedural fairness.

## II.   ARGUMENT

### A.   The Class's Favorable Reaction to the Settlement Weighs in Favor of Final Approval.

The Class's reaction to the Settlement is "perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  After mailing or emailing over 6.4 million notices to potential Class

Members, less than 70 potential Class Members, representing less than 0.001% of the Class, have opted-out of the Settlement.  The Class's reaction accordingly provides powerful evidence that the Settlement is fair, reasonable, and adequate.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (finding that 72 opt-outs received after notice was sent to 27,883 potential class members represented a "small number" that "weighed in favor of the settlement"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'").

**B.      Each of the Objections Is Procedurally Defective and Should Not Be Considered.**

> **1.      Objectors Sweeney & Morrow Improperly Filed Their Objections After the Court-Ordered Deadline to Object.**

Objections that are not filed in a timely fashion are deemed waived.  *Penn. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 23 n.1 (S.D.N.Y. 2016) (rejecting objections that were untimely filed and failed to conform to the requirements set out in the class notice form); *Sykes v. Mel Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *20 (S.D.N.Y. May 24, 2016) (rejecting objections submitted after the court ordered deadline); *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-cv-11117, 2015 WL 3540723, at *7 (S.D.N.Y. June 5, 2015) (striking untimely filed objections); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) ("The Court also finds that the untimely objections are overruled both because they are untimely and because they are without merit."); *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 475 (S.D. Fla. 2002) (objectors "barred from being heard due to their violation of the Court's objection filing deadline"); *In re Centocor, Inc. Secs. Litig.*, No. 92-CV-1071, 1993 WL 189937, at *3 (E.D. Pa. June 2, 1993) (court refused to consider late objections).

Here, the Court should disregard as waived the objections filed by Objectors Sweeney and Morrow.  As provided in the Preliminary Approval Order, any Class Member wishing to object was required to "***file*** a written objection . . . with the Court and mail and serve it upon Class Counsel and Defendant's Counsel[.]"[2]  (ECF No. 62 ¶ 21.)  The Preliminary Approval Order further provides:  "To be considered valid, each Objection must be ***timely*** served, ***filed*** (***as judged by the filing deadline*** and postmark date and time set forth)[.]"  (*Id.*)  The filing deadline to object was March 6, 2018.  (ECF No. 64.)  Neither Objector Sweeney nor Objector Morrow met this Court-imposed deadline.  Objector Sweeney's objection was filed with this Court on March 12, 2018, and Objector Morrow's was filed two days later, on March 14, 2018.  Because these Objectors filed their objections after the Court-ordered deadline, the Court should deem their objections waived.

### 2.   Objectors Leach & Sweeney Failed to Comply With the Court-Ordered Requirements to Object.

Courts routinely strike objections that fail to comply with court orders regarding the required content of the objection.  *Pennsylvania Public*, 318 F.R.D. at 23 n.1 ("This objection was untimely by more than a month and did not conform to the requirements set out in the Notice Form for objecting to the Settlement.  Specifically, it does not contain any dates, prices, or numbers of shares/units of BofA stock to show that the individual is a class member.  This objection is deemed waived."); *Farber v. Crestwood Midstream Partners L.P.*, 863 F.3d 410, 417 (5th Cir. 2017) (rejecting non-party's appeal of lower court's decision that noncompliant objections to class settlement would be deemed waived, affirming that non-party "received specific notice of the objection requirements, yet knowingly failed to comply with those requirements"); *Dorado v. Bank of Am., N.A.*, No. 1:16-cv-21147-UU, 2017 WL 5241042, at *1

---

[2]     Unless otherwise indicated, all emphasis is added and internal citations are omitted.

n.1 (S.D. Fla. Mar. 24, 2017) (rejecting objection that failed to comply with objection requirements: "[t]his Court's Preliminary Approval Order made clear that '[a]n objection will be barred if the requirements set forth herein are not followed'").

Here, the Preliminary Approval Order established procedures that all potential Class Members were to follow in order to object, providing that each objection "must set forth[,]" among other things:

> [D]ocuments sufficient to establish the basis for the objector's standing as a Settlement Class Member, such as a declaration signed by the objector under penalty of perjury with language similar to that included in the Claim Form or receipt(s) reflecting such purchase(s); . . . a statement of the legal grounds on which the Objection is based, including a statement of whether those grounds apply only to the objector, a specific subset of the class, or the entire class; . . . the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the Objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case[.]

(ECF No. 62 ¶ 21.)

Objectors Leach and Sweeney failed to comply with these requirements.  Objector Leach's objection contains no declaration or receipts reflecting what products she purchased or when she purchased them, nor does it contain any legal arguments regarding why any portion of the settlement is deficient.  (*See generally* Leach Obj.)  Instead, her objection seems to be an objection to the theory of the case, in general (*id.*), which is not a proper basis to object.  *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *6 (N.D. Cal. July 11, 2014). Objector Sweeney's objection similarly contains no sworn declaration or receipts reflecting what products she purchased or when she purchased them.  (*See generally* Sweeney Obj.)  Instead, Objector Sweeney states "[u]pon information and belief" that she "believes she is a member of the class."  (*Id.* at 1.)  Objector Sweeney also fails to provide any details about her extensive history of filing meritless objections in class action lawsuits, discussed in more detail *infra*

Section II.B.4.   Accordingly, Objectors Leach and Sweeney's objections should be deemed waived.

### 3. Objectors Leach & Sweeney Lack Standing Because They Either Did Not File a Claim or Filed Claims that Establish They Are Not Class Members.

It is black letter law in the Second Circuit that an objector who is not a member of the class lacks standing to object to any part of a settlement agreement. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action.") (citing 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 13:69 (4th ed.2002)); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 754 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (objectors who were not members of the class "have no standing to object to the settlement"); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, at *14 (S.D.N.Y. Sept. 11, 2017) (dismissing non-party objections to class settlement for lack of standing); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) (Objector "did not file a proof of claim and therefore does not have standing to bring her objections.").

Here, Objector Leach lacks standing to file an objection because she did not file a claim in this matter (Lucchesi Supp. Decl. ¶ 10), and indeed, in her objection, she states that she "will NOT be filing a claim."  (Leach Obj. at 1.)

Objector Sweeney also lacks standing to object to the Settlement because "it does not appear that Ms. Sweeney is a person identified in ANN's business records that were provided to KCC."  (Lucchesi Supp. Decl. ¶ 11.)  Indeed, the Class itself is expressly defined by reference to such criteria.  (Settlement Agreement § 2.28 ("'Settlement Class Member' means all persons **identified in ANN's business records** as of July 25, 2017, who, during the Class Period,

purchased one or more items from ANN's Ann Taylor Factory or LOFT Outlet stores offered at a discount from a regular or original price.").) Objector Sweeney states that she "submitted [her] claim to the Settlement Administrator on February 26, 2018," with the 6-series Claim Number "AXW60053387501." (Sweeney Obj. at 2.) The claim the Settlement Administrator received on or about that date with such a Claim Number was actually submitted in the name of *Patrick* Sweeney, Ms. Sweeney's husband and a known serial objector. (Lucchesi Supp. Decl., Ex. B.) Although Ms. Sweeney submitted a second claim in her own name on March 5, 2018, at 4:24 AM, she received a different 6-series Claim Number than she put in her objection. (*Id.*) Class Members identified in ANN's business records, however, are specifically assigned a 1-series Claim Number. (Lucchesi Supp. Decl. ¶ 9.) Objector Sweeney has provided the Settlement Administrator with no information to demonstrate that she ever made a qualifying purchase of merchandise that would make her a legitimate member of the Settlement Class. Accordingly, because Objector Sweeney lacks standing to object to the Settlement, the Court need not consider Objector Sweeney's objection at all.

### 4. Objector Sweeney Is a Serial Objector.

Serial objectors represent a "tax" on the legal system that has been "decried in numerous court opinions and scholarly commentaries." Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 V AND. L. R EV. 1623, 1625, 1636-39, 1636 nn.58-62 (2009) (collecting cases); *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008) (serial objectors "contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away"). Accordingly, because Objector Sweeney is a serial objector, the Court should view her objection with great skepticism and give little weight to the threadbare arguments she does assert.

Objector Sweeney attempts to hide her extensive history of objecting to class settlements by failing to state, per the requirements to object identified in the Court's Preliminary Approval Order:

> the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the Objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel or the firm's prior such objections that were issued by the trial and appellate courts in each listed case[.]

(ECF No. 62 ¶ 21.)   That omission was almost certainly purposeful because Objector Sweeney has a history of filing meritless objections, including, for example:

- *Larsen v. Trader Joe's Co.*, No. 3:11-cv-05188 (N.D. Cal. June 6, 2014) (ECF No. 99 – Objection of Pamela Sweeney), *overruled* (July 11, 2014) (ECF No. 121 at 11);

- *Kolinek v. Walgreen Co.*, No. 1:13-cv-04806 (N.D. Ill. July 16, 2015) (ECF No. 115 – Objection of Pamela Sweeney), *overruled* (Nov. 23, 2015) (ECF No. 200 at 13-14, 20, 23-26);

- *In re: Capital One Tel. Consumer Prot. Act Litig.*, No. 1:12-cv-10064 (N.D. Ill. Feb. 4, 2015) (ECF No. 327 – Objection of Pamela Sweeney), *overruled* (Feb. 12, 2015) (ECF No. 329);

- *Edwards v. Nat'l Milk Producers Fed'n*, No. 4:11-cv-04766 (N.D. Cal. Nov. 1, 2016) (ECF No. 449 – Objection of Pamela Sweeney), *overruled* (June 26, 2017) (ECF No. 485 at 9);

- *Rougvie v. Ascena Retail Grp., Inc.*, No. 2:15-cv-00724 (E.D. Pa. Apr. 15, 2016) (ECF No. 116 – Objection of Pamela Sweeney), *overruled* (July 29, 2016) (ECF No. 184 at 1);

- *Kumar v. Salov N. Am. Corp.*, No. 4:14-cv-02411 (N.D. Cal. May 1, 2017) (ECF No. 155 – Objection of Pamela Sweeney), *overruled* (July 7, 2017) (ECF No. 173 at 6-7); and

- *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, No. 1:15-cv-05876 (N.D. Ill. Dec. 22, 2016) (ECF No. 87 – Objection of Pamela Sweeney), *overruled* (Jan. 31, 2017) (ECF No. 102 at 4).

That Objector Sweeney's objections are nothing more than a nuisance is demonstrated by her continual failure to pay the filing fees necessary to prosecute her meritless appeals.  *See, e.g.*, *Edwards v. Nat'l Milk Producers Fed'n*, No. 17-16541 (9th Cir. Nov. 2, 2017) (ECF No. 13)

(dismissing Objector Sweeney's objection for failure to "pay the docketing/filing fees" and "failure to prosecute") (Guglielmo Decl., Ex. 11);[3] *Rougvie v. Ascena Retail Grp., Inc.*, No. 15-724, 2016 WL 6069968, at *2 n.6 (E.D. Pa. Oct. 14, 2016) ("The Court of Appeals terminated Pamela Sweeney's Appeal for failing to pay fees.").

Objector Sweeney's husband, Mr. Patrick Sweeney, in whose name the claim referenced in her objection was filed, (Lucchesi Supp. Decl., Ex. B), is a licensed attorney (Guglielmo Decl., Exs. 7 & 9), who also routinely files frivolous objections. Multiple courts have held that Mr. Sweeney is a serial objector. "Indeed, Mr. Sweeney is so prolific in objecting to class action settlements that the court received an objection from him in a completely unrelated case, where the final fairness hearing was held on the same day as the instant case. In both cases, his objections set forth facts unrelated to either case." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016), *appeal dismissed sub nom. Spann v. J.C. Penney Corp., Inc.*, No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *see also, e.g.*, *Larson*, 2014 WL 3404531, at *6-7, 7 n.4 (noting Mr. Sweeney's "long history of representing objectors"); *Roberts v. Electrolux Home Prods., Inc.*, No. SACV12-1644-CAS(VBKx), 2014 WL 4568632, at *12-15 (C.D. Cal. Sept. 11, 2014) (recognizing Mr. Sweeney as a serial objector "who routinely files objections to class settlements"); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 640 (N.D. Ohio 2016) (identifying Mr. Sweeney as a serial objector who engage in "bad faith and vexatious conduct, both in prior cases and in this action, in the pursuit of a payoff"); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *10 (C.D. Cal. Feb. 17, 2016) (identifying Mr. Sweeney as part of a group of "'professional' objectors" and finding that "courts across the country . . . have repeatedly turned aside [his] efforts to upend settlements").

---

[3]     All citations to the "Guglielmo Decl." are references to the Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Response to Objections and in Further Support of Plaintiffs' Motion for Final Approval and Motion for an Award of Fees, Expenses, and Incentive Awards filed concurrently herewith.

Mr. Sweeney has even objected in cases in which he is not a member of the class. *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016) ("During Sweeney's deposition, Sweeney admitted that he did not 'have actual evidence' of his Class Membership, and that he 'guess[ed]' that he was a Class Member." (alteration in original)); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., FDCPA Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *6 n.16 (D. Me. Feb. 10, 2016) (finding that Mr. Sweeney "furnished no basis to conclude that he is even a class member," and ruling that Mr. Sweeney's "listed objections are without merit and appear to be a form document . . . that he has filed in other class action settlements").

Mr. Sweeney's recent involvement in class settlement objections includes:

- *In re: Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal. Oct. 25, 2016) (ECF No. 1983 – Objection of Patrick S. Sweeney), *overruled* (Dec. 19, 2016) (ECF No. 2133 at 18, 21, 23), *appeal dismissed* (May 26, 2017) (ECF No. 2306);

- *Lofton v. Verizon Wireless LLC*, No. 4:13-cv-05665 (N.D. Cal. May 9, 2016) (ECF No. 214 – Objection of Patrick S. Sweeney), *overruled* (May 27, 2016) (ECF No. 217 at 4);

- *In re: Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, No. 13:11-md-02286 (S.D. Cal. Apr. 26, 2016) (ECF No. 344 – Objection of Patrick S. Sweeney), *withdrawn* (Aug. 16, 2016) (ECF No. 380);

- *Eggnatz v. Kashi Co.*, No. 1:12-cv-21678 (S.D. Fla. Dec. 29, 2015) (ECF No. 191 – Response/Objection of Patrick S. Sweeney), *overruled* (Feb. 1, 2016) (ECF No. 196 at 3-4);

- *LaRocque v. TRS Recovery Servs.*, *Inc.*, No. 2:13-md-02426 (D. Me. Dec. 28, 2015) (ECF No. 121 – Objection of Patrick S. Sweeney), *overruled by In re: TRS Recovery Servs., Inc. & Telecheck Servs., Inc., FDCPA Litig.*, No. 2:13-md-02426 (D. Me. Feb. 10, 2016) (ECF No. 135 at 13 n.16); and

- *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196 (N.D. Ohio Nov. 17, 2015 (ECF No. 1968 – Objection of Patrick S. Sweeney), *overruled* (Jan. 27, 2016) (ECF No. 2020 at 16-17).

This would not be the first time that Mr. Sweeney has involved his family members, including his daughter, Kerry Ann Sweeney, in his schemes to file meritless objections. *See,*

*e.g.*, *In re: Checking Account Overdraft Litig.*, No. 1:09-md-02036 (S.D. Fla. Nov. 13, 2013) (ECF No. 3698 – Objection of Pamela Sweeney and Kerry Ann Sweeney), *withdrawn* (Dec. 12, 2013) (ECF No. 3727 – Notice of Withdrawal);  *Legg v. Spirit Airlines, Inc.*, No. 0:14-cv-61978 (S.D. Fla. June 20, 2016) (ECF No. 141 – Objection of Kerry Ann Sweeney), *withdrawn* (July 7, 2016) (ECF No. 144 – Notice of Withdrawal);  *Hendricks v. Starkist Co.*, No. 4:13-cv-00729 (N.D. Cal. Nov. 20, 2015) (ECF No. 299 – Objection of Kerry Ann Sweeney), *overruled* (Sept. 29, 2016) (ECF No. 373 at 11-13, 15); and *Cody v. SoulCycle Inc.*, No. 15-cv-06457 (C.D. Cal. Sept. 14, 2017) (ECF No. 248-3 – Objection of Kerry Ann Sweeney), *overruled* (Oct. 3, 2017) (ECF No. 254 at 11-12), *appeal dismissed* (Feb. 26, 2016) (ECF No. 264).

Mr. Sweeney's unethical conduct is not limited to his use of sham objectors to extract undeserved fees.  Mr. Sweeney is the subject of proceedings initiated by the Wisconsin Office of Lawyer Regulation ("OLR") to revoke his license to practice law for alleged professional misconduct, including: practicing without a license; violation of court orders; conflict-of-interest; and participating in conduct involving dishonesty, fraud, deceit, and/or misrepresentation.  (*See* Guglielmo Decl., Ex. 9.)  The disciplinary proceedings stem primarily from when, in 2016, Mr. Sweeney was indicted and charged with wire fraud, identity theft, and a false declaration in a bankruptcy matter for allegedly stealing hundreds of thousands of dollars from his business partners.  (*Id.*; *see also id.*, Ex. 7.)  In November 2017, Mr. Sweeney was sentenced to five years of federal probation after he pleaded guilty to the bankruptcy charge.  (*Id.*, Ex. 8.)

Of concern, the signature appearing on Objector Sweeney's objection bears a disturbing similarity to the signatures Mr. Sweeney has previously submitted in connection with the filing of meritless objections and his acknowledgment of receiving a criminal summons.  (Guglielmo

Decl., Exs. 1-6.)   In light of the foregoing, the Court should disregard Objector Sweeney's objection.

### 5.   The Court Should View Objector Morrow's Objection with Suspicion.

Objector Morrow states that her personal attorney, George W. Cochran, advised her with respect to her objection, but that she did not retain Mr. Cochran to represent her beyond that advice.   (Morrow Obj. at 1.)   Specifically, Objector Morrow states that because Mr. Cochran has not been retained to represent her further, "there is no need to list his representation in other class settlements."   (*Id.*)   Withholding Mr. Cochran's information appears to be a strategic decision given Mr. Cochran's history and involvement in numerous class action settlement objections, particularly through surrogate objectors such as his family members.   Mr. Cochran has represented objectors apparently related to him in a number of cases, for example:

- *Golloher v. Todd Christopher Int'l, Inc.*, No. 3:12-cv-06002 (N.D. Cal. Feb. 7, 2014) (ECF No. 73 – Objection of Jennifer L. Cochran), *overruled* (Apr. 25, 2014) (ECF No. 79 at 3);
- *In re: Aetna UCR Litig.*, No. 2:07-cv-03541 (D.N.J. Feb. 25, 2014) (ECF No. 944 – Objection of Jeffery D. Cochran);
- *Volz v. The Coca Cola Co.*, No. 1:10-cv-00879 (S.D. Ohio Nov. 3, 2014) (ECF No. 57 – Objections of Bradley L. Henry and Wanda J. Cochran), *overruled* (Mar. 30, 2014) (ECF No. 70 at 4); and
- *In re: Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal. Oct. 27, 2016) (ECF No. 1986 – Objection of Barbara S. Cochran), *overruled* (Dec. 19, 2016) (ECF No. 2133 at 18, 24).

Mr. Cochran's family members have been recognized by multiple courts as serial objectors.   For instance, in the case *In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, the court discussed an objection of Barbara Cochran and stated "[t]here is also evidence that Cochran is a serial objector."   No. 1:08-WP-65000, 2016 WL 5338012, at *12 n.7 (N.D. Ohio Sept. 23, 2016).   In another case, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, the court described objector Edward Cochran, who is also an attorney, as a serial objector with "a

documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class" in exchange for dismissing the appeal. MDL No. 1735, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010).

Mr. Cochran's representation of other objectors spans a variety of cases across the country as well, for example:

- *Pappas v. Naked Juice Co. of Glendora, Inc.*, No. 2:11-cv-08276 (C.D. Cal. Nov. 11, 2013) (ECF No. 157 – Objection of Bradley Lewis Henry and Sarah Marie Henry), *overruled* (Jan. 2, 2014) (ECF No. 184 at 11), *appeal dismissed*, No. 14-55341 (9th Cir. Apr. 22, 2014) (ECF No. 8);

- *In re: Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323 (E.D. Pa. Oct. 16, 2014) (ECF No. 6248 – Objection of Curtis L. Anderson), *overruled* (Apr. 22, 2015) (ECF No. 6509), *aff'd* (June 9, 2016) (ECF No. 6840);

- *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. Apr. 18, 2012) (ECF No. 5497 – Objections of Geri Maxwell, Maria Marshall, Wayne Marshall, and Gerri Marshall), *overruled by State of New York v. AU Optronics Corp.*, No. 3:11-cv-00711 (N.D. Cal. July 11, 2012) (ECF No. 179 at 5); and

- *Rougvie v. Ascena Retail Grp., Inc.*, No. 2:15-cv-00724 (E.D. Pa. Apr. 29, 2016) (ECF No. 135-2 at 55-57 – Objections of Vicki Mager and Melissa Schultz), *overruled* (July 29, 2015) (ECF No. 184), *appeal dismissed by Mehigan v. Ascena Retail Grp., Inc.*, No. 16-03516 (3d Cir. Apr. 27, 2017).

This also is not the first time that Mr. Cochran has claimed to "advise" and not represent an objector.  (*See, e.g.*, Guglielmo Decl., Ex. 10.)  The involvement of a professional objector like Mr. Cochran in this objection, and his attempts to disassociate himself so as to avoid procedural requirements and safeguards, should raise a red flag as to the legitimacy of Objector Morrow's objection.  Therefore, the Court should carefully consider the validity and legitimacy of Objector Morrow's objection.

### C.      Even if Considered, the Objections Are Without Merit.

Although the Court need not reach the merits of the Objections, should it consider them, the arguments the Objectors advance only demonstrate that the factors identified in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), are satisfied.  Accordingly, the Court should overrule the Objections and grant Plaintiffs' Motions for Final Approval and for an Award of Fees, Expenses, and Incentive Awards.

#### 1.      Objector Leach's Objection Demonstrates the Risks of the Class Prevailing.

Objector Leach questions why a settlement was reached and challenges the merits of the action, rather than the Settlement's fundamental fairness.  Courts do not hesitate to overrule such objections as irrelevant because they are essentially objections on behalf of the defendant, "and the court 'is a fiduciary to absent class members, not [d]efendant.'"  *Spann*, 211 F. Supp. 3d at 1258; *Larsen*, 2014 WL 3404531, at *6 ("My duty is to determine whether the settlement is fundamentally fair to the class, not to reexamine the underlying merits of the litigation."); *compare also Spann*, 211 F. Supp. 3d at 1258 (overruling objections that the plaintiff "'has no sense of her own'" and urging the court to "'throw this case out'") *with* Leach Obj. at 1 (suggesting, of ANN's deceptive pricing scheme, that Plaintiffs "should be smart enough to figure that out[,]" and urging the Court to "throw [this case] out").

If anything, Objector Leach's comments confirm that three of the *Grinnell* factors are satisfied:  (1) "the risks of establishing liability"; (2) "the risks of establishing damages"; and (3) "the risks of maintaining the class action through the trial[.]"  *Grinnell*, 495 F.2d at 463; *see also Wal-Mart Stores, Inc.*, 396 F.3d at 118-19 (considering all three factors together as the risks of the class prevailing).

14

Objector Leach's comments demonstrate that establishing liability and damages is far from certain. *Compare* Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 60 at 12) ("[I]n similar outlet litigation elsewhere, defendants have argued that the comparative discount pricing language contained on the price tags at issue would not lead a reasonable consumer to believe that the product in question was previously sold at a higher price.") *with* Leach Obj. at 1 ("All outlet stores mark things high and then show a discount to make you think you're getting a great deal. Anyone who shops at outlet stores knows that there are not really any great deals to be found. Or they should be smart enough to figure that out."); *see also Stathakos v. Columbia Sportswear Co.*, No. 4:15-cv-04543-YGR, 2018 WL 582564, at *5 (N.D. Cal. Jan. 25, 2018) ("[A]ny time that liability hinges on reasonableness, a favorable verdict cannot be certain.") (approving settlement challenging deceptive outlet labeling practices).

Rather than subject the Class to the potential risk of being unable to establish liability or damages, the Settlement provides Class Members with an immediate benefit encompassing both substantial injunctive relief and a monetary award. Thus, the Court should overrule Objector Leach's objection.

### 2. Objector Morrow's Speculation that the Cash Offered Is Insufficient Is Unsupported.

Objector Morrow speculates that the cash allocated to the Settlement is "inadequate to provide a reasonable pro-rata apportionment among class members." (Morrow Obj. at 1.) The claims data and Settlement Agreement establishes otherwise. The Settlement Agreement allocates $500,000 to pay Class Members who elect to receive a cash award. (Settlement Agreement §§ 2.4 & 4.1(a).) With the cash awards presumptively valued at $5.00, the Settlement Agreement can fund awards to 100,000 Class Members electing to receive a cash

award before being subject to downward pro rata adjustment.  (*Id.* § 4.4(a)(i).)  Even if that were to pass, the Settlement Agreement provides that if not all vouchers have been distributed, then Class Members electing to receive a cash award "shall receive both their pro rata share of the cash award *and also* a Voucher."  (*Id.* § 4.5(c).)

Of the more than 111,500 claims submitted to date, only 34% of claimants have elected to receive a cash award.  (Lucchesi Supp. Decl. ¶ 8.)  Such Class Members may actually receive a pro rata *increase* to the amount awarded.  (*See* Settlement Agreement § 4.5(b)(i)-(ii) (If funds remain after accounting for notice and administration costs, the remaining funds will be used to "increase eligible Settlement Class Members' claimed relief for cash on a pro rata basis").

Given these provisions, Objector Morrow's objection is without merit and should be overruled.  *See also Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 202 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ("[A]ny Class Member who believed that the Settlement did not secure substantial benefits was free to opt out.").

### 3. No Part of Plaintiffs' Fee Request Is Attributable to an Award of Coupons.

Objectors Sweeney and Morrow both concede that the vouchers provide in excess of $2 million of value to the Class.  (Sweeney Obj. at 5; Morrow Obj. at 1.)  Both contend, however, that the vouchers are "coupons" subject to the Class Action Fairness Act ("CAFA").  (Sweeney Obj. at 5; Morrow Obj. at 1.)  Objector Morrow asks the Court to hold Plaintiffs' fee request in abeyance until the vouchers' value can be determined (Morrow Obj. at 1), while Objector Sweeney asks the Court to grant Plaintiffs' fee request in the amount of $627,500.  (Sweeney Obj. at 5.)  Even if the vouchers were determined to be coupons, which, as explained below, they are not, both objections should be overruled because no part of Plaintiffs' fee application is "attributable" to an award of coupons.

The parties here "negotiated and reached agreement regarding attorneys' fees and costs *only after* reaching agreement on all other material terms of this Settlement." (ECF No. 61 ¶ 24; *see also* Letter from Joseph P. Guglielmo to the Hon. J. Paul Oetken, dated May 26, 2017 (ECF No. 51) ("[T]he parties negotiated the relief to be afforded to the class first with an understanding that attorneys' fees would be negotiated separately.").)  The parties have also specifically stated that any award of attorneys' fees and expenses "shall be paid separate and apart from ANN's contributions to the Settlement Fund." (Settlement Agreement § 8.1; *see also id.* § 4.1(d).)

The Second Circuit has squarely held that where, as here, "the attorneys' fees were negotiated only after the terms of the settlement were reached, and the fee award comes directly from [defendant], rather than from funds (or coupons) earmarked for the class[,] . . . no 'portion of the attorney's fee award is attributable to the award of the coupons.'" *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4-5 (2d Cir. 2012) (quoting 28 U.S.C. § 1712(a)).  Indeed, when a fee award is paid separately from any funds earmarked for the class, "'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.'" *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016).

Although Objectors Sweeney and Morrow invoke CAFA solely for the purpose of cabining Plaintiffs' fee request, the vouchers provided by the Settlement are not, in any event, "coupons" under CAFA.  Courts consider several factors to identify coupons, including whether the offering can be aggregated or transferred; whether it can be used to purchase a range of items; and whether it expires. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-51 (9th Cir. 2015).  None of these factors present a concern here.  The vouchers provided by

the Settlement can be aggregated (Settlement Agreement § 2.34(c) ("Up to two (2) Vouchers may be combined or stacked to purchase Merchandise in a single transaction")); transferred (*id.* § 2.34(b) ("Vouchers are fully transferrable")); can be used to purchase a range of items (*id.* §§ 2.34 (vouchers "may be redeemed for Merchandise") & 2.18 ("'Merchandise' means any item sold at ANN's Ann Taylor Factory or LOFT Outlet stores.")); and last for one year after they are distributed.  (*Id.* § 2.34(d).)  Unlike the coupons CAFA targets, Class Members "need not spend any cash to use a Voucher for Merchandise" (*id.* § 2.34(a)) and "no minimum or maximum purchase amount is required to use Vouchers."  (*Id.* § 2.34(h).)  Finally, the Settlement does not fall within CAFA's ambit, "since class members have the option of selecting either a cash payment or a store credit[.]"  *Spann*, 211 F. Supp. 3d at 1262 n.14.

The Class's response to the Settlement's voucher component is strong evidence that the vouchers provide substantial value.  Given the choice of receiving cash or vouchers (Settlement Agreement § 4.4(a)), over 65% of claimants, to date, have elected to receive a voucher award. (Lucchesi Supp. Decl. ¶ 8.)[4]

Accordingly, because the vouchers do not constitute coupons pursuant to CAFA, and no part of Plaintiffs' fee request is attributable to an award of coupons, the Court should overrule Objector Sweeney and Morrow's objections.

> **4.      Class Counsel's Request for an Award of Fees and Expenses Is Reasonable.**

Objector Sweeney argues that Class Counsel's fee request is excessive because the amount requested is three times more than the cash awards made available to Class Members and

---

[4]      Objector Sweeney suggests that Plaintiffs should have "***overwhelmed***" the Court with material speaking to the vouchers' value. (Sweeney Obj. at 5).  While the Class's embrace of the vouchers stands by itself as substantial evidence that the vouchers have substantial value, Class Counsel conducted confirmatory discovery into the prices of merchandise and confirmed that ANN offered numerous items for sale that could be purchased using one voucher.  (Guglielmo Decl. ¶ 3.)  This demonstrates that the vouchers have real value and can be used by Class Members to purchase a wide range of merchandise.

is purportedly based on an estimate of the vouchers' value.[5]   (Sweeney Obj. at 3.)   Objector Morrow similarly posits that Class Counsel's fee request is excessive because she "believe[s] actual claims will be closer to $2 million[.]"   (Morrow Obj. at 1.)   Such arguments, however, are in tension with applicable Second Circuit law.

Objectors Sweeney and Morrow ask the Court to weigh Class Counsel's fee application by reference to the number of vouchers redeemed, an approach the Second Circuit expressly rejected in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).   *Masters* involved antitrust claims asserted by models against their agencies alleging a conspiracy to fix commissions.   *Id.* at 425.   In evaluating counsel's fee request, the District Court "'conclude[d] that a fair and appropriate fee'" would be "'40% of the [claims made against the Settlement Fund].'"   *Id.* at 432 (alteration in original).   The Second Circuit held that doing so "was error." *Id.* at 437.   For purposes of evaluating a fee request, the Second Circuit explained that the "entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."   *Id.* ("An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").

Objectors Sweeney and Morrow both agree that a fee request of 25% is fair and reasonable (Sweeney Obj. at 5; Morrow Obj. at 1), without recognizing that Class Counsel's fee request amounts to 25%, if not less, of the Settlement Fund.   In calculating the total funds made available to the Class, the Court should also consider the sums allocated towards the payment of attorneys' fees and expenses, which are also a benefit made available to the Class.   *See Fleisher*

---

[5]   Objector Sweeney's arguments are premised, in part, on the mistaken belief that Class Counsel submitted a "fee request of $1.575 million."   (Sweeney Obj. at 4.)   Pursuant to the terms of the Settlement Agreement, Class Counsel submitted an application for an award of "$1,525,000 in attorneys' fees and expenses."   (ECF No. 73 at 1.) Objector Sweeney also speculates without any basis that vouchers may be redeemed at their full face value. (Sweeney Obj. at 4).   Nothing in the record supports such a concern, and as discussed *supra* Section II.C.3, the vouchers have a number of features designed to support their full use.

*v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *16, 16 n.10 (S.D.N.Y. Sept. 9, 2015); *see also* MANUAL FOR COMPLEX LITIGATION (4TH) § 21.7 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses[,] . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class[.]").  Including attorneys' fees and expenses as a benefit to the Class, Class Counsel are requesting an award of fees and expenses that amounts to only 20% of the Settlement Fund.

Moreover, in determining the appropriateness of an award by reference to the percent of the fund, the Court should consider the value of the injunctive relief secured.  *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 388 (S.D.N.Y. 2005) ("Rather than attempt to assign a specific dollar value to the Structural Changes, the Court is acknowledging that they do benefit the Class by awarding legal fees at the upper end (30%) of the Settlement Value commonly awarded under the percentage method[.]").  Neither Objector Sweeney nor Objector Morrow mentions the substantial injunctive relief the Settlement makes available to the Class.  "As a direct result of this Action, ANN agrees that its pricing and labeling practices as of the date of this Settlement Agreement, and continuing forward, will not violate federal or state law." (Settlement Agreement § 4.6(a).)  This includes a specific commitment to accurately "label new Merchandise as being from Ann Taylor Factory or LOFT Outlet stores[,]" the challenged practice at the heart of this litigation.  (*Id.* § 4.6(b).)

Finally, Objector Morrow states that she does not believe that Class Counsel's efforts justify a multiplier of 1.7.  (Morrow Obj. at 1.)  Objector Morrow does not specify what about Class Counsel's performance she believes is lacking, but as discussed in Class Counsel's Memorandum in Support of its Motion for an Award of Fees, Expenses, and Incentive Awards,

the requested multiplier is well within the range of multipliers applied in the Second Circuit and in similar cases.  (ECF No. 73 at 9-10, 10 n.4.)

Accordingly, the Court should overrule Objector Sweeney and Morrow's objections to Class Counsel's request for an award of fees and expenses.

### 5.    The Ninth Circuit Panel's Decision in *Hyundai* Has No Bearing Here.

Objector Morrow claims that the Ninth Circuit's panel decision in *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018), prevents certification of a nationwide class "because the damages standards vary among the states' consumer protection statutes." (Morrow Obj. at 1.)  Notwithstanding Objector Morrow's misstatement of *Hyundai*'s holding, which, at most, calls for a choice of law analysis, 881 F.3d at 701-03, *Hyundai* has no bearing on this Settlement.

As a panel decision of the Ninth Circuit that is the subject of a pending motion for rehearing *en banc*, *Hyundai* is hardly persuasive, given its tension with well-established Supreme Court and Second Circuit precedent.   "The predominance inquiry 'asks [only] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Common issues are those "where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  *Id.* (alteration in original).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate,'" predominance is satisfied "'even though other important matters will have to be tried separately, such as damages.'"  *Id.*; *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (predominance requirement ensures that class litigation will "'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated'").

Although Objector Morrow refers to unspecified state consumer protection statutes, Plaintiffs assert only one claim on behalf of the Nationwide Class:  unjust enrichment.  (FAC ¶ 132.)   There is no question that common questions predominate as to Plaintiffs' unjust enrichment claim because "[t]he elements of unjust enrichment are similar in every state."  *In re Credit Default Swaps Antitrust Litig.*, No. 13md476 (DLC), 2014 WL 4379112, at *18 (S.D.N.Y. Sept. 4, 2014) (citing Daniel R. Karon, *Undoing the Otherwise Perfect Crime – Applying Unjust Enrichment to Consumer Price-Fixing Claims*, 108 W. VA. L. REV. 395, 410 (2005) ("[S]ince all states' common laws grew from shared historical roots (including universally accepted fairness concerns), it isn't surprising that all states' unjust-enrichment laws contain virtually identical elements.")).

To establish unjust enrichment, a plaintiff need only show that "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).   Accordingly, unjust enrichment claims "may involve predominant common questions insofar as they all require a showing that Defendants were unjustly enriched at the expense of the Class Members."  *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 359 (D.D.C. 2007); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657-59 (S.D. Fla. 2012).

Because Plaintiffs' claims "relate to uniform corporate policies and practices," *In re: TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. 6:15-MN-2613-BHH, 2018 WL 1003548, at *19 (D.S.C. Feb. 22, 2018), including whether ANN used false regular or original price labels and falsely advertised price discounts; whether the regular or original prices ANN advertised were the prevailing prices; and whether ANN falsely represented that products sold at its outlet

stores were equivalent to or once were sold at ANN's retail stores (FAC ¶ 89), the predominance requirement is satisfied.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court overrule the Objections and grant Plaintiffs' Motions for Final Approval and for an Award of Fees, Expenses, and Incentive Awards.

DATED:  March 29, 2018                          Respectfully submitted,
                                                                 **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                                                  _/s/ Joseph P. Guglielmo_
                                                                 Joseph P. Guglielmo
                                                                 Carey Alexander
                                                                 The Helmsley Building
                                                                 230 Park Avenue, 17th Floor
                                                                 New York, NY 10169
                                                                 Telephone:  212-223-6444
                                                                 Facsimile:  212-223-6334
                                                                 jguglielmo@scott-scott.com
                                                                 calexander@scott-scott.com

                                                                 Erin Green Comite
                                                                 **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                                                 156 South Main Street
                                                                 P.O. Box 192
                                                                 Colchester, CT 06415
                                                                 Telephone:  860-537-5537
                                                                 Facsimile:   860-537-4432
                                                                 ecomite@scott-scott.com

                                                                 Gary F. Lynch
                                                                 Edwin J. Kilpela
                                                                 **CARLSON LYNCH SWEET**
                                                                 **KILPELA & CARPENTER, LLP**
                                                                 1133 Penn Avenue, 5th Floor
                                                                 Pittsburgh, PA 15222
                                                                 Telephone:  412-322-9243
                                                                 Facsimile:   412-231-0246
                                                                 ekilpela@carlsonlynch.com
                                                                 glynch@carlsonlynch.com

- and -

Todd D. Carpenter
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  619-756-6994
Facsimile:   619-756-6991
tcarpenter@carlsonlynch.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
