UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIOBHAN MORROW and ASHLEY GENNOCK, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ANN INC., a Delaware Corporation,<br><br>　　　　　　Defendants. | Civil Action No. 16-cv-3340 (JPO)(SN) |

**DEFENDANT'S OMNIBUS RESPONSE TO
OBJECTIONS TO SETTLEMENT APPROVAL**

Defendant ANN INC. ("ANN") hereby responds to objections to the proposed settlement of this class action.[1] None of the objections provide a valid ground to withhold approval of the Settlement, but in fact actually highlight the Settlement's fairness and the value to the Class. As more fully set forth below, and contrary to what some objections contend: (1) the vouchers offered through the Settlement are not "coupons"; (2) the vouchers provide value to Class Members and are an appropriate form of relief given the nature of the Class's allegations; (3) the Settlement provides significant value to the Class against the very real risks to the Class that the Court would dismiss this action or decline to grant class certification for a variety of reasons, including a failure to establish injury in light of recent decisions in similar pricing class actions; and (4) the attorneys' fees involved and the process by which they were negotiated are no reason

---

[1] The Court's Order of December 14, 2017 granted preliminary approval of the Settlement. Dkt. No. 62. On December 21, 2017, the Court provided that ANN may file a response to timely filed objections no later than March 29, 2018. Dkt. No. 64.

1

to void the entire Settlement.  For these reasons, ANN respectfully submits that the objections should be overruled and the Settlement should be approved.

## I. THE VOUCHERS PROVIDED TO THE CLASS AS PART OF THE SETTLEMENT HAVE SIGNIFICANT VALUE

Pamela Sweeney and Becky Morrow (no apparent relation to Plaintiff Siobhan Morrow) disparagingly label the Settlement a "coupon settlement" and argue that the vouchers do not offer real value.  The Court should reject these objections because they rely on inapplicable generalizations and fail to properly account for the facts underlying this Settlement.   Objection of Pamela Sweeney, Dkt. No. 75 (Mar. 12, 2018) ("Sweeney Objection") at 3-4; Objection of Becky Morrow, Dkt. No. 76 (Mar. 2, 2018) ("Morrow Objection") at 1.  A proper analysis shows that the terms of the Settlement—including the distribution of vouchers to those claimants who elected to receive them—are fair, reasonable and adequate.

Objectors' position that the vouchers here are "coupons" and that this is a "coupon settlement" glosses over basic facts about this particular Settlement.  The Settlement Agreement allows class members to choose between receiving a $5.00 cash reward or a $12.00 voucher.  Settlement Agreement, § 4.4, Dkt. No. 60-1.  The Settlement Agreement finances this relief through a $6.1 million Settlement Fund, consisting of a $5.1 million Voucher Fund, a $500,000 Cash Fund, and a $500,000 Notice Fund.  *Id.* §§ 2.4, 2.19, 2.29, 2.35, 4.1.  The Settlement Agreement is structured so that the entirety of the Settlement Fund is distributed to Class Members, and it seeks to deliver to Class Members the relief of their choosing.  *See id.* § 4.5. Here are some of the finer points that help the Settlement Agreement accommodate the Class's desires:

- Should the Class claim less than $500,000 in cash, remaining funds will increase each Class Member's claimed relief for cash on a pro rata basis, provided that any

costs that exceed the value of the $500,000 Notice Fund have been satisfied. *Id.* §§ 4.5(b)(i), (ii).

- Should the Class claim less than 425,000 Vouchers as a whole, and should the Class seek more than $500,000 in cash, thereby causing a pro rata reduction of cash payouts, each Settlement Class Member electing to receive cash will receive their pro rata share of the cash award *and* a Voucher. *Id.* § 4.5(c).

- Should the Class claim less than 425,000 Vouchers as a whole, an additional Voucher will be issued to each class member who submitted a valid claim for a Voucher in the order that those claims were received, on a first-come, first-served basis until 425,000 Vouchers have been distributed. *Id.* § 4.5(b)(iii).

First, and importantly, Class Members have the option to choose cash—rather than a voucher—and, thus, the Settlement cannot be construed as a "coupon settlement." As illustrated *supra*, to the extent that a Class Member harbored any objection to receiving a voucher, or simply preferred to receive cash, the Class Member was entitled to elect to receive his or her distribution in cash. *See Foos v. Ann, Inc.*, No. 11CV2794 L MDD, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013) ("Similarly, having a coupon *option* does not necessarily transform a class action settlement into a coupon settlement under CAFA.") (emphasis in original). In fact, as of the date of this filing, over 65% of the Class Members who have submitted claims elected a voucher over cash. Declaration of Lana Lucchesi, Mar. 29, 2018, attached as Exhibit A ("Lucchesi March Declaration"). This demonstrates that Class Members find real value in the vouchers.

Second, unlike a coupon, the vouchers provide real value to Class Members without the necessity of a purchase over and above the amount of the voucher. Class Members do not need to make a minimum purchase, nor do they need to spend any additional money, as there are items for sale at both Ann Taylor Factory Stores and LOFT Outlet Stores that cost $12 or less. *See* Settlement Agreement, § 2.34(a) ("a Settlement Class Member need not spend any cash to use a Voucher for Merchandise"); § 2.34(h) ("no minimum or maximum purchase amount is

3

required to use Vouchers"). Courts have recognized this difference. *See, e.g.*, *Blessing v. Sirius XM Radio Inc.*, No. 09 CV 10035, 2011 WL 3739024, at * 2 (S.D.N.Y. Aug. 24, 2011), *aff'd*, 507 F. App'x 1 (2d Cir. 2012) ("Many objectors argued that their award is similar to a disfavored 'coupon' settlement. Unlike coupon settlements, however, it does not require class members to purchase something they might not otherwise purchase to enjoy its benefits[.])". Unlike a traditional "coupon," which constitutes a mere reduction in price, the vouchers at issue in this Settlement provide consumers with full dollar value towards merchandise, essentially allowing Class Members to obtain merchandise for free. In addition, the vouchers are stackable up to two vouchers for a total of $24. In some circumstances, Class Members may receive multiple vouchers, or friends and family members may transfer their vouchers to one another. This would provide even more value and a greater selection of items that can be purchased without having to pay additional money out of pocket.

Third, the use of vouchers is particularly appropriate in this case. The allegations of the case are premised on the notion that the Class Members did not receive the benefit of an advertised discount. The vouchers provide exactly what the case claims the Class Members did not receive – the benefit of a discount. It is therefore an appropriate form of relief.

In sum, the objectors' contention that the vouchers in this Settlement do not have real value to the Class is meritless, and the Court should reject it.

## II. THE OVERALL VALUE TO THE CLASS IS FAIR, ADEQUATE AND REASONABLE

Objector Morrow takes issue with the overall value of the Settlement, contending that the Cash Fund is "inadequate" and the "coupon portion" of the Settlement is "overvalued." Morrow Objection at 1.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable and adequate." Fed R. Civ. P. 23(e). Objector Morrow's challenge centers on substantive fairness, which courts determine by examining whether the settlement's terms are fair, adequate and reasonable according to factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000). *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016). The *Grinnell* factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

The *Grinnell* factors weigh in favor of approval, and Objector Morrow's contention does nothing to undermine that conclusion. First, litigation through trial would be complex, expensive and long. Second, the Class's reaction to the Settlement was positive. Roughly six weeks after e-mail notice was sent to 5,490,436 valid e-mail addresses on the Class Member List, and postcard notice was sent to 1,095,492 persons for whom an e-mail address was not available or could not be located, only *three* individuals lodged objections to the Settlement. Declaration of Lana Lucchesi RE: Notice Procedures, Dkt. No. 67 (Feb. 5, 2018) ("Lucchesi February Declaration") at ¶¶ 7-8; *see generally* Objection of Pamela Leach, Dkt. No. 74 (Feb. 14, 2018) ("Leach Objection"); Sweeney Objection; Morrow Objection. As of the date of Ms. Lucchesi's February Declaration, only one person had requested exclusion. Lucchesi February Declaration ¶ 12. This favorable response demonstrates that the class approves of the settlement, further

supporting final approval. *See Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 2,025 class members objected and two requested exclusion); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) (granting final approval where no class members objected, but 28 out of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members").

Third, as noted in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, the parties had engaged in sufficient discovery "in which the merits of the case were examined by both sides in detail" to gain an appreciation of the critical details of the case. Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, Dkt. No. 60 (Dec. 12, 2017) at 11-12.

The fourth, fifth and sixth factors marshal in favor of final approval as well. Evaluating the risks of establishing liability, damages, and of maintaining the class through trial requires that courts "consider legal theories and factual situations" without "decid[ing] the merits of the case or resolve unsettled legal questions." *In re AOL Time Warner, Inc.*, No. MDL 1500, 02-cv-5575, 2006 WL 903236, at *11 (S.D.N.Y. 2006) (internal citations and quotations omitted). "Rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (internal citations and quotations omitted).

A recent spate of cases highlights the significant risk that Class Counsel would have had to navigate to establish liability and damages, and to maintain the class action through trial. In the summer of 2017, the First Circuit held that a plaintiff's subjective belief that she did not receive good value, without more, was insufficient to make out a claim arising under

Massachusetts Consumer Protection Act. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 6 (1st Cir. 2017). Roughly a month after the First Circuit's decision in *Shaulis*, the California Court of Appeal held that California's Unfair Competition Law—the same statute at issue in this case—is not violated where a factory store uses a brand name on its clothing labels, as those labels are "not likely to deceive a reasonable consumer" and that reasonable consumers should be expected to "inspect the quality of factory store clothing items before buying them[.]" *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (Ct. App. 2017), *review denied* (Nov. 29, 2017). Had this case proceeded to class certification, summary judgment, or even to trial, these rulings could have hindered plaintiffs' ability to establish harm. As a result, the Class faced considerable risks regarding the establishment of liability.

Furthermore, the Northern District of California's decision in *Stathakos v. Columbia Sportswear Co.* made the task of establishing damages even more arduous. No. 15-cv-04543, 2017 WL 1957063, at *11-13 (N.D. Cal. May 11, 2017). In *Stathakos*, the Court granted summary judgment in favor of Columbia Sportswear Company, rejecting three of plaintiff's proposals by which to calculate damages for a purported violation of California's UCL. *Id.*; *see also Jacobo v. Ross Stores, Inc.*, No. CV-15-04701, 2017 WL 3382053, at *6 (C.D. Cal. Aug. 2, 2017) (noting that the standard of proof at summary judgment is more exacting than at the motion to dismiss stage, and finding that plaintiffs could not meet their burden of proof to provide "some evidence from which a jury could conclude that the merchandise Plaintiffs actually purchased was not worth as much as Ross claimed it was."), *appeal dismissed*, No. 17-56241, 2017 WL 7689609 (9th Cir. Dec. 4, 2017).

In fact, the objectors make the very point that this case faces real challenges on the merits. For example, Objector Paula Leach offered a common-sense challenge to the notion that

7

class members could establish injury given the reality that shoppers understand the value of the products that they buy in an outlet store. Leach Objection at 1. As the value of the merchandise matches shoppers' expectations, there can be no legitimate claim that outlet shoppers suffered harm.

Just as there are considerable risks of establishing liability and damages, the risks associated with obtaining and maintaining class certification through trial also weigh in favor of final approval. Maintaining a class action through trial requires, *inter alia*, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In her objection, Becky Morrow actually points out that there are considerable risks attendant to maintaining class certification for an action based on varying state laws, citing to the Ninth Circuit's decision in *In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679 (9th Cir. 2018) ("*In re Hyundai*").[2] For plaintiffs to carry their burden at the class certification stage, they must demonstrate through evidentiary proof that

---

[2] Ultimately, Objector Morrow's conclusion that *In re Hyundai* categorically prevents the certification of a national class is too broad. Morrow Objection at 1. In *In re Hyundai*, the Ninth Circuit reversed the District Court's certification order, finding that the District Court committed error by failing to consider California's choice-of-law rules:

> Because "variations in state law may swamp any common issues and defeat predominance," a court must analyze whether "the consumer-protection laws of the affected States vary in material ways," even if the court ultimately determines that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues[.]"

*In re Hyundai*, 881 F.3d at 702 (internal citations omitted).

This decision does not stand for the proposition that varying damages standards from state-to-state precludes the potential for a nationwide settlement; rather, it simply offers a reminder that the Ninth Circuit requires a District Court to undertake a choice of law analysis when evaluating the prospect of class certification. *Id.*

"the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate." *Id.* at 692. That burden must be recognized as imposing considerable risk, thereby tipping this *Grinnell* factor in favor of final approval.

Even if ANN could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Corp.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted). As such, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

The eighth and ninth *Grinnell* factors also tilt in favor of granting approval. Determining the range of reasonableness does not involve the use of a "mathematical equation yielding a particularized sum." *Id.*, *citing In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000). Rather, the range of reasonableness recognizes uncertainties of law and fact along with the risks and costs inherent in proceeding with litigation. *Frank*, 228 F.R.D. at 186; *see In re Merrill Lynch Tyco Research Sec. Litig*, 249 F.R.D. 124, 134-35 (S.D.N.Y. 2008) (finding that the reasonableness of the settlement militates in favor of approval where the settlement fund totaled $4.9 million, balancing the positive reaction of prospective class members and "the very high risk of complete non-recovery"); *Gattinella v. Kors*, No. 14CV5731, 2016 WL 690877, at *1 (S.D.N.Y. Feb. 9, 2016) (finding a settlement that resolves claims advanced on behalf of a proposed class of Michael Kors' customers who were allegedly deceived into purchasing Michael Kors' Outlet Products that contained price tags with false reference points to be fair, reasonable and adequate where defendants agreed to modify their sales practices and pay $4.875 million into a common fund for the benefit of the class).

Considering the relevant *Grinnell* factors illustrates that the Settlement is substantively fair, reasonable, and adequate, and that Objector Morrow's complaint lacks merit.

## III. ATTORNEYS' FEES

Objectors Becky Morrow and Pamela Sweeney take issue with the reasonableness of class counsel's attorneys' fee request. Objector Morrow contends that the fee request will exceed "the 9th Circuit's 25% benchmark," and adds that class counsel's efforts do not "justify paying 1.7 times their lodestar." Objector Sweeney characterizes the attorneys' fees as "excessive." Obviously, this case is not in the Ninth Circuit and there is no hard and fast "25% rule" either here or there. Moreover, counsel for ANN hereby certifies that Class Counsel refused to discuss attorneys' fee amounts until relief to the class was negotiated and settled upon. This process was supervised by Magistrate Judge Netburn, who further made sure that there was no collusion or other inappropriate activity as to attorneys' fees.

Nonetheless, per the Settlement Agreement, ANN does not object to the amount of attorneys' fees and takes no formal position on that issue. If, however, the Court is concerned with the amount of attorneys' fees, it is not a reason to invalidate the Settlement in its entirety. An inquiry into the appropriateness of a fee award is separate and apart from an inquiry into the validity of the settlement as a whole. *See Grinnell Corp.*, 495 F.2d at 452 (affirming the District Court's approval of the underlying settlement and separately reversing and remanding the fee award for a hearing); Fed. R. Civ. P. 23(h) ("In a certified class action, the court **may** award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement.") (emphasis added). Should the court determine that the fee award should be reduced, the appropriate course is not to invalidate the settlement as a whole, but to affirm the settlement and to address the fee award separately.

## IV. CONCLUSION

Based on the foregoing response to the objections, ANN requests that the Court grant final approval of the Class Settlement.

Respectfully submitted,

Dated: March 29, 2018

MORGAN, LEWIS & BOCKIUS, LLP

By: /s/ Gregory T. Parks
Gregory T. Parks
Kristin Hadgis
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215)-963-5170
Fax: (215)-963-5001
gregory.parks@morganlewis.com
kristin.hadgis@morganlewis.com

Regina Schaffer-Goldman
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212)-309-6689
Fax: (212)-309-6001
regina.schaffer-goldman@morganlewis.com

*Counsel for ANN Inc.*